Gary J. Smith (SBN 141393)
gsmith@bdlaw.com
BEVERIDGE & DIAMOND, P.C.
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone:  (415) 262-4000
Facsimile:  (415) 262-4040

*Counsel for Defendant Clarios, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>        Plaintiffs,<br><br>  vs.<br><br>NL INDUSTRIES, INC., a New Jersey corporation; JX NIPPON MINING & METALS CORPORATION, a Japanese corporation; GOULD ELECTRONICS INC., an Arizona corporation; KINSBURSKY BROS. SUPPLY, INC., a California corporation; TROJAN BATTERY COMPANY, LLC, a Delaware limited liability company; RAMCAR BATTERIES INC., a California corporation; CLARIOS, LLC, a Wisconsin limited liability company; QUEMETCO, INC., a Delaware corporation; INTERNATIONAL METALS EKCO, LTD., a California corporation; and BLOUNT, INC., a Delaware corporation,<br><br>        Defendants. | Case No. 2:20-cv-11293-SVW-JPR<br><br>**CLARIOS, LLC's ANSWER, DEFENSES, AND COUNTERCLAIMS**<br><br>Judge:  Stephen V. Wilson<br><br>Complaint Filed:  December 14, 2020<br>Trial Date:   None Set |
| CLARIOS, LLC,<br><br>        Counterclaimant,<br><br>  vs.<br><br>CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>        Counterdefendants. | |

## ANSWER

Defendant Clarios, LLC ("Clarios"), by undersigned counsel, answers Plaintiffs' Complaint for Recovery of Response Costs, Declaratory Relief, and Supplemental State Law Claims ("Complaint") as follows.  As permitted by Fed. R. Civ. P. 8(b)(3), Clarios generally denies all allegations in the Complaint except those specifically admitted here.

## INTRODUCTION

1.      Clarios admits that many of the residents of southeast Los Angeles are part of a population group that has suffered historically disproportionate impacts from economic, environmental, and racial injustice.  Clarios admits that the smelter property located in Vernon, California ("Smelter") was most recently owned and operated by Exide Technologies, LLC ("Exide"), and that the property has been transferred in bankruptcy to a response trust.  Clarios denies the characterizations of law in Paragraph 1, and Plaintiffs' characterizations of their own lawsuit require no response.  Clarios lacks information sufficient to admit or deny, for the purpose of this legal action, the allegations of Paragraph 1 regarding contamination, harm, and the economic sufficiency of the response trust to satisfy the legal obligations of Exide.

2.      Clarios lacks information sufficient to admit or deny, for the purpose of this legal action, the allegations of Paragraph 2.

3.      Clarios admits that lead is a neurotoxin that can accumulate in the body and can damage organs.  Clarios admits that children may be particularly vulnerable to the effects of lead.  Clarios admits that some government agencies have determined that arsenic is a known human carcinogen, and that government agencies have determined that mercury can cause brain damage, mental impairment, and seizures depending on dose and exposure.  Clarios lacks information sufficient to admit or deny, for the purpose of this legal action, the allegations of Paragraph 3 regarding the nature and effects of contaminants allegedly released from the Smelter.

4.      Clarios admits that the California Department of Toxic Substances Control ("DTSC") has conducted environmental investigation and excavation actions at certain

properties within 1.7 miles of the Smelter.  Clarios lacks information sufficient to admit or deny the allegation of Paragraph 4 regarding Exide's actions.  Plaintiffs' characterization of their own lawsuit and motivations need not be admitted or denied.

## STATEMENT OF THE ACTION

5.     Paragraph 5 contains Plaintiffs' characterization of their own lawsuit, which need not be admitted or denied.  Clarios lacks information sufficient to admit or deny the allegation that Plaintiffs incurred unreimbursed response costs at the alleged addresses and parcels in connection with the contaminants of concern identified in Paragraph 5. Clarios lacks information sufficient to admit or deny the alleged definition of "Vernon Plant."  The term "Vernon Plant" as used in this pleading refers to Plaintiffs' defined term "Vernon Plant," but use of the term "Vernon Plant" herein does not admit any allegation or definition regarding the term "Vernon Plant."

6.     Paragraph 6 purports to define the "Site," the definition of which is a conclusion of law that need not be admitted or denied at this stage.  The term "Site" as used in this pleading refers to Plaintiffs' defined term "Site," but use of the term "Site" herein does not admit any allegation or definition regarding the term "Site" or Plaintiffs' characterizations regarding the extent of contamination attributable to the Vernon Plant. Clarios denies Plaintiffs' allegations regarding the extent of contamination attributable to the Vernon Plant.

7.     Paragraph 7 consists of Plaintiffs' characterization of their own lawsuit, which need not be admitted or denied.

8.     Paragraph 8 consists of Plaintiffs' characterization of their own lawsuit, which need not be admitted or denied.

9.     Paragraph 9 consists of Plaintiffs' characterization of their own lawsuit, which need not be admitted or denied.

10.     Paragraph 10 contains Plaintiffs' characterization of their own lawsuit, which need not be admitted or denied.  Clarios lacks information sufficient to admit or

deny the remaining allegations of Paragraph 10 regarding alleged contamination by NL Industries and Morris P. Kirk.

## JURISDICTION AND VENUE

11.     Paragraph 11 contains conclusions of law that need not be admitted or denied at this stage.

12.     Paragraph 12 contains conclusions of law that need not be admitted or denied at this stage.

## PLAINTIFFS

13.     Paragraph 13 contains conclusions of law regarding DTSC's legal status, authority and jurisdiction that need not be admitted or denied at this stage.

14.     Paragraph 14 contains conclusions of law regarding the Toxic Substances Control Account's legal status that need not be admitted or denied at this stage.

## DEFENDANTS

**Owner/Operator Defendants**

15.     Clarios lacks information sufficient to admit or deny the allegations in Paragraph 15 regarding the citizenship of NL Industries.  Paragraph 15 also contains conclusions of law regarding the legal status of NL Industries that need not be admitted or denied at this stage.

16.     Clarios lacks information sufficient to admit or deny the allegations in Paragraph 16 regarding the alleged time periods that NL Industries and Morris P. Kirk were involved at the Vernon Plant, and regarding NL's sale of the Vernon Plant to Gould Inc.  Paragraph 16 also contains conclusions of law regarding successor liability that need not be admitted or denied at this stage.

17.     Clarios lacks information sufficient to admit or deny the allegations in Paragraph 17 regarding the citizenship of JX Nippon Mining & Metals Corporation. Paragraph 17 also contains conclusions of law regarding the legal status of JX Nippon Mining & Metals Corporation that need not be admitted or denied at this stage.

18.   Clarios lacks information sufficient to admit or deny the allegations in Paragraph 18 regarding the alleged time periods that Gould, Inc. was involved at the Vernon Plant.  Paragraph 18 also contains conclusions of law regarding successor liability that need not be admitted or denied at this stage.

19.   Clarios lacks information sufficient to admit or deny the allegations in Paragraph 19 regarding the citizenship and former names of Gould Electronics Inc.  Paragraph 19 also contains conclusions of law regarding the legal status of Gould Electronics Inc. that need not be admitted or denied at this stage.

20.   Paragraph 20 contains conclusions of law regarding successor liability that need not be admitted or denied at this stage.

**Arranger/Transporter Defendants**

21.   Clarios lacks information sufficient to admit or deny the allegations in Paragraph 21 regarding the citizenship of Kinsbursky Bros. Supply, Inc.  Paragraph 21 also contains conclusions of law regarding the legal status of Kinsbursky that need not be admitted or denied at this stage.

22.   Paragraph 22 contains conclusions of law that need not be admitted or denied at this stage.

23.   Paragraph 23 contains conclusions of law that need not be admitted or denied at this stage.

24.   Clarios lacks information sufficient to admit or deny the allegations in Paragraph 24 regarding the citizenship of Trojan Battery Company, LLC.  Paragraph 24 also contains conclusions of law regarding the legal status of Trojan that need not be admitted or denied at this stage.

25.   Paragraph 25 contains conclusions of law that need not be admitted or denied at this stage.

26.   Clarios lacks information sufficient to admit or deny the allegations in Paragraph 26 regarding the citizenship of Ramcar Batteries Inc.  Paragraph 26 also

contains conclusions of law regarding the legal status of Ramcar that need not be admitted or denied at this stage.

27.     Paragraph 27 contains conclusions of law that need not be admitted or denied at this stage.

28.     Clarios admits that it is a Wisconsin limited liability company registered to do business in California.  Clarios admits that it is a continuation of and successor to Johnson Controls Battery Group, LLC, a limited liability company converted by operation of law from Johnson Controls Battery Group, Inc.

29.     Paragraph 29 contains conclusions of law that need not be admitted or denied at this stage, but Clarios nevertheless denies the allegations in Paragraph 29 regarding Clarios' alleged arranger or transporter liability at the Vernon Plant.

30.     Paragraph 30 contains conclusions of law that need not be admitted or denied at this stage, but Clarios nevertheless denies the allegations in Paragraph 30 regarding Clarios' alleged arranger or transporter liability at the Vernon Plant.

31.     Clarios lacks information sufficient to admit or deny the allegations in Paragraph 31 regarding the citizenship of Quemetco, Inc.  Paragraph 31 also contains conclusions of law regarding the legal status of Quemetco that need not be admitted or denied at this stage.

32.     Paragraph 32 contains conclusions of law that need not be admitted or denied at this stage.

33.     Paragraph 33 contains conclusions of law that need not be admitted or denied at this stage.

34.     Clarios lacks information sufficient to admit or deny the allegations in Paragraph 34 regarding the citizenship of International Metals Ekco Ltd.  Paragraph 34 also contains conclusions of law regarding the legal status of Ekco that need not be admitted or denied at this stage.

35.     Paragraph 35 contains conclusions of law that need not be admitted or denied at this stage.

36.     Paragraph 36 contains conclusions of law that need not be admitted or denied at this stage.

37.     Clarios lacks information sufficient to admit or deny the allegations in Paragraph 37 regarding the citizenship of Blount, Inc.  Paragraph 37 also contains conclusions of law regarding the legal status of Blount that need not be admitted or denied at this stage.

38.     Paragraph 38 contains conclusions of law that need not be admitted or denied at this stage.

39.     No response is required.

40.     No response is required.

## GENERAL ALLEGATIONS

### The Site

41.     Clarios admits that the Vernon Plant has been operated as a secondary smelter in the City of Vernon.  Clarios lacks information sufficient to admit or deny the dates of operation of the Vernon Plant or the number and type of properties in "close proximity" to the Vernon Plant, in part because the term "close proximity" is too vague and ambiguous to be admitted or denied.  The allegation that the Vernon Plant "treated" hazardous waste is a conclusion of law that need not be admitted or denied at this stage.

42.     Clarios admits that at times the Vernon Plant was used primarily for secondary lead smelting, which extracts lead and other materials from secondary sources including spent lead-acid batteries.  Clarios lacks information sufficient to admit or deny the remaining allegations of Paragraph 42 regarding specific operations at the Vernon Plant.

43.     Paragraph 43 alleges conclusions of law that need not be admitted or denied at this stage.  To the extent Paragraph 43 alleges factual statements, Clarios lacks information sufficient to admit or deny the allegations of Paragraph 43.

44.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 44 regarding documentation.  Clarios denies that it arranged, or arranged with

a transporter, for disposal or treatment of hazardous substances at the Vernon Plant.  The remaining allegations of Paragraph 44 are conclusions of law that need not be admitted or denied at this stage.

45.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 45 regarding documentation.  Clarios denies that it accepted hazardous substances for transport to the Vernon Plant for disposal or treatment.  The remaining allegations of Paragraph 45 are conclusions of law that need not be admitted or denied.

46.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 46 regarding documentation.  Clarios denies that it arranged for the disposal or treatment of hazardous substances at the Vernon Plant.  The remaining allegations of Paragraph 46 are conclusions of law that need not be admitted or denied at this stage.

47.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 47 regarding the collective or individual actions of "Transporter Defendants." Clarios denies that it transported hazardous substances to the Vernon Plant, and that it selected or actively participated in the selection of the Vernon Plant as the Treatment, Storage, and Disposal Facility for disposal or treatment of hazardous substances.

48.     Clarios admits that certain operations at the alleged Vernon Plant resulted in releases of hazardous substances, but lacks information sufficient to admit or deny the specific allegations of Paragraph 48 regarding the operation of the Vernon Plant and the alleged resulting environmental contamination.

49.     Clarios admits that certain operations at the Vernon Plant resulted in releases of hazardous substances, but lacks information sufficient to admit or deny the specific allegations of Paragraph 49 regarding the operation of the Vernon Plant and the alleged resulting environmental contamination.

50.     Clarios admits that certain operations at the alleged Vernon Plant resulted in releases of hazardous substances, but lacks information sufficient to admit or deny the specific allegations of Paragraph 50 regarding the operation of the Vernon Plant and the alleged resulting environmental contamination.

51.     Clarios lacks information sufficient to admit or deny the specific allegations of Paragraph 51 regarding the operation of the Vernon Plant and the alleged resulting environmental contamination.

52.     Clarios lacks information sufficient to admit or deny the specific allegations of Paragraph 52 regarding the operation of the Vernon Plant and the alleged resulting environmental contamination.

53.     Clarios lacks information sufficient to admit or deny the specific allegations of Paragraph 53 regarding the operation of the Vernon Plant and the alleged resulting environmental contamination.

54.     Clarios lacks information sufficient to admit or deny the specific allegations of Paragraph 54 regarding the operation of the Vernon Plant and the alleged resulting environmental contamination.

55.     Clarios lacks information sufficient to admit or deny the specific allegations of Paragraph 55 regarding the operation of the Vernon Plant and the alleged resulting environmental contamination.

**Health Effects of Lead and Other Hazardous Substances**

56.     Clarios admits that hazardous substances, including the substances defined as "Contaminants of Concern" in the Complaint, can have negative impacts on human health, depending on exposure, dose, and other factors.  Clarios lacks information sufficient to admit or deny the allegations of Paragraph 56 regarding releases or threatened releases at and from the Vernon Plant.

57.     Clarios admits that the exposure pathways alleged in Paragraph 57 are possible depending on circumstances.  Clarios lacks information sufficient to admit or deny allegations regarding how "most exposure" occurs.

58.     Clarios admits that lead is a heavy metal and that it can be toxic.  Clarios admits that lead can be a cumulative toxicant that can affect multiple organ systems within the body.  Clarios admits that the health effects alleged in Paragraph 58 are possible depending on circumstances.

59.     Clarios admits that the health effects alleged in Paragraph 59 are possible depending on circumstances.

60.     Clarios admits that the health effects alleged in Paragraph 60 are possible depending on circumstances.

61.     Clarios admits that the health effects alleged in Paragraph 61 are possible depending on circumstances.

62.     Clarios admits that the health effects alleged in Paragraph 62 are possible depending on circumstances.

63.     Clarios admits that the health effects alleged in Paragraph 63 are possible depending on circumstances.

64.     Clarios admits that the health effects alleged in Paragraph 64 are possible depending on circumstances.

**Regulation of the Vernon Plant**

65.     The allegations of Paragraph 65 are Plaintiffs' characterizations of California and federal law that need not be admitted or denied.

66.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 66.

67.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 67.

68.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 68.

69.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 69.

70.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 70.

71.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 71.

72.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 72.

73.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 73.

74.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 74.

75.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 75.

76.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 76.

77.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 77.

78.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 78.

**Site Cleanup and Enforcement Activities**

79.   Clarios admits that certain operations at the Vernon Plant resulted in releases of hazardous substances.  Clarios denies DTSC has taken "continuous action" in response to the contamination alleged, and lacks information sufficient to admit or deny the remaining specific allegations of Paragraph 79 regarding DTSC's response actions.

80.   Clarios lacks information sufficient to admit or deny the specific allegations of Paragraph 80 regarding lead concentrations in soil.

81.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 81.

82.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 82.

83.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 83.

84.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 84.

85.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 85.

86.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 86.

87.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 87.

88.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 88.

89.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 89.

90.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 90.

91.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 91.

92.     Clarios admits that Plaintiffs have incurred some costs for environmental investigation and excavation activities at certain points within 1.7 miles of the Vernon Plant.  Clarios lacks information sufficient to admit or deny the extent to which such costs were incurred as a result of releases and/or threatened releases of hazardous substances from the Vernon Plant.

93.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 93.

94.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 94 regarding Plaintiffs' expectations.

**History of Owners and Operators of the Vernon Plant and Their Successors**

95.     Clarios lacks information sufficient to admit or deny the allegations of Paragraph 95.

96.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 96.

97.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 97.

98.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 98.

99.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 99.

100.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 100.

101.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 101.

102.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 102.

103.    The allegations of Paragraph 103 are legal conclusions that need not be admitted or denied at this stage.

104.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 104.

105.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 105.

106.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 106.

107.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 107.

108.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 108.

109.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 109.

110.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 110.

111.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 111.

112.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 112.

113.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 113.

114.   Clarios lacks information sufficient to admit or deny the factual allegations of Paragraph 114.  Paragraph 114 also contains legal conclusions that need not be admitted or denied at this stage.

115.   Clarios lacks information sufficient to admit or deny the factual allegations of Paragraph 115.  Paragraph 115 also contains legal conclusions that need not be admitted or denied at this stage.

116.   Paragraph 116 contains legal allegations and conclusions that need not be admitted or denied at this stage.  To the extent the allegations of Paragraph 116 are construed as factual in nature, Clarios lacks information sufficient to admit or deny them.

117.   Paragraph 117 contains legal conclusions that need not be admitted or denied at this stage.

118.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 118.

119.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 119.

120.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 120.

121.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 121.

122.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 122.

123.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 123.

124.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 124.

125.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 125.

126.   Paragraph 126 contains legal conclusions that need not be admitted or denied at this stage.

127.   Clarios lacks information sufficient to admit or deny the factual allegations of Paragraph 127.  Paragraph 127 also contains legal conclusions that need not be admitted or denied at this stage.

128.   Clarios lacks information sufficient to admit or deny the factual allegations of Paragraph 128.  Paragraph 128 also contains legal conclusions that need not be admitted or denied at this stage.

129.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 129.

**FIRST CLAIM FOR RELIEF**

130.   Clarios' responses to Paragraphs 1-129 are incorporated here.

131.   Paragraph 131 purports to characterize CERCLA, which speaks for itself and need not be admitted or denied at this stage.

132.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 132 regarding site contamination.  Paragraph 132 also contains legal conclusions that need not be admitted or denied at this stage.

133.   Paragraph 133 contains legal conclusions that need not be admitted or denied at this stage.

134.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 134 regarding site contamination.  Paragraph 134 also contains legal conclusions that need not be admitted or denied at this stage.

135.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 135 regarding site contamination.  Paragraph 135 also contains legal conclusions that need not be admitted or denied at this stage.

136.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 136 regarding the release of hazardous substances.  Paragraph 136 also contains legal conclusions that need not be admitted or denied at this stage.  Clarios nevertheless denies the allegations in Paragraph 136 regarding Clarios' alleged arranger or transporter liability.

137.    Clarios lacks information sufficient to admit or deny the allegations of Paragraph 137 regarding the release of hazardous substances.  Paragraph 137 also contains legal conclusions that need not be admitted or denied at this stage.  Clarios nevertheless denies the allegations in Paragraph 137 regarding Clarios' alleged arranger or transporter liability.

138.    Paragraph 138 contains legal conclusions that need not be admitted or denied at this stage.

139.    Paragraph 139 contains legal conclusions that need not be admitted or denied at this stage.

140.    Paragraph 140 contains legal conclusions that need not be admitted or denied at this stage.

141.    Paragraph 141 contains legal conclusions that need not be admitted or denied at this stage.

142.    Paragraph 142 contains legal conclusions that need not be admitted or denied at this stage.  Clarios nevertheless denies liability under CERCLA Section 107(a).

143.    Paragraph 143 contains legal conclusions that need not be admitted or denied at this stage.  Clarios nevertheless denies liability under CERCLA Section 107(a).

## SECOND CLAIM FOR RELIEF

144.   Clarios' responses to Paragraphs 1-143 are incorporated here.

145.   Paragraph 145 contains legal conclusions that need not be admitted or denied at this stage.  Clarios nevertheless denies that Plaintiffs are entitled to a declaratory judgment against Clarios under CERCLA Section 113(g)(2).

## THIRD CLAIM FOR RELIEF

146.   Clarios' responses to Paragraphs 1-145 are incorporated here.

147.   Paragraph 147 purports to characterize the California Health and Safety Code, which speaks for itself and need not be admitted or denied at this stage.

148.   Paragraph 148 contains legal conclusions that need not be admitted or denied at this stage.

149.   Paragraph 149 contains legal conclusions that need not be admitted or denied at this stage.

150.   Paragraph 150 contains legal conclusions that need not be admitted or denied at this stage.

151.   Paragraph 151 contains legal conclusions that need not be admitted or denied at this stage.  Clarios nevertheless denies liability under Cal. Health and Safety Code Section 25319.

152.   Paragraph 152 contains legal conclusions that need not be admitted or denied at this stage.  Clarios nevertheless denies liability under Cal. Health and Safety Code Section 25360.

153.   Paragraph 153 contains legal conclusions that need not be admitted or denied at this stage.  Clarios nevertheless denies liability under Cal. Health and Safety Code Sections 25360 and 25360.1.

## FOURTH CLAIM FOR RELIEF

154.   Clarios' responses to Paragraphs 1-153 are incorporated here.

155.   Paragraph 155 purports to quote California Health and Safety Code Section 25358.3(a), which speaks for itself and need not be admitted or denied at this stage.

156.   Paragraph 156 purports to quote California Health and Safety Code Section 25358.3(e), which speaks for itself and need not be admitted or denied at this stage.

157.   Paragraph 157 purports to quote California Health and Safety Code Section 25358.3(g), which speaks for itself and need not be admitted or denied at this stage.

158.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 158.

159.   Clarios lacks information sufficient to admit or deny the allegations of Paragraph 159.

160.   Paragraph 160 contains legal conclusions that need not be admitted or denied at this stage.   Clarios nevertheless denies being a "responsible party" under Cal. Health and Safety Code Section 25358.3.

161.   Paragraph 161 contains legal conclusions that need not be admitted or denied at this stage.

## FIFTH CLAIM FOR RELIEF

Plaintiffs' Fifth Claim for Relief requires no response from Clarios.

## PRAYER FOR RELIEF

Fed. R. Civ. P. 8 does not require Clarios to respond to Plaintiffs' Prayer for Relief, but Clarios generally denies that Plaintiffs are entitled to the relief sought.

## AFFIRMATIVE AND OTHER DEFENSES

1.    **Definition of "Site":** Plaintiffs' alleged definition of the "Site" is inaccurate and unsupportable because hazardous substances released from the Vernon Plant have not come to be located in areas Plaintiffs include in the alleged definition of the "Site." Some or all of the costs alleged in connection with investigation and excavation activities described in Plaintiffs' Complaint are therefore associated with alleged environmental contamination that is unconnected to the Vernon Plant.

2.    **Federally permitted release:** All or some portion of Plaintiffs' alleged response costs resulted from a federally permitted release, for which recovery cannot be sought under CERCLA Section 107.  *See* 42 U.S.C. § 9607(j).

3.    **National Contingency Plan:** Some or all of Plaintiffs' alleged costs of removal and remedial action, and Plaintiffs' actions in conjunction with incurring those costs, are and have been inconsistent with the "National Oil and Hazardous Substances Pollution Contingency Plan" 40 C.F.R. Part 300, *et seq.*  Among other inconsistencies, and without limitation, Plaintiffs failed to properly investigate the alleged contamination by hazardous substances, including potential sources; to establish scientifically supportable cleanup standards for contaminants of concern; to adequately and timely evaluate site remediation options and priorities; to assess site conditions and evaluate alternatives; to properly select a remedy; and to manage remediation in a cost-effective manner.  *See id.* § 9607(a)(4)(A).

4.    **Superfund Recycling Equity Act:** Pursuant to the Superfund Recycling Equity Act, 42, U.S.C. § 9627, Clarios is not liable under sections 9607(a)(3) and 9607(a)(4) of CERCLA, or under HSAA, with respect to any recyclable material that it provided to the Vernon Plant for recycling.

5.    **Divisibility:** Any Clarios liability under HSAA and CERCLA must be several, rather than joint and several, because the alleged harm is divisible and must be apportioned.  HSAA has a presumption of divisibility.

6.     **Disposal and treatment:** Clarios did not intend to arrange, and did not arrange, for "disposal" or "treatment" of hazardous substances at the alleged Vernon Plant, and the Vernon Plant was not a "disposal or treatment facility," as those terms are defined in CERCLA.  *See* 42 U.S.C. § 9607(a)(3)-(4).  Among other reasons, the Clarios materials at issue, if any, were useful products and recyclable material.

7.     **Settlement credit:** Any potentially responsible party who has resolved claims by settlement is not liable for contribution under CERCLA Section 113, but such settlements reduce the potential liability of Clarios and other defendants by the amount of the settlement.  *See* 42 U.S.C. § 9613(f)(2).  Such settlements include, but are not limited to, the settlement in favor of the Vernon Environmental Response Trust as described in the Consent Decree and Settlement Agreement filed in *In Re Exide Holdings, Inc., et al*. in the U.S. Bankruptcy Court for the District of Delaware, ECF No. 869-1 (Sept. 22, 2020).

8.     **Battery tax:**  Manufacturer battery fees remitted by Clarios under California's Lead-Acid Battery Recycling Act must be "credited against amounts owed by the manufacturer to the state pursuant to a judgment or determination of liability under [the HSAA] or any other law for removal, remediation, or other response costs relating to a release of a hazardous substance from a lead-acid battery recycling facility."  Cal. H.S.C. § 25215.56(a).

9.     **Statutes of limitations:** Plaintiffs' claims are barred by applicable statutes of limitations.

10.     **Injunction:** Among other defenses and without waiving any defense, any injunction compelling abatement on private property requires joinder of the property owner as a necessary party, and depending on the actual injunction sought, such joinder may be infeasible.

## COUNTERCLAIMS

Defendant Clarios, LLC counterclaims as follows against Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account. This Counterclaim adopts the defined terms used in Plaintiffs' Complaint unless otherwise specified.

### JURISDICTION AND VENUE

1.     The Court has jurisdiction over these counterclaims under 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).  The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 because the federal and state claims arise from a common nucleus of operative facts.

2.     Venue is proper in this district under 28 U.S. § 1391(b) and 42 U.S.C. § 9613(b) because the alleged releases and/or threatened releases occurred in this district.

### PARTIES

3.     Clarios, LLC is a Wisconsin limited liability company registered to do business in California.

4.     The California Department of Toxic Substances Control ("DTSC") is a public agency of the State of California, organized and existing under Cal. Health and Safety Code, § 58000 *et seq.*  DTSC is the successor to the California Department of Health Services.

5.     The Toxic Substances Control Account is an account within the State of California General Fund pursuant to Cal. Health and Safety Code, § 25173.6.

### GENERAL ALLEGATIONS

6.     DTSC's mission includes protecting California's people and environment from the harmful effects of toxic substances by restoring contaminated resources, and enforcing hazardous waste laws, including the Hazardous Waste Control Law, Cal. Health and Safety Code ("HWCL"), § 25100 *et seq.*  DTSC administers the HWCL, which has as strict, or stricter, requirements for regulating hazardous waste than the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*

7.    CERCLA imposes liability on several classes of persons, including "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  42 U.S.C. § 9607(a)(2).

8.    Liability as an operator attaches when a party "manage[s], direct[s], or conduct[s] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."  *United States v. Bestfoods,* 524 U.S. 51, 66 (1998).

9.    Governmental entities are not insulated from liability as "operators" under CERCLA, including when acting under their regulatory authority.  *United States v. Shell Oil*, 294 F.3d 1045, 1053 (9th Cir. 2002); *see also FMC Corp. v. United States Dep't of Commerce,* 29 F.3d 833, 840 (3rd Cir. 1994) (en banc) ("[T]he government can be liable when it engages in regulatory activities extensive enough to make it an operator of a facility....").

10.    As a remedial statute, CERCLA is construed liberally in order to effectuate its goals.  *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 880 (9th Cir. 2001) (en banc).

**DTSC's failure to satisfy its mandatory permitting responsibilities**

11.    DTSC and its predecessor agency administered a hazardous waste permitting system for the Vernon Plant for more than 30 years, during which time no final hazardous waste facility permit was ever issued for the Vernon Plant.

12.    Upon information and belief, a former owner or operator of the alleged Vernon Plant filed a RCRA Part A application with the United States Environmental Protection Agency (EPA) on August 8, 1980.

13.    Upon information and belief, DTSC's predecessor agency issued an "Interim Status Document" (ISD) for the Vernon Plant nearly 40 years ago on December 12, 1981. Alternatively, upon information and belief, an ISD for the Vernon Plant was issued on December 18, 1981.

14.     Upon information and belief, a former owner or operator of the Vernon Plant subsequently eliminated a waste pile, claimed that its smelters did not require a permit, and requested reclassification to generator status.  Upon information and belief, EPA then rescinded the facility's Treatment and Storage Facility classification by returning the 1980 RCRA Part A permit application.

15.     Upon information and belief, DTSC's predecessor agency rescinded the ISD for the Vernon Plant in 1982.

16.     Upon information and belief, DTSC's predecessor agency issued another ISD for the Vernon Plant on August 19, 1983.  Alternatively, upon information and belief, a renewed ISD was issued for the Vernon Plant sometime between 1982 and January 1, 1992.  Alternatively, upon information and belief, a renewed ISD was issued for the Vernon Plant sometime between January 1, 1992 and December 13, 1999.

17.     Upon information and belief, a former owner or operator of the Vernon Plant filed a revised RCRA Part A application for the Vernon Plant on July 5, 1985.

18.     Upon information and belief, DTSC's predecessor agency determined on September 3, 1986 that a hazardous waste facility permit was necessary for the Vernon Plant.

19.     Upon information and belief, a former owner or operator of the Vernon Plant submitted a RCRA Part B application for the Vernon Plant on November 8, 1988.  That application, including its subsequent and incorporated revisions, is referred to here as the "Permit Application."

20.     California law required DTSC to act on the November 8, 1988 hazardous waste facility permit application for the Vernon Plant on or before July 1, 1993.  Cal. Health and Safety Code, § 25200.11(a).  DTSC was required either to issue the permit, make a final denial of the application, or extend final action for one year upon a determination that the application was complete and more time was needed for evaluation.  *Id.*

21.     Upon information and belief, as of July 1, 1993, DTSC had not issued a permit for the Vernon Plant, denied the Permit Application, or extended final action for one year.  Upon information and belief, operations continued at the Vernon Plant without action on the Permit Application from 1993 through 1999.

22.     Upon information and belief, DTSC made no further permitting determinations with respect to the Vernon Plant until December 13, 1999.

23.     Upon information and belief, DTSC approved a Class 2 Interim Status modification for the Vernon Plant on December 13, 1999 for supplemental environmental projects as a result of the settlement of an enforcement case.

24.     Upon information and belief, DTSC approved a Class 2 Interim Status modification for the Vernon Plant on June 30, 2000, regarding a wastewater treatment plant and secondary containment.

25.     Upon information and belief, DTSC approved a Class 1 Interim Status modification for the Vernon Plant on January 5, 2001, for change of ownership and operational control to Exide.  Upon information and belief, DTSC approved a Class 1 Interim Status modification for the Vernon Plant on November 16, 2001 for Exide's name change.

26.     Upon information and belief, between 1988 and 2006, the owners or operators of the Vernon Plant periodically revised the Permit Application.

27.     Upon information and belief, DTSC requested information on May 4, 1992 and the Permit Application was revised with the requested information in June 1992.

28.     Upon information and belief, the Permit Application was revised in November 1993 with an updated contingency plan, more detailed operating procedures, description of containment buildings, and furnace operation information requested by DTSC.

29.     Upon information and belief, the Permit Application was revised in February 1998 to reflect additional and expanded operations and equipment, a revised waste

analysis plan, a revised closure/post-closure plan and cost estimates, and other revisions and clarifications requested by DTSC.

30.     Upon information and belief, the Permit Application was revised in November 2000 to incorporate the two approved Class 2 Interim Status modification requests in 1999 and 2000, revised permitted unit capacities, updated contingency plan, updated closure/post-closure plan and cost estimate, and a revised process description based on the Interim Status modifications.

31.     Upon information and belief, the Permit Application was revised in May 2002 to respond to comments from DTSC and to reflect the addition of new equipment. Upon information and belief, certain pages in the May 2002 Permit Application revision were replaced in January 2006 to reflect the relocation of certain equipment.

32.     Upon information and belief, the Permit Application was revised in April 2006 to reflect additional equipment and a revised closure/post-closure cost estimate.

33.     Upon information and belief, DTSC did not submit for public review a draft permit in response to the Permit Application until July 7, 2006, nearly 18 years after the Permit Application was submitted.

34.     Upon information and belief, DTSC did not release for public comment a Health Risk Assessment and, as required by the California Environmental Quality Act, an Environmental Impact Report related to the Vernon Plant until July 7, 2006, nearly 18 years after the Permit Application was submitted to DTSC.

35.     Upon information and belief, following public comment on the draft permit, Health Risk Assessment and Environmental Impact Report, DTSC subsequently directed Exide to revise the Permit Application again.  Upon information and belief, Exide submitted a revised Permit Application on July 23, 2010.

36.     Upon information and belief, DTSC subsequently directed Exide to revise its Permit Application again.  Upon information and belief, Exide submitted a revised Permit Application in January 2013.

37.     Upon information and belief, SB 712 passed in 2014 and required DTSC to act upon the Permit Application by December 31, 2015.  Upon information and belief, Exide withdrew the Permit Application in April 2015, more than 26 years after it was first submitted.

38.     Upon information and belief, DTSC never granted or denied the Permit Application during its pendency of more than 26 years.

39.     Upon information and belief, DTSC's failure to act on the Permit Application affected the nature, duration and extent of releases or threatened releases of hazardous substances at, from, or related to the Vernon Plant.  Upon information and belief, DTSC's failure to act on the Permit Application therefore impacted the eventual cost of investigation and excavation activities in the area DTSC alleged to be impacted by the Vernon Plant.

40.     California law mandated that any hazardous waste facility permit issued for the Vernon Plant include a requirement for "corrective action for all releases of hazardous waste or constituents from… a hazardous waste management unit at a facility engaged in hazardous waste management, regardless of the time at which waste was released at the facility."  Cal. Health and Safety Code, § 25200.10(b).  Such a corrective action provision in a hazardous waste facility permit for the Vernon Plant needed to include a requirement "that corrective action be taken beyond the facility boundary where necessary to protect human health and safety or the environment[.]"  *Id.*

41.     Upon information and belief, by failing to act on the Permit Application for more than 26 years, DTSC thwarted the requirement in California law that would have mandated that DTSC include a corrective action requirement for the Vernon Plant as part of any permit issued in response to the Permit Application.  Upon information and belief, if DTSC had issued a lawfully constituted permit for the Vernon Plant in response to the Permit Application by July 1, 1993, such a corrective action requirement would have been in place by July 1, 1993.  *Id.*, § 25200.11(a).

42.     California law also mandated that when considering a hazardous waste facility permit where corrective action could not be completed prior to the issuance of the permit, DTSC needed to include in the permit "schedules of compliance for corrective action." *Id.*, § 25200.10(b).

43.     Upon information and belief, the corrective action required in connection with the Vernon Plant could not have been completed between November 8, 1988 and July 1, 1993, when the Permit Application was due for DTSC action under Cal. Health and Safety Code, § 25200.11(a).

44.     Upon information and belief, in considering the November 8, 1988 Permit Application, which was due no later than July 1, 1993, DTSC was required to include in any responsive permit for the Vernon Plant "schedules of compliance for corrective action." *Id.*, § 25200.10(b).

45.     Upon information and belief, if DTSC had fulfilled its statutory permitting obligations under California hazardous waste law in the early 1990s, an enforceable corrective action requirement for the Vernon Plant, with associated compliance schedules, would have been in place by 1993.

46.     Instead, upon information and belief, no corrective action requirement was in place for the Vernon Plant throughout the 1990s.  Rather than requiring the Vernon Plant's owners and operators to take corrective action during the 1990s, upon information and belief, DTSC allowed operations at the Vernon Plant to continue, including the environmental releases DTSC now alleges were associated with those operations.  Upon information and belief, the absence of a corrective action requirement and associated compliance schedules in the 1990s contributed to the ultimate extent and severity of the environmental contamination DTSC now attributes to the Vernon Plant, contributing to higher response costs.

**DTSC's failure to secure financial assurance for the Vernon Plant**

47.     The purpose of financial assurances in the California hazardous waste laws is to assure that facility owners and operators can address adverse environmental

conditions arising out of facility operations without transferring such costs to the taxpayers.

48.     Exide, with its multiple bankruptcies, is an example of why DTSC's obligation to enforce the financial assurances obligations under California law are important for the public, the customers of the facilities, and the regulated community of hazardous waste facility permitted owners or operators.

49.     Exide went through bankruptcy proceedings three times between 2002 and 2020, with the final result that the bankruptcy judge in Exide's third bankruptcy in 2020 concluded: "Exide should pay its debts, but it cannot.  There is simply no available money to do so."  *In re: Exide Holdings, Inc.*, No 20-11157, ECF No. 1004-3, at 1 (D. Del. Bankr., Oct. 19, 2020).

50.     California law mandated that when considering a hazardous waste facilities permit where corrective action could not be completed prior to the issuance of the permit, DTSC needed to include in the permit "assurance of financial responsibility for completing the corrective action."  *Id.*, § 25200.10(b).

51.     Upon information and belief, the corrective action required in the vicinity of the Vernon Plant could not have been completed between November 8, 1988 and July 1, 1993, when the Permit Application was due for DTSC action under Cal. Health and Safety Code, § 25200.11(a).

52.     Upon information and belief, in considering the November 8, 1988 Permit Application, which was due for action no later than July 1, 1993, DTSC was required to include in any permit for the Vernon Plant requirements for "assurance of financial responsibility for completing the corrective action."  *Id.*, § 25200.10(b).

53.     Upon information and belief, if DTSC had fulfilled its statutory permitting obligations under California hazardous waste law in the early 1990s, an enforceable corrective action requirement for Exide, with associated financial assurances, would have been in place by 1993.

54.     California law also mandated that DTSC adopt standards and regulations specifying "financial assurances to be provided by the owner or operator of a hazardous waste facility that are necessary to respond adequately to damage claims arising out of the operation of that type of facility[.]"  Cal. Health and Safety Code, § 25245(a)(1).  Per that mandate, DTSC promulgated 22 CCR § 66264.101, providing that "[t]he owner or operator [of a facility seeking a permit for the transfer, treatment, storage, or disposal of hazardous waste] shall provide a financial assurance mechanism for corrective action to [DTSC] within 90 days of [DTSC's] approval of a corrective measures implementation workplan or a [DTSC]-approved equivalent… to allow [DTSC] access to the funds to undertake corrective measures implementation tasks if the owner or operator is unable or unwilling to undertake the required tasks."  22 CCR § 66264.101(b).

55.     Upon information and belief, DTSC did not require the owner or operator of the Vernon Plant to provide a financial assurance mechanism for corrective action during the 1980s or 1990s.

56.     Upon information and belief, DTSC did not approve or require a corrective measures implementation workplan or an equivalent during the 1980s or 1990s.

57.     California law mandates that the interim status of a facility "shall terminate" on July 1, 1997 "unless [DTSC] certifies, on or before July 1, 1997, that the facility is in compliance with the financial assurance requirements of Article 12 (commencing with Section 25245)[.]"  Cal. Health and Safety Code, § 25205(b).  The financial assurance requirements set forth in this section are "requirements of Article 12."

58.     Upon information and belief, DTSC did not certify during the 1980s or 1990s that the Vernon Plant was in compliance with the financial assurance requirements of Article 12.

59.     Upon information and belief, the interim status of the Vernon Plant terminated on July 1, 1997 following DTSC's failure to certify that Exide was in compliance with the financial assurance requirements of Article 12.  Upon information and belief, DTSC allowed the Vernon Plant to operate unlawfully after July 1, 1997,

without interim status or other proper legal authorization.  Alternatively, upon

information and belief, DTSC allowed the Vernon Plant to operate pursuant to an interim

status after July 1, 1997 in violation of DTSC obligations under California law.

60.    Upon information and belief, DTSC's failure in the early 1990s to enforce

statutory requirements for financial assurances from the owners or operators of the

Vernon Plant regarding corrective action contributed to the unavailability of funding

from Exide when remediation and removal operations were finally undertaken two

decades later.

**DTSC's cleanup mismanagement**

61.    In November 2015, DTSC made a determination that contamination in what

DTSC characterized as the vicinity of the Vernon Plant may pose an imminent and

substantial endangerment ("ISE") to public health, welfare, or the environment.  *See*

Auditor of the State of California, *Cal. Dept. of Toxic Substances Control: The State's*

*Poor Management of the Exide Cleanup Project Has Left Californians at Continued Risk*

*of Lead Poisoning* (October 2020) ("State Auditor Report"), Exhibit 1, at 4.

62.    Because it made an ISE determination, DTSC could have elected to conduct

cleanup activities itself, or hire contractors.  *Id*. at 5.  Upon information and belief, DTSC

chose to hire contractors.

63.    In April 2016, the state legislature passed Assembly Bill 118 ("AB 118").

AB 118 appropriated $176,600,000 from the state's General Fund to DTSC, to be used

for investigation and cleanup of properties in communities surrounding the Vernon Plant.

64.    As of June 2020, DTSC has received approximately $260,000,000 from the

state, primarily from the General Fund, to conduct the Vernon Plant cleanup and related

activities.  *Id*. at 5.

65.    Upon information and belief, DTSC has mismanaged the investigation and

cleanup, and the funds allocated for it.

66.    Upon information and belief, DTSC's cleanup costs have been significantly

higher than necessary.

67.     Upon information and belief, to date DTSC's largest cleanup contracts are time-and-materials contracts, and not fixed-price contracts.  A fixed-price contract limits costs to an agreed-upon amount.  In contrast, the time-and-materials contracts entered into by DTSC allowed DTSC to be charged for the full actual cost of labor and materials, regardless of whether those costs exceeded estimates.

68.     Cleanup costs exceeded estimates.  Upon information and belief, contractors under a time-and-materials arrangement with DTSC did not utilize cost-effective techniques, and as a result tens of millions of dollars in unnecessary costs were passed on to DTSC.  *See e.g.*, State Auditor Report, at 25.

69.     Upon information and belief, DTSC recognized costs were exceeding estimates, and spent an additional $5,400,000 to hire a consultant to help control the excess costs.  These excess costs were a foreseeable consequence of DTSC's time-and-materials contracts.

70.     Upon information and belief, DTSC had several options other than entering into time-and-materials contracts for the cleanup.

71.     Upon information and belief, time-and-materials contracts are not the norm for public agencies.

72.     In addition to mismanaging the funds allocated to it from the General Fund to clean up several thousand properties DTSC classified as high-priority, upon information and belief DTSC currently has no timeline or plan for cleaning up the remaining properties it has designated as impacted by the Vernon Plant.  This set of properties is estimated to number 4,600.  *See* State Auditor Report at 17.

**Clarios' damages**

73.     DTSC's failure to enforce and comply with California statutory law led to more widespread environmental contamination in what DTSC has characterized as the vicinity of the Vernon Plant and consequently unnecessary response costs for investigation, removal, and remedial actions.  To the extent that a judgment is entered under CERCLA, HSAA, or other law subjecting Clarios to liability for such unnecessary

response costs and a monetary award for a share of those response costs, such a judgment constitutes monetary damages for Clarios caused by DTSC's actions and omissions.

74.     DTSC's failure to enforce and comply with California statutory law led to the unavailability of funding for cleanup from the Vernon Plant's owners or operators, which required transferring most of the environmental response costs to taxpayers.  To the extent that a judgment is entered under CERCLA, HSAA, or other law subjecting Clarios to liability for such unnecessary DTSC response costs and a monetary award for a share of those response costs, such a judgment constitutes monetary damages for Clarios caused by DTSC's actions and omissions.

**COUNTERCLAIM ONE**

**(Contribution under CERCLA § 113(f))**

75.     Clarios incorporates the allegations in the preceding paragraphs by reference.

76.     DTSC alleges that the "site" of the Vernon Plant, as that term is ultimately defined by the Court, is a "facility" within the meaning of 42 U.S.C. § 9601(9).  If true, the "site" of the Vernon Plant, as that term is ultimately defined by the Court, is a "facility."

77.     DTSC is a "person" as defined in 42 U.S.C. § 9601(21).

78.     DTSC has been involved in cleanup efforts in connection with the Vernon Plant since at least 2015.  During that time, DTSC issued multiple remedial action plans that selected and implemented response actions at the "site" of the Vernon Plant, as that term is ultimately defined by the Court.  DTSC itself organized and executed these response actions.  These activities constitute managing, directing, and/or conducting operations at the Vernon Plant and the surrounding investigation area regarding the leakage or disposal of hazardous waste and decisions about compliance with environmental laws and regulations.

79.     DTSC is and has been an "operator" at the Vernon Plant and the surrounding investigation area at the time of disposal of hazardous substances there, as defined in 42 U.S.C. § 9607(a)(2).

80.     DTSC is a liable party in this action under 42 U.S.C. § 9607(a)(2).

81.     DTSC's mismanagement of the environmental response actions at the Vernon Plant and the surrounding investigation area has involved gross negligence and/or reckless, willful, wanton and/or intentional misconduct, such that DTSC may be liable for costs or damages as a result of its actions under 42 U.S.C. § 9607(d)(2).

82.     Clarios has denied liability for response costs incurred as the result of alleged releases or threatened releases of hazardous substances.  But Clarios may incur such liability in this action and/or in the future.

83.     DTSC is liable to Clarios for contribution under 42 U.S.C. § 9613(f) for some or all of any amounts Clarios incurs or will incur as a result of any release or threatened release of hazardous substances at the "site" of the Vernon Plant, as that term is ultimately defined by the Court.

## COUNTERCLAIM TWO

### (Declaratory judgment under CERCLA § 113(g))

84.     Clarios incorporates the allegations in the preceding paragraphs by reference.

85.     An actual and justiciable controversy exists between Clarios and DTSC regarding their respective rights and obligations for response costs that Clarios may incur as a result of alleged releases or threatened releases of hazardous substances at the "site" of the Vernon Plant, as that term is ultimately defined by the Court.

86.     Clarios seeks declaratory judgment against DTSC under 42 U.S.C. § 9613(g)(2).  DTSC is liable for some or all of any amounts Clarios incurs or will incur as a result of any release or threatened release of hazardous substances at the "site" of the Vernon Plant, as that term is ultimately defined by the Court.

## COUNTERCLAIM THREE

### (Contribution/indemnity under HSAA § 25300)

87.   Clarios incorporates the allegations in the preceding paragraphs by reference.

88.   DTSC caused or permitted a release or threatened release of hazardous substances into, on, or about the "site" of the Vernon Plant, as that term is ultimately defined by the Court, , as set forth in the Hazardous Substances Account Act ("HSAA"), Cal. Health and Safety Code, § 25300 *et seq.*

89.   DTSC is a "liable person" as defined in Cal. Health and Safety Code, § 25323.5.

90.   Clarios has denied liability for  response or corrective action costs incurred as the result of alleged releases or threatened releases of hazardous substances from the Vernon Plant.  But Clarios may incur such liability in this action and/or in the future.

91.   DTSC is liable to Clarios for contribution and/or indemnity under Cal. Health and Safety Code, § 25363(d) for some or all of any amounts Clarios incurs or will incur as a result of any release or threatened release of hazardous substances at the "site" of the Vernon Plant, as that term is ultimately defined by the Court.

## COUNTERCLAIM FOUR

### (Negligent failure to discharge statutory and regulatory duties)

92.   Clarios incorporates the allegations in the preceding paragraphs by reference.

93.   DTSC owes a duty of care to Clarios to the extent of mandatory duties imposed by California enactments that are designed to protect Clarios from the risk of a particular type of injury.  "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  Cal. Gov Code, § 815.6.

94.    DTSC breached the mandatory statutory and regulatory duties described *supra*.  These duties were designed to protect Clarios against the particular kinds of injury described *supra*.

95.    DTSC's breaches of its mandatory statutory and regulatory duties proximately caused injury to Clarios as described *supra*.  These injuries were proximately caused by DTSC's failure to discharge these mandatory duties.

96.    DTSC did not exercise reasonable care to discharge its mandatory statutory and regulatory duties.  DTSC is liable to Clarios for the negligent failure to discharge its mandatory statutory and regulatory duties.

97.    Clarios suffered injuries of the types described *supra*, including any monetary and/or declaratory judgment against Clarios for liability in this action and for any share of environmental response costs allocated in this action.  Any DTSC recovery from Clarios in this case must be diminished accordingly under the doctrine of recoupment.

98.    As this counterclaim is solely for recoupment, the presentment and other administrative requirements of the California Government Claims Act, Cal. Gov. Code § 810 *et seq*. (f/k/a California Tort Claims Act), are satisfied and/or excused.

**COUNTERCLAIM FIVE**

**(Grossly negligent failure to abate the presence of hazardous substances)**

99.    Clarios incorporates the allegations in the preceding paragraphs by reference.

100.   DTSC is a "public entity" and/or "public agency" as defined in Cal. Health and Safety Code, § 25400 *et seq*.

101.   Per its own "commitment to the people and environment of California," DTSC is responsible for the cleanup and abatement of hazardous wastes on contaminated properties in California.  *See* dtsc.ca.gov/our-commitment.  This includes properties reasonably believed to be an imminent peril to public health and safety as the result of the discharge, spill, or presence of a hazardous substance.

102.   In undertaking the abatement of such a hazard, DTSC incurs a duty to the public, including Clarios, to avoid acts or omissions performed in bad faith or in a grossly negligent manner.  Cal. Health and Safety Code, § 25400(a).

103.   As described *supra*, DTSC's abatement and attempted abatement of hazardous substances at the "site" of the Vernon Plant, as that term is ultimately defined by the Court, were performed in a grossly negligent manner.

104.   As described *supra*, DTSC's gross negligence proximately caused injury to Clarios, including any monetary and/or declaratory judgment against Clarios for liability in this action and for any share of environmental response costs allocated in this action. Any DTSC recovery from Clarios in this case must be diminished accordingly under the doctrine of recoupment.

105.   As this counterclaim is solely for recoupment, the presentment and other administrative requirements of the California Government Claims Act, Cal. Gov. Code § 810 *et seq.* (f/k/a California Tort Claims Act), are satisfied and/or excused.

## PRAYER FOR RELIEF

Clarios asks the Court to enter judgment in favor of Clarios, and against DTSC, as follows:

- For judgment that DTSC is jointly and severally liable under 42 U.S.C. § 9607(a) for all response costs incurred as a result of the release and/or threatened release of hazardous substances from the "site" of the Vernon Plant, as that term is ultimately defined by the Court;

- For contribution under 42 U.S.C. § 9607(f) to response costs incurred, in an amount to be determined;

- For contribution and indemnity under HSAA, Cal. Health and Safety Code § 25300 *et seq.*, to response costs incurred, in an amount to be determined;

- For the offset and recoupment of any CERCLA cost recovery judgment against Clarios to the extent of damages proved against DTSC for negligence and gross negligence;

- For a declaratory judgment that DTSC is jointly and severally liable for all response costs that Clarios may incur in the future as a result of the release and/or threatened release of hazardous substances from the "site" of the Vernon Plant, as that term is ultimately defined by the Court;

- For litigation expenses and costs, including reasonable attorneys' fees and expert fees, as permitted by law;

- For an award of interest at the maximum legal date on any and all damages from the earliest date permitted by law.


Dated:   April 22, 2021                    BEVERIDGE & DIAMOND, P.C.


By: _____
        Gary J. Smith (SBN 141393)
        gsmith@bdlaw.com
        456 Montgomery Street
        Suite 1800
        San Francisco, CA 94104-1251
        Telephone:  (415) 262-4000
        Facsimile:   (415) 262-4040

        *Counsel for Defendant Clarios, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2021 a true and correct copy of Clarios' Answer, Defenses, and Counterclaims was electronically filed via the Court's CM/ECF system, which will provide electronic notifications of such filing to all counsel of record.

By:   */s/ Gary J. Smith*
Gary J. Smith (SBN 141393)