ROB BONTA
Attorney General of California
SARAH E. MORRISON, SBN 143459
TIMOTHY E. SULLIVAN, SBN 197054
Supervising Deputy Attorneys General
DAVID ZAFT, SBN 237365
DENNIS A. RAGEN, SBN 106468
ELIZABETH B. RUMSEY, SBN 257908
AARTI S. KEWALRAMANI, SBN 247068
DONALD A. ROBINSON, SBN 72402
Deputy Attorneys General
300 South Spring Street Suite 1702
Los Angeles, CA 90013
Phone: (213) 259-6372
Fax: (213) 897-2802
E-mail: David.Zaft@doj.ca.gov
*Attorneys for Plaintiffs*
*California Department of Toxic Substances Control*
*and the Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

CALIFORNIA DEPARTMENT OF
TOXIC SUBSTANCES CONTROL
and the TOXIC SUBSTANCES
CONTROL ACCOUNT,

Plaintiffs,

v.

NL INDUSTRIES, INC., et al.,

Defendants.

2:20-cv-11293-SVW-JPR

**PLAINTIFFS' NOTICE OF
MOTION AND MOTION TO
DISMISS DEFENDANTS'
COUNTERCLAIMS**

Date:         August 9, 2021
Time:         1:30 p.m.
Courtroom:    10A
Judge:        Hon. Stephen V. Wilson
Trial Date:   TBD
Action Filed: December 14, 2020

1    **TO ALL PARTIES AND COUNSEL OF RECORD:**

2            PLEASE TAKE NOTICE that on August 9, 2021, at 1:30 p.m., or as soon

3    thereafter as counsel may be heard by the above-entitled Court, located at First

4    Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, in

5    Courtroom 10A of the Honorable Stephen V. Wilson, Plaintiffs California

6    Department of Toxic Substances Control ("DTSC") and the Toxic Substances

7    Control Account (collectively, "Plaintiffs") will and hereby do move the Court to

8    dismiss the Counterclaims of Defendants Clarios, LLC ("Clarios"); Ramcar

9    Batteries, Inc. ("Ramcar"); Quemetco, Inc. ("Quemetco"); International Metals

10   Ekco, Ltd. ("Ekco"); Kinsbursky Bros. Supply, Inc. ("Kinsbursky"); Blount, Inc.

11   ("Blount")[1]; and Gould Electronics, Inc. ("Gould") (Counterclaims, April 22, 2021,

12   ECF Nos. 50, 51, 53, 55, 58, 59, 60), as follows:

13           (1) to dismiss Counterclaim One (for contribution under section 113(f) of the

14   Comprehensive Environmental Response, Compensation, and Liability Act

15   ("CERCLA"), 42 U.S.C §§ 9601 et seq.) of Defendants Clarios, Ramcar,

16   Quemetco, Ekco, Kinsbursky, Blount, and Gould, against Plaintiffs, for failure to

17   state a claim upon which relief may be granted, under Federal Rules of Civil

18   Procedure 12(b)(6);

19           (2) to dismiss Counterclaim Two (for declaratory judgment under section

20   113(g) of CERCLA), of Defendants Clarios, Ramcar, Quemetco, Ekco,

21   Kinsbursky, Blount, and Gould, against Plaintiffs, for failure to state a claim upon

22   which relief may be granted, under Federal Rules of Civil Procedure 12(b)(6);

23           (3) to dismiss Counterclaim Three (for contribution/indemnity under the

24   California Hazardous Substance Account Act ("HSAA"), Health & Safety Code §§

25   25300 et seq.) of Defendants Clarios, Ramcar, Quemetco, Ekco, Kinsbursky,

26   _____

27           [1] On June 9, 2021, Blount, Inc. filed notice that it had changed its name to
     Oregon Tool, Inc. To avoid confusion and ensure consistency with concurrently
28   filed documents, Plaintiffs will refer to Oregon Tool, Inc., formerly known as
     Blount, Inc. as "Blount" in this motion.

Blount, and Gould, against Plaintiffs, for failure to state a claim upon which relief may be granted, under Federal Rules of Civil Procedure 12(b)(6);

(4) to dismiss Counterclaim Four (for negligent failure to discharge statutory and regulatory duties) of Defendants Clarios, Ramcar, Quemetco, Ekco, Kinsbursky, and Gould, against Plaintiffs, for lack of subject matter jurisdiction, under Federal Rules of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief may be granted, under Federal Rules of Civil Procedure 12(b)(6); and

(5) to dismiss Counterclaim Five (for grossly negligent failure to abate the presence of hazardous substances) of Defendants Clarios, Ramcar, Ekco, Kinsbursky, and Gould, against Plaintiffs, for lack of subject matter jurisdiction, under Federal Rules of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief may be granted, under Federal Rules of Civil Procedure 12(b)(6).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1    This motion is based on this Notice of Motion and Motion, the Memorandum

2    of Points and Authorities filed concurrently, the pleadings and papers filed in this

3    case, and upon such other matters as may be presented to the Court at the time of

4    the hearing. This motion is made following the conference of counsel pursuant to

5    L.R. 7-3, which took place on June 3, 2021.

6

7    Dated:  June 14, 2021                    Respectfully submitted,

8
                                             ROB BONTA
9                                            Attorney General of California
                                             SARAH E. MORRISON
10                                           TIMOTHY E. SULLIVAN
                                             Supervising Deputy Attorneys General
11

12                                           _____/s/ Donald A. Robinson_____

13
                                             DONALD A. ROBINSON
14                                           DENNIS A. RAGEN
                                             AARTI S. KEWALRAMANI
15                                           DAVID ZAFT
                                             ELIZABETH B. RUMSEY
16                                           Deputy Attorneys General
                                             *Attorneys for Plaintiffs*
17                                           *California Department of Toxic*
                                             *Substances Control and the Toxic*
18                                           *Substances Control Account the Toxic*
                                             *Substances Control Account*
19

20

21

22

23

24

25

26

27

28

ROB BONTA
Attorney General of California
SARAH E. MORRISON, SBN 143459
TIMOTHY E. SULLIVAN, SBN 197054
Supervising Deputy Attorneys General
DAVID ZAFT, SBN 237365
DENNIS A. RAGEN, SBN 106468
ELIZABETH B. RUMSEY, SBN 257908
AARTI S. KEWALRAMANI, SBN 247068
DONALD A. ROBINSON, SBN 72402
Deputy Attorneys General
300 South Spring Street Suite 1702
Los Angeles, CA 90013
Phone: (213) 259-6372
Fax: (213) 897-2802
E-mail: David.Zaft@doj.ca.gov
*Attorneys for Plaintiffs*
*California Department of Toxic Substances Control*
*and the Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT, <br><br> Plaintiffs, <br><br> v. <br><br> NL INDUSTRIES, INC., et al., <br><br> Defendants. | 2:20-cv-11293-SVW-JPR <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** <br><br> Date:          August 9, 2021 <br> Time:          1:30 p.m. <br> Courtroom:   10A <br> Judge:         Hon. Stephen V. Wilson <br> Trial Date:    TBD <br> Action Filed: December 14, 2020 |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................... 1

Factual and Procedural History ...................................................................... 2

Legal Standard for a Motion to Dismiss ........................................................ 4

Argument ........................................................................................................ 5

I.    Counterclaim One Fails to State a Claim That DTSC is Liable Under CERCLA Section 107 ............................................................... 5

    A.    A Government's Regulation and Cleanup of a Hazardous Waste Facility and Its Contamination Does Not Make It an "Operator" Under CERCLA. ............................................... 5

    B.    Defendants Fail to Allege the Necessary Facts to Support the Legal Conclusion That DTSC's Permitting and Cleanup Decisions at the Vernon Plant Are Those of an "Operator" Under CERCLA ................................................... 8

II.   Counterclaim Two, for Declaratory Judgment Under CERCLA Section 113, Also Fails to State a Claim. .......................................... 12

III.  Counterclaim Three Must Be Dismissed Because DTSC Is Not an "Operator", and Thus Defendants Are Not Entitled to Contribution or Indemnity Under the HSAA. ................................... 12

IV.   Counterclaim Four Must Be Dismissed Because the Court Lacks Subject Matter Jurisdiction and Because the HWCL Was Not Meant to Protect Defendants from Financial Injury. ........................ 14

    A.    The Court Lacks Subject Matter Jurisdiction over Counterclaim Four Because Plaintiffs Have Not Waived Sovereign Immunity. ............................................................. 14

    B.    Defendants Also Fail to State a Claim for Relief. ................. 18

        1.    Statutory background .................................................. 18

        2.    Defendants' alleged injuries are not the "particular kind of injury" that the HWCL was "designed to protect against." ........................................................ 19

V.    Counterclaim Five Must Be Dismissed Because the Court Lacks Subject Matter Jurisdiction and Because Defendants Fail State a Claim Upon Which Relief May Be Granted ..................................... 21

    A.    The Court Lacks Subject Matter Jurisdiction over Counterclaim Five Because Plaintiffs Have Not Waived Sovereign Immunity. ............................................................. 21

    B.    Defendant Also Fail to State a Claim for Relief ................... 21

        1.    Defendants failed to allege a statutory basis for relief ........................................................................... 22

        2.    Counterclaim Five also fails because Section 25400 does not establish a mandatory duty and the HWCL was not "designed to protect against" Defendants' injuries. ....................................................................... 23

i

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

Conclusion ......................................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Ameron Inter'l Corp. v. Ins. Co. of State of Pa.*
  50 Cal. 4th 1370 (Cal. 2010) ........................................................... 13

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................................................................... 5, 11

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*
  217 F. Supp. 2d 1028 (C.D. Cal. 2002) .......................................... 18

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*
  No. 2:14–595 WBS EFB, 2014 WL 4627248 (E.D. Cal. Sept. 16,
  2014) ............................................................................................ 17

*City of Los Angeles v. Super. Court of Los Angeles Cty.*
  62 Cal. App. 5th 129 (2021) ........................................................... 25

*Coeur D'Alene Tribe v. Asarco Inc.*
  280 F. Supp. 2d 1094 (D. Idaho 2003) .......................................... 9, 11

*Coppola v. Smith*
  19 F. Supp. 3d 960 (E.D. Cal. 2014) ............................................... 12

*Coppola v. Smith*
  935 F. Supp. 2d 993 (E.D. Cal. 2013) ............................................. 13

*Dep't of Toxic Substances Control v. Superior Ct.*
  44 Cal. App. 4th 1418 (1996) ......................................................... 20

*Eastburn v. Reg'l Fire Protection Auth.*
  31 Cal. 4th 1175 (2003) ............................................................ 23, 25

*Epstein v. Wash. Energy Co.*
  83 F.3d 1136 (9th Cir. 1996) ............................................................ 5

*FMC Corp. v. U.S. Dep't of Commerce*
  29 F.3d 833 (3d Cir. 1994) (en banc) ....................................... 6, 9, 10

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

*Guzman v. Cty. of Monterey*

4

   46 Cal. 4th 887 (2009).................................................................... 19, 22

5

*Haggis v. City of Los Angeles*

6

   22 Cal. 4th 490 (2000)............................................................ 19, 24, 25

7

*In re Lazar*

8

   237 F.3d 967 (9th Cir. 2001) ................................................................ 15

9

*Jensen v. United States*

   No. 2:12-CV-01418-JAM-EFB, 2012 WL 4755169 (E.D. Cal. Oct.

10

   4, 2012)................................................................................................. 23

11

*Kohler v. CJP, Ltd.*

12

   818 F. Supp. 2d 1169 (C.D. Cal. 2011)............................................. 4, 5

13

*Lockheed Martin Corp. v. United States*

14

   35 F. Supp. 3d 92 (D.D.C. 2014) ........................................................ 11

15

*M.B. by and through Bilokonsky v. United States*

   No. 19-CV-1054-CAB-AHG, 2019 WL 6329068 (S.D. Cal. Nov.

16

   26, 2019)............................................................................................... 22

17

*Miraflor v. Peachstate Health Mgmt., LLC*

18

   17-CV-02046-DSF-(SPx), 2020 WL 3841047 (C.D. Cal. Feb. 11,

19

   2020).................................................................................................... 18

20

*New York v. General Electric Co.*

   No. 1:14-CV-747, 2015 WL 12748007 (N.D.N.Y. Sept. 29, 2015).................. 18

21

22

*Orange Cty. Water Dist. v. The Arnold Eng'g Co.*

   196 Cal. App. 4th 1110 (2011)........................................................... 13

23

*People v. Martin*

24

   211 Cal. App. 3d 699 (Cal. Ct. App. 1989)........................................ 21

25

*PPG Indus. Inc. v. United States*

26

   957 F.3d 395 (3d Cir. 2020) ............................................................ 8, 9

27

*Sprewell v. Golden State Warriors*

28

   266 F.3d 979 (9th Cir. 2001) ................................................................ 5

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Stilloe v. Almy Bros., Inc.*
  782 F. Supp. 731 (N.D.N.Y. 1992) ..................................................................... 10

*Team Enterprises, LLC v. W. Inv. Real Est. Tr.*
  647 F.3d 901 (9th Cir. 2011) ............................................................................. 6

*Union Station Assocs., LLC v. Puget Sound Energy, Inc.*
  238 F. Supp. 2d 1226 (W.D. Wash. 2002) ......................................................... 12

*United Alloys, Inc. v. Baker*
  797 F. Supp. 2d 974 (C.D. Cal. 2011) ................................................................ 13

*United States v. Am. Color and Chem. Corp.*
  858 F. Supp. 445 (M.D. Pa. 1994) ............................................................... 17, 18

*United States v. Bestfoods*
  524 U.S. 51 (1998) ..........................................................................6, 7, 8, 9, 11

*United States v. Dart Indus., Inc.*
  847 F.2d 144 (4th Cir. 1988) ............................................................................. 10

*United States v. Green*
  33 F. Supp. 2d 203 (W.D.N.Y. 1998) ........................................................15, 16, 17

*United States v. Iron Mountain Mines, Inc.*
  952 F. Supp. 673, 678–79 (E.D. Cal. 1996) ...................................................... 15

*United States v. Montrose Chem. Corp. of Cal.*
  788 F. Supp. 1485 (C.D. Cal. 1992) ..........................................................14, 15, 24

*United States v. Placer Mining Corp.*
  No. CV 04–126–N–ELJ, 2007 WL 1576559 (D. Idaho May 20,
  2007) ................................................................................................15, 16, 17

*United States v. Sterling Centrecorp Inc.*
  977 F.3d 750 (9th Cir. 2020) ........................................................................7, 8, 9

*Varlitskiy v. Cty. of Riverside*
  No. EDCV192099JGBSPX, 2020 WL 6049935 (C.D. Cal. Aug. 11,
  2020) ............................................................................................................. 20

v

# TABLE OF AUTHORITIES
## (continued)

Page

STATUTES

United States Code, Title 42
    § 9601 ............................................................................................... 2, 4
    § 9607 ................................................................................................. 12
    § 9607(a) ....................................................................................... 13, 16
    § 9607(a)(2) .......................................................................................... 6
    § 9613(g)(2) ....................................................................................... 12
    § 9613(g)(2)(B) ................................................................................. 12

California Civil Code
    § 3479 .................................................................................................. 4
    § 3480 .................................................................................................. 4
    § 3491 .................................................................................................. 4

California Government Claims Act ....................................................... 22

California Government Code
    § 813 ................................................................................................... 22
    § 815(a) .............................................................................................. 22
    § 815.6 ...................................................................... 18, 20, 22, 23, 24

California Hazardous Substance Account Act .......2, 3, 4, 11, 12, 13, 14, 15, 16, 18

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

California Health and Safety Code

4
 § 25100 ...................................................................................2, 21

5
 § 25101 .................................................................................20, 21

 § 25300 ........................................................................................2

6
 § 25301 ......................................................................................13

 § 25320 ........................................................................................2

7
 § 25322 ........................................................................................2

8
 § 25323.5(a)(1) ..........................................................................13

 § 25360 ........................................................................................4

9
 § 25363(d) .......................................................................12, 13, 14

10
 § 25400 ..............................................................................22, 23, 24

 § 25400(a) ..........................................................................23, 24

11
 § 25400(b) ................................................................................24

12
 § 25400(c) ................................................................................24

 § 58009 ........................................................................................4

13
 § 58010 ........................................................................................4

14
Comprehensive Environmental Response, Compensation, and Liability

15
 Act

16
 § 107 ......................................................................................5, 10

 § 107(a) ........................................................................6, 12, 13

17
 § 107(a)(2) ..................................................................................6

18
 § 107(b) ....................................................................................17

 § 107(d)(2) ................................................................................11

19
 § 113(g)(2)(B) ..........................................................................12

20
Comprehensive Environmental Response, Compensation, and Liability

21
 Act..........................................2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19

22
**CONSTITUTIONAL PROVISIONS**

23
United States Constitution Eleventh Amendment ................................2, 14

24
**COURT RULES**

25
Federal Rules of Civil Procedure

26
 Rule 12(b)(1) ........................................................................4, 14

27
 Rule 12(b)(6) ........................................................................5, 11

 Rule 13(a) ..................................................................................15

28

# INTRODUCTION

Plaintiffs California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control Account (collectively, "Plaintiffs") have spent over $136 million in public funds to assess and clean up hazardous waste contamination caused by releases from the former lead smelter in Vernon, California ("Vernon Plant"). Future cleanup, estimated to cost hundreds of millions of dollars more, still needs to occur. This widespread contamination was caused by releases of lead and other heavy metals from the Vernon Plant.

Plaintiffs seek to recover their response costs from ten defendants who contributed to the contamination at the Site: NL Industries, Inc. ("NL"); JX Nippon Mining & Metals Corp. ("JX"); Gould Electronics, Inc. ("Gould"), Kinsbursky Bros. Supply, Inc. ("Kinsbursky"); Trojan Battery Company ("Trojan"); Ramcar Batteries, Inc. ("Ramcar"); Clarios, LLC ("Clarios"); Quemetco, Inc. ("Quemetco"); International Metals Ekco, Ltd. ("Ekco"); and Blount, Inc. ("Blount"). Plaintiffs also seek a declaratory judgment that these Defendants are liable for future costs that Plaintiffs may incur, as well as an injunction requiring these Defendants to clean up the remaining contamination they caused.

In response, Defendants counterclaim against DTSC, asserting that DTSC (a State of California regulatory agency) is itself a liable party. The Court should dismiss Defendants' Counterclaims as a baseless attempt to shift their legal responsibility to the government. Counterclaims One, Two, and Three hinge on establishing that DTSC was an "operator" under applicable federal or state law. Defendants' arguments fail. Case law is clear that the government can only be liable as an "operator" if it acted like an owner or manager, from a propriety business perspective, such as through dictating production and materials decisions, and hiring decisions. Such case law concludes that the government acting purely to perform regulatory functions—such as approving and enforcing permits, plans and orders, and undertaking cleanup under applicable regulatory law—is not liable as

1  an "operator" under the Comprehensive Environmental Response, Compensation,
2  and Liability Act, 42 U.S.C. section 9601 et seq. ("CERCLA"), or the California
3  Hazardous Substances Account Act ("HSAA"), California Health and Safety Code
4  section 25300 et seq. Defendants plead *no* facts about DTSC acting like an owner
5  or manager of the Vernon Plant. The Counterclaims' recitation of facts describes
6  DTSC's permitting and cleanup decisions as a regulatory agency, and not an
7  "operator" of the Vernon Plant. Counterclaims One, Two, and Three, therefore,
8  must be dismissed.

9       The Court lacks subject matter jurisdiction over Counterclaims Four and Five
10  because they are not compulsory counterclaims for which Plaintiffs waived their
11  Eleventh Amendment and sovereign immunities. Those Counterclaims also fail to
12  state a claim upon which relief may be granted because they fail to allege that
13  DTSC had a mandatory duty or that the predicate statute upon which they rely was
14  intended to protect against their alleged injuries.

15                    **FACTUAL AND PROCEDURAL HISTORY**

16       DTSC is the state regulatory agency with the authority to enforce California's
17  hazardous waste laws and regulations and to minimize or eliminate the threat to
18  public health and the environment at sites contaminated with hazardous substances.
19  This dual responsibility involves (1) regulating existing facilities that handle, treat,
20  store, and dispose of hazardous waste under the California's Hazardous Waste
21  Control Law ("HWCL"), California Health and Safety Code section 25100 et seq.,
22  and (2) undertaking or directing "response actions" under the HSAA at sites where
23  actual and threatened releases of hazardous substances pose dangers to the well-
24  being of California's citizens under the HSAA.[2]

25       Defendants owned, operated, and/or sent hazardous waste to the Vernon
26  Plant, a secondary metals smelter. The Vernon Plant operated from approximately

27
28  _____
     [2] "Response actions" include removal and remedial actions at such sites. Cal.
     Health & Safety Code §§ 25320, 25322; *see also* 42 U.S.C. § 9601(25).

                                        2

1925 to 2015. Complaint ¶¶ 41, 42, 95; Dec. 14, 2020, ECF No. 1 (hereinafter "Compl."). During that time, operations at the Vernon Plant released lead and other Contaminants of Concern ("COCs")[3] into the environment, which contaminated both the smelter property and the soil and groundwater in the surrounding areas (the "Site"). *See, e.g.*, Compl. ¶¶ 2, 5, 6, 41, 48, 49, 50, 79, 91.[4] Within the Site, there are over 10,000 sensitive land use properties (residences, schools, childcare facilities, and parks). Compl. ¶ 41. As a result, thousands of people living and working in the Site have been, and continue to be, exposed to COCs from the Vernon Plant operations. Compl. ¶¶ 2, 3, 49, 56–64.

Given the exposure and risk of health impacts to nearby residents, the Vernon Plant has been subject to extensive regulation and enforcement actions by DTSC dating back to at least 1990. Compl. ¶¶ 67, 69–76. Since 2014, DTSC has been conducting sampling and cleanup actions at thousands of contaminated residential properties. Compl. ¶¶ 4, 13, 71, 79. DTSC sampled soil at over 8,500 parcels within an area approximately 1.7 miles around the Vernon Plant and continues to conduct soil sampling. Compl. ¶¶ 89, 90. DTSC has cleaned up or overseen the cleanup of lead-contaminated soil at over 2,136 properties within the Site. Compl. ¶¶ 83–88. In 2015 and 2020, DTSC issued Imminent and Substantial Endangerment Determinations pursuant to its authority under the HSAA. These Determinations included findings that releases of COCs from the Vernon Plant contributed to the elevated concentrations of lead and other COCs in the soil at the Vernon Plant and in surrounding areas. Compl. ¶¶ 81, 91. DTSC's response actions remain ongoing.

---

[3] The "Contaminants of Concern" include lead, aluminum, antimony, arsenic, cadmium, cobalt, mercury, selenium, thallium, zinc, sulfuric acid, chlorinated Volatile Organic Compounds ("VOCs") including trichloroethylene ("TCE"), carbon tetrachloride and tetrachloroethylene, aromatic VOCs, including benzene, semi-VOCs including naphthalene and polycyclic aromatic hydrocarbons ("PAHs"), dioxins and/or furans. Compl. ¶ 5.

[4] The Site refers to the Vernon Plant and the horizontal and vertical extent of the contamination from the Vernon Plant, including any area where any hazardous substance from the Vernon Plant has come to be located. Compl. ¶ 6.

DTSC will continue to incur costs at the Site as a result of the releases and/or threatened releases of hazardous substances from the Plant. Compl. ¶ 92.

On December 14, 2020, DTSC acted in furtherance of its statutory authority by filing the present action against Defendants and pleading causes of action under CERCLA, 42 U.S.C. § 9601 et seq., the HSAA, California Health and Safety Code section 25360, and California Civil Code sections 3479, 3480 and 3491, and California Health and Safety Code sections 58009 and 58010.

Seven of the Defendants—Clarios, Ramcar, Quemetco, Ekco, Kinsbursky, Blount, and Gould—responded to the Complaint on April 22, 2021, filing answers, defenses, and counterclaims. ECF Nos. 50, 51, 53, 55, 58, 59, 60. All seven Defendants filed counterclaims against DTSC under CERCLA and the HSAA on the basis that DTSC allegedly mismanaged the Site cleanup and regulatory oversight (Counterclaims One, Two, and Three). All, except Blount, also counterclaimed against DTSC on the theory that DTSC was also negligent for failing to discharge specific mandatory duties with respect to the Vernon Plant (Counterclaim Four). Finally, all, except Blount and Quemetco, also counterclaimed against DTSC on the theory that DTSC acted with gross negligence in failing to abate the presence of hazardous substances at and around the Vernon Plant (Counterclaim Five).

DTSC's Motion to Dismiss Defendants' Counterclaims is filed within the period specified in the Court's Order on Stipulation Requesting Extension of Time to Respond to Answers and Counterclaims. ECF No. 62.

## LEGAL STANDARD FOR A MOTION TO DISMISS

Plaintiffs move to dismiss the Counterclaims under Federal Rules of Civil Procedure Rule 12(b)(1) (lack of subject matter jurisdiction) and (6) (failure to state a claim upon which relief may be granted). A party alleging lack of subject matter jurisdiction under Rule 12(b)(1) may do so based on the face of the pleadings. *Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1172 (C.D. Cal. 2011). The non-moving

party "bears the burden of demonstrating that the court has subject matter jurisdiction to hear the action." *Kohler*, 818 F. Supp. 2d at 1172 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989)). In ruling on motions attacking the counterclaim on its face, "courts must accept the allegations of the complaint as true." *Kohler*, 818 F. Supp. 2d at 1172.

When the legal sufficiency of a complaint (or counterclaim) is tested by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the factual allegations in the counterclaim must be taken as true. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). A court, however, is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). While a defendant filing a counterclaim need plead only enough facts to state a claim to relief that is plausible on its face, this "plausibility" standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–557 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

**I.    COUNTERCLAIM ONE FAILS TO STATE A CLAIM THAT DTSC IS LIABLE UNDER CERCLA SECTION 107.**

### A.    A Government's Regulation and Cleanup of a Hazardous Waste Facility and Its Contamination Does Not Make It an "Operator" Under CERCLA.

Asking the Court to hold DTSC liable for actions protecting the public from harm *they* created, Defendants, in Counterclaim One, seek contribution under section 113(f) of CERCLA, 42 U.S.C. § 9613(f). The right to section 113(f) contribution is entirely dependent, however, on Defendants alleging that DTSC's

conduct puts DTSC in one of the categories of "liable persons" under section 107(a) of CERCLA. *See* 42 U.S.C. § 9613(f) ("Any person may seek contribution from any other person *who is liable or potentially liable under section 9607. . . .*" (emphasis added). Section 107(a)(2) of CERCLA provides that any person who operated a facility at the time of disposal of any hazardous substances is liable as an "operator." 42 U.S.C. § 9607(a)(2); *see Team Enterprises, LLC v. W. Inv. Real Est. Tr.*, 647 F.3d 901, 907, n.2 (9th Cir. 2011). But a government agency is not considered an "operator" because of its involvement in the *regulation* of the very facility that created dangerous public health conditions, or for *responding* to those conditions through direct cleanup work. Defendants' allegations of DTSC's actions or inaction with respect to the HWCL describe classic *regulatory* functions that do not satisfy the test for "operator" liability under CERCLA.

"CERCLA does not intend to discourage the government from making cleanup efforts by making the government liable for such efforts"; therefore, "governmental regulatory activities undertaken solely with the purpose of cleaning up hazardous materials—activities undertaken 'to ameliorate a dangerous situation that, but for the prior action of the generators and transporters of the hazardous waste, would not exist'" do not give rise to operator liability under CERCLA. *FMC Corp. v. U.S. Dep't of Commerce*, 29 F.3d 833, 841 (3d Cir. 1994) (en banc) (quoting *U.S. v. Atlas Minerals and Chemicals, Inc.*, 797 F. Supp. 411, 421 (E.D.Pa. 1992). Defendants cite *United States v. Bestfoods*, 524 U.S. 51, 66 (1998), for their contention that "operator" liability attaches when a party "'manage[s], direct[s], or conduct[s] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or

/ / /

/ / /

/ / /

/ / /

6

decisions about compliance with environmental regulations.'"[5] *See, e.g.,* ECF No. 50 ¶ 8. The *Bestfoods* decision, however, did not articulate a new standard for determining government liability under CERCLA. Cases decided after *Bestfoods* continue to apply a narrow test when examining whether the government's regulatory and cleanup actions at a hazardous waste facility or site constitute the degree of control required to hold a government entity liable as an "operator" under CERCLA.

To be liable as an operator under CERCLA, DTSC must have had more than "general control over an industry or facility." *United States v. Sterling Centrecorp Inc.*, 977 F.3d 750, 758 (9th Cir. 2020) (citing *Bestfoods*, 524 U.S. at 66). Rather, DTSC must have had "some level of direction, management, or control over the facility's polluting activities." *Id.* To find a government agency liable as an operator of a privately-owned hazardous waste facility, it "must play an active role *in running the facility*, typically involving hands-on, day-to-day participation in the facility's management." *Id.* (quoting *Long Beach Unified Sch. Dist. v. Dorothy B. Godwin Calif. Living Trust*, 32 F.3d 1364, 1367 (9th Cir. 1994) (emphasis added)). Nothing in DTSC's involvement at the Vernon Plant went beyond typical regulatory responsibilities, and Defendants do not allege otherwise. None of Defendants' allegations describe "hands-on, day-to-day participation in the [Vernon Plant's] management."

The Ninth Circuit's recent decision in *Sterling Centrecorp* is illustrative. There, the defendant in a CERCLA action attempted to argue that the United States was liable as an "operator" under CERCLA because of the response orders and actions it had taken. *Id.* at 758. The Ninth Circuit rejected that argument because the government's activities did not meet the definition of an "operator" under

---

[5] *Bestfoods* was a dispute arising out of facts relating to a parent corporation's liability for the conduct of its subsidiary, but it is sometimes cited in cases involving the government's regulation of a hazardous waste facility.

1  CERCLA. The court observed that, "while the United States had general regulatory

2  authority over the mining industry during World War II, by issuing [its response

3  order] and applying it to the Mine, it did not 'manage, direct, or conduct . . .

4  operations having to do with the leakage or disposal of hazardous waste, or

5  decisions about compliance with environmental regulations.'" *Id.* at 759 (citing

6  *Bestfoods*, 524 U.S. at 66–67). Moreover, the Ninth Circuit reached this conclusion

7  despite the fact that the United States in its order "specifically allowed for the Mine

8  to continue minimal operations," including maintaining its buildings, machinery,

9  and equipment. *Id.* at 758.

10      Similarly, in *PPG Indus. Inc. v. United States*, 957 F.3d 395, 405 (3d Cir.

11  2020), the Third Circuit analyzed whether the federal government's wartime

12  operation of a chemical production facility and associated knowledge of the

13  facility's waste stockpiling resulted in the government being an "operator" under

14  CERCLA. The court acknowledged that the United States had been involved in

15  determining prices of raw materials, quantities that could be purchased, and which

16  orders had priority. The court concluded, however, that regardless of how extensive

17  the government's regulation of this facility, it did not meet the standard for

18  "operator" liability set out in *Bestfoods*. *Id.* at 403–04. Further, PPG had argued that

19  the contamination at issue resulted from stockpiling waste outdoors and that the

20  government was aware of this practice. *Id.* at 404. Rejecting this argument, the

21  court held that the government's knowledge of this practice did not amount to being

22  an "operator" of that facility. *Ibid.* DTSC is likewise not an "operator" here.

23      **B.  Defendants Fail to Allege the Necessary Facts to Support the Legal Conclusion That DTSC's Permitting and Cleanup Decisions at the Vernon Plant Are Those of an "Operator" Under CERCLA.**

26      In support of their claim for CERCLA contribution, Defendants allege that

27  DTSC is an operator under CERCLA because it made decisions on permit

28  applications for the Vernon Plant, issued response action plans, and, by conducting

8

1  cleanup at the Vernon Plant, undertook to ameliorate the dangerous conditions at

2  and around the Plant caused by the Defendants. But those are all typical

3  government regulatory actions that have been held not to impose CERCLA operator

4  liability on the government. In Counterclaim One, for example, Defendants contend

5  that DTSC is liable as a CERCLA operator, but they point only to typical

6  regulatory agency response actions at the Vernon Plant:

7           DTSC has been involved in cleanup efforts in connection

8           with the Vernon Plant since at least 2015. During that

9           time, DTSC issued multiple cleanup plans that selected

10          and implemented response actions at the 'site' of the

11          Vernon Plant.... DTSC itself organized and executed these

12          response actions.

13  ECF No. 50 ¶ 78; ECF No. 51 ¶ 78; ECF No. 55 ¶ 78; ECF No. 58 ¶ 85; ECF No.

14  59 ¶ 38; ECF No. 60 ¶ 87.[6] When measured against the type of activities that would

15  actually make a government agency liable as an "operator," however, they do not

16  meet the test in the Ninth Circuit's *Sterling Centrecorp* decision.

17      Cases decided both before and after *Bestfoods* have provided examples of

18  what types of government actions, in combination, would be sufficient to constitute

19  management and control over a polluting facility. *See PPG Indus.*, 957 F.3d at 405

20  (citing *FMC*, 29 F.3d at 833). A non-exhaustive list of those actions identified in

21  these cases includes: (1) commissioning the building of and owning a facility; (2)

22  having a representative on site during the waste-generating operations; (3) ordering

23  a facility to produce a particular product; and (4) supplying employees for work at a

24  facility. *See, e.g.*, *FMC*, 29 F.3d at 844–45 (finding operator liability where the

25  government effectively seized total control of the plant's operations, for military

26  production, by requiring the manufacturer to convert its plant to produce a different

27  product and being involved in waste disposal); *see, also, Coeur D'Alene Tribe v.*

28      [6] Defendant Quemetco alleges similar, but fewer, facts. ECF No. 53 ¶ 17.

1   *Asarco Inc.,* 280 F. Supp. 2d 1094, 1130 (D. Idaho 2003), *modified in part sub*

2   *nom. United States v. Asarco Inc.*, 471 F. Supp. 2d 1063 (D. Idaho 2005)

3   (evaluating, and finding lack of evidence about, the government controlling product

4   price, wages, length of work week or financing decisions).

5       Defendants have not made allegations that DTSC engaged in such or similar

6   actions, and they cannot do so. Their Counterclaims do not allege that DTSC

7   ordered the construction of or owned the Vernon Plant; had a representative on-site

8   as the hazardous waste was being generated, treated, stored, or disposed; was

9   involved in determining the primary operations that the Plant engaged in; hired or

10  fired employees to work at the Plant; controlled prices, wages, length of work week

11  or financing decisions, or anything remotely similar. *See FMC*, 29 F.3d at 844–45.

12      As described above, courts have declined to impose liability on government

13  agencies for actions related to the government's effort to prevent through regulatory

14  action, or remedy, dangerous conditions resulting from releases of hazardous

15  substance into the environment. In *United States v. Dart Indus., Inc.*, 847 F.2d 144,

16  146 (4th Cir. 1988), allegations in a third-party complaint that a state environmental

17  agency "did not properly monitor the site or facilitate the cleanup fail[ed] to

18  characterize [the state agency] as an operator." The third-party plaintiffs were

19  "unable to specify any 'hands-on' activities . . . that contributed to the release of

20  hazardous wastes." *Id.* Based on the absence of any "hands-on" activities at the site,

21  the court dismissed the third-party complaint against the agency.

22      Likewise, in *Stilloe v. Almy Bros., Inc.*, 782 F. Supp. 731, 736 (N.D.N.Y.

23  1992), the court dismissed CERCLA cost recovery and contribution counterclaims

24  against a state environmental agency because the counterclaims lacked allegations

25  that the state agency "had any nexus to the site other than by reason of its remedial

26  clean-up activities." The court held that "when a state is acting *solely* in its statutory

27  capacity to clean up a hazardous waste site, this activity does not raise its status to

28  that of an operator within the meaning of CERCLA section 107." *Id.* In the instant

action, Defendants' Counterclaims assert a *legal* conclusion that DTSC's issuance of cleanup plans and implementation of response actions "constitute managing, directing, and/or conducting operations." *See, e.g.*, ECF No. 50 ¶ 78. Lacking the necessary evidentiary support in the Counterclaims, this legal conclusion has little, if any, weight for purposes of Rule 12(b)(6). *See Ashcroft*, 556 U.S. at 678.

Defendants completely fail to allege facts about DTSC's involvement that would rise to "operator" status under the cases discussed above. Defendants' allegations with regard to government investigation and cleanup response action were undertaken by DTSC between 2015 to 2020, after the Vernon Plant ceased operation in 2015. Decisions subsequent to *Bestfoods* focused on the managerial "control" over a facility while it is in operation, not when it is undergoing investigation and cleanup. *See, e.g.*, *Lockheed Martin Corp. v. United States*, 35 F. Supp. 3d 92, 145–50 (D.D.C. 2014), *aff'd*, 833 F.3d 225 (D.C. Cir. 2016) ("Although the government had a significant presence and role at the Sites, there is no evidence that the government used its influence to manage or control the day-to-day disposal of hazardous wastes there."); *Coeur D'Alene Tribe v. Asarco Inc.*, 280 F. Supp. 2d 1094, 1130 (D. Idaho 2003), *modified in part sub nom. United States v. Asarco Inc.*, 471 F. Supp. 2d 1063 (D. Idaho 2005) (determining that the government did not control product price, wages, length of work week or financing decisions; nor had it been aware of the waste generated and its disposal method).

This litigation concerns DTSC actions performed in furtherance of the goal in both CERCLA and the HSAA to remediate contaminated properties and to reimburse the public for costs the government incurred in performing this important statutory responsibility. Instead, Defendants' counterclaims try to misdirect the focus of this controversy to attack DTSC's regulatory and cleanup actions.[7] DTSC

---

[7] Paragraph 81 of Clarios' counterclaim (ECF No. 50), for example, cites section 107(d)(2) of CERCLA in support of their allegations that DTSC was grossly negligent in its management of the Vernon Plant's cleanup. Section

respectfully requests that the Court reject Defendants' attempt to shift responsibility and liability onto the public and dismiss Defendants' Counterclaim One for failure to state facts sufficient to constitute a cause of action.

## II. COUNTERCLAIM TWO, FOR DECLARATORY JUDGMENT UNDER CERCLA SECTION 113, ALSO FAILS TO STATE A CLAIM.

Defendants' Counterclaim Two seeks declaratory relief under CERCLA section 113(g)(2)(B), 42 U.S.C. § 9613(g)(2)(B), based on Defendants' faulty analysis that DTSC is within one of the four classes of persons subject to CERCLA's section 107(a) liability provisions.

Defendants' CERCLA declaratory relief claim is entirely derivative of Defendants' Counterclaim One. *Coppola v. Smith*, 19 F. Supp. 3d 960, 977 (E.D. Cal. 2014) ("A claim for declaratory relief under 42 U.S.C. § 9613(g)(2) is dependent upon a valid 42 U.S.C. § 9607 claim."). Therefore, because the Court should dismiss Counterclaim One for the reasons described above, Counterclaim Two–for declaratory relief–also must be dismissed for failure to state a claim. *Union Station Assocs., LLC v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002) ("[Plaintiff] has asserted two claims for federal declaratory relief, one under CERCLA § 113(g)(2) and the other under the Declaratory Judgment Act, 28 U.S.C. § 2201 . . . . [N]either can stand in the absence of a substantive cause of action.").

## III. COUNTERCLAIM THREE MUST BE DISMISSED BECAUSE DTSC IS NOT AN "OPERATOR", AND THUS DEFENDANTS ARE NOT ENTITLED TO CONTRIBUTION OR INDEMNITY UNDER THE HSAA.

Defendants allege in Counterclaim Three that DTSC is liable for contribution and/or indemnity under California Health and Safety Code section 25363(d) for some or all of the response costs Defendants expect to incur for cleanup of the

---

107(d)(2), however, is an *immunity* from liability for costs and damages. It does not create a legal basis for that liability; nor does it excuse Defendants from alleging facts sufficient to state a claim that DTSC is liable under CERCLA, which Defendants have not done.

Vernon Plant. Counterclaim Three fails because DTSC is not a "liable person" under the HSAA.

The California Legislature passed the HSAA in 1981 as the state counterpart to CERCLA. *Ameron Inter'l Corp. v. Ins. Co. of State of Pa.*, 50 Cal. 4th 1370, 1379 (Cal. 2010). One of the primary purposes of the HSAA was to "[e]stablish a program to provide for response authority for releases of hazardous substances, including spills and hazardous waste disposal sites that pose a threat to the public health or the environment." Cal. Health & Safety Code § 25301. The HSAA is generally interpreted consistent with the provisions of CERCLA. *Coppola v. Smith*, 935 F. Supp. 2d 993, 1011 (E.D. Cal. 2013); *see also United Alloys, Inc. v. Baker*, 797 F. Supp. 2d 974, 1005 (C.D. Cal. 2011).

The HSAA expressly incorporates the same liability standards, defenses, and classes of responsible persons as those set forth in CERCLA. *Coppola*, 935 F. Supp. 2d at 1011. Under the HSAA, the terms "responsible party" and "liable person" are "those persons described in Section 107(a) of [CERCLA]"—i.e., current owners, past owners at the time of disposal, arrangers, and transporters. 42 U.S.C. § 9607(a); Cal. Health & Safety Code § 25323.5(a)(1).

The HSAA mirrors CERCLA's contribution and indemnity provisions by providing that "[a] person who has incurred response costs or corrective action in accordance with [the HSAA] or [CERCLA] may seek contribution or indemnity *from any person who is liable pursuant to [the HSAA]*." Cal. Health & Safety Code § 25363(d) (emphasis added); *see also Orange Cty. Water Dist. v. The Arnold Eng'g Co.*, 196 Cal. App. 4th 1110, 1124 (2011). In Counterclaim Three, Defendants seek contribution or indemnity from DTSC based on section 25363(d).

Defendants, however, have not alleged any additional facts to support a finding of "operator" liability under the HSAA beyond those alleged in Counterclaim One. Because Defendants have not alleged sufficient facts to establish that DTSC is an "operator" of the Vernon Plant under CERCLA, as

described above in Section I, they have not alleged sufficient facts that DTSC is a "responsible party" or "liable person" under the HSAA. Therefore, Defendants' Counterclaim Three, which seeks to hold DTSC liable for contribution or indemnity under California Health and Safety Code section 25363(d), fails to state a claim upon which relief can be granted and must be dismissed.

**IV.   COUNTERCLAIM FOUR MUST BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION AND BECAUSE THE HWCL WAS NOT MEANT TO PROTECT DEFENDANTS FROM FINANCIAL INJURY.**

In Counterclaim Four, Defendants allege that DTSC negligently failed to discharge certain mandatory duties under the HWCL, that DTSC thereby breached those duties, and that those breaches caused Defendants' financial CERCLA-liability injuries. The Court should dismiss Counterclaim Four for lack of subject matter jurisdiction because the Counterclaim is not compulsory, and Plaintiffs did not waive their Eleventh Amendment and sovereign immunities against permissive counterclaims. The Court should also dismiss it because the HWCL statutory duties at issue were enacted to prevent public health risks and environmental injury caused *by* responsible parties—they were not enacted to prevent financial injury *to* those responsible parties.

### A.   The Court Lacks Subject Matter Jurisdiction over Counterclaim Four Because Plaintiffs Have Not Waived Sovereign Immunity.

Counterclaim Four must be dismissed because the Court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). The "Eleventh Amendment restrains the federal judicial power to hear suits against an unconsenting state," and the "doctrine of sovereign immunity protects the state from all suits in all courts." U.S. Const. amend. XI; *United States v. Montrose Chem. Corp. of Cal.*, 788 F. Supp. 1485, 1493 (C.D. Cal. 1992) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98–99 (1984)). Although Plaintiffs partially waive these immunities with respect to compulsory recoupment counterclaims when it files suit in federal court, Defendants' Counterclaim is not compulsory because it does not

1    arise out of the same transaction or occurrence as Plaintiffs' action. *Montrose*, 788

2    F. Supp. at 1493; *United States v. Iron Mountain Mines, Inc.*, 952 F. Supp. 673,

3    678–79 (E.D. Cal. 1996).[8]

4         To determine whether a counterclaim arises out of the same transaction or

5    occurrence as the primary action or claim, courts apply the "logical relationship"

6    test under Fed. R. Civ. P. 13(a). *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001);

7    Fed. R. Civ. P. 13(a). "A logical relationship exists when the counterclaim arises

8    from the same aggregate set of operative facts as the initial claim, in that the same

9    operative facts serve as the basis of both claims or the aggregate core of facts upon

10   which the claim rests activates additional legal rights otherwise dormant in the

11   defendant." *Lazar*, 237 F.3d at 979 (citation omitted).

12        In this case, there is no "logical relationship" between Defendants'

13   Counterclaim Four and Plaintiffs' underlying action. Plaintiffs' cost recovery action

14   involves different factual and legal issues than those raised in Counterclaim Four.

15   In support of their Counterclaims, Defendants allege facts regarding events wholly

16   unrelated to Plaintiffs' CERCLA action–events that took place (or not, allegedly)

17   after most of the hazardous substances were released at the Site. ECF No. 50 ¶¶ 11–

18   60; ECF No. 51 ¶¶ 10–60; ECF No. 53 ¶¶ 7–9; ECF No. 55 ¶¶ 11–60; ECF No. 58

19   ¶¶ 11–67; ECF No. 60 ¶¶ 11–69; *see United States v. Green*, 33 F. Supp. 2d. 203,

20   220 (W.D.N.Y. 1998) (finding that the basis for the defendant's counterclaim

21   "occurred *after* the events which form the basis of Plaintiff's CERCLA cost

22   recovery claim") ; *United States v. Placer Mining Corp.*, No. CV 04–126–N–ELJ,

23   2007 WL 1576559, at *8 (D. Idaho May 20, 2007) (same). Plaintiffs' CERCLA and

24   HSAA cost recovery action is "for the recovery of unreimbursed response costs that

25   _____

26        [8]Defendants make clear that Counterclaims Four and Five are claims for
     recoupment that are based on allegations of negligence and gross negligence. ECF
27   No. 50 ¶¶ 98, 105, Prayer for Relief; ECF No. 51 ¶¶ 99, 106, Prayer for Relief; ECF
     No. 53 ¶¶ 37, Prayer for Relief; ECF No. 55 ¶¶ 98, 105, Prayer for Relief; ECF No.
28   58 ¶¶ 105, 112, Prayer for Relief; ECF No. 60 ¶¶ 107, 114, Prayer for Relief.

Plaintiffs have incurred [as well as future costs that Plaintiffs will incur] . . . in connection with releases and/or threatened releases of hazardous substances . . . at and from" the Vernon Plant. Compl. ¶¶ 5, 7. In contrast, Defendants' counterclaim is based on allegations that DTSC did not carry out certain duties under another statute.

Furthermore, the parties' claims and counterclaims are based on different statutes——a fact that warrants finding no "logical relationship" here. *See Placer Mining*, 2007 WL 1576559, at *3; *Green*, 33 F. Supp. 2d. at 219–20. Plaintiffs' cost recovery action involves application of federal environmental law, as well as certain aspects of California's companion HSAA.[9] Compl. ¶¶ 130–53. Plaintiffs' action requires Plaintiffs to demonstrate that the Site is a "facility," that a "release or threatened release" of hazardous substances occurred at the Site, that the releases caused Plaintiffs to incur "response costs," and that the Defendants are all covered "persons" liable for those costs. *See* 42 U.S.C. § 9607(a). In contrast, Defendants' counterclaim arises solely under a completely separate law, the HWCL, which concerns the regulation and enforcement of hazardous waste management activities. ECF No. 50 ¶¶ 20, 50, 54; ECF No. 51 ¶¶ 19, 50, 54; ECF No. 53 ¶¶ 7, 8; ECF No. 55 ¶¶ 20, 50, 54; ECF No. 58 ¶¶ 20, 50, 54; ECF No. 60 ¶¶ 20, 50, 54. Defendants merely allege a tort action: that DTSC was negligent because it breached certain mandatory duties under the HWCL.

Other courts have dismissed counterclaims for recoupment brought against federal and state governments in CERCLA cost recovery actions on the basis that the counterclaims were not compulsory. These courts held that the counterclaims, which generally alleged that the government entities had been negligent in performing the cleanup, were not "logically related" to the government-plaintiff's

---

[9] Plaintiffs plead a cost recovery claim and injunctive claim under the HSAA. Compl. ¶¶ 152, 161. California's HSAA is the state analog to CERCLA. See discussion of similarity between HSAA and CERCLA above, *supra* at 12–14.

underlying CERCLA action. *See, e.g.*, *Placer Mining*, 2007 WL 1576559, at *3–8; *Green*, 33 F. Supp. 2d. at 220–21; *Am. Color and Chem. Corp.*, 858 F. Supp. at 453. In this case, Plaintiffs' "claims relate to determining the amount of the clean-up costs as well as who are responsible for releasing hazardous substances at the [] site[,]" whereas Defendants' "claims of negligence will be based on state law and factual inquiries involving the alleged negligence of the [DTSC] and its agents during the remediation." *Placer Mining*, 2007 WL 1576559, at *3.

Regardless of the veracity of these allegations, the disposition of the Counterclaim and the disposition of Plaintiffs' CERCLA claims would have no bearing on each other because, among other reasons, principles of fault or negligence are irrelevant to CERCLA's strict-liability approach. *See Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, No. 2:14–595 WBS EFB, 2014 WL 4627248, at *10 (E.D. Cal. Sept. 16, 2014); *Green*, 33 F. Supp. 2d. at 221 (finding that the outcome of the plaintiff's action would have no bearing on the disposition of the defendant's counterclaim). Because the Counterclaim focuses on different facts, events, and laws, there is an "attenuated relationship" and different set of operative facts between the Counterclaim and Plaintiffs' action and, thus, they "are not so logically related that it should be mandated that they be resolved in the same lawsuit." *See Placer Mining*, 2007 WL 1576559, at *8.

Finally, dismissing this Counterclaim is consistent with the statutory scheme of CERCLA; if Defendants wish to challenge Plaintiffs' costs, then they can do so under CERCLA. "[P]ermitting defendants to interject claims of recoupment in defense of CERCLA claims filed against them by the [government] would undermine the statutory scheme devised by Congress which permits only those defenses listed in CERCLA section 107(b) to be asserted during the liability phase of a CERCLA cost recovery action and requires claims which go to the alleged inconsistency of a response action to the National Contingency Plan, the applicable federal regulations, to be asserted during the damage/cost assessment phase of the

trial." *United States v. Am. Color and Chem. Corp.,* 858 F. Supp. 445, 453 (M.D. Pa. 1994); *see also New York v. General Electric Co.*, No. 1:14-CV-747, 2015 WL 12748007, at *10–12 (N.D.N.Y. Sept. 29, 2015).

### B.   Defendants Also Fail to State a Claim for Relief.

In Counterclaim Four, Defendants, in essence, argue that DTSC had a duty to insulate them from their financial liability under CERCLA and the HSAA. Any duty DTSC might have under the HWCL, however, is to protect against injury to public health and the environment. The State Legislature did not enact the HWCL to protect companies from financial liability created by their waste management practices.[10] Thus, Defendants fail to state a claim upon which relief may be granted.

### 1.   Statutory background

Defendants allege a claim of negligent failure to discharge a mandatory duty under California Government Code section 815.6. To prevail on this claim, Defendants must show that (1) DTSC failed to perform a mandatory duty, (2) DTSC's failure to perform the duty proximately caused an injury to the defendant, and (3) the injury was of the "particular kind of injury" that the enactment was "designed to protect against."

Regarding the third element specifically,

> [S]ection 815.6 requires that the mandatory duty be designed to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is one of the consequences which the [enacting body] sought to

---

[10] The specific injuries that Defendants allege to have suffered—a potential judgment that Defendants are each liable for the response costs incurred by DTSC, costs which Defendants allege were unnecessary—appear to be allegations that DTSC failed to mitigate damages. Failure to mitigate damages, however, is an affirmative defense, not a claim for relief. *See Miraflor v. Peachstate Health Mgmt., LLC,* 17-CV-02046-DSF-(SPx), 2020 WL 3841047 (C.D. Cal. Feb. 11, 2020). And failure to mitigate damages is not an available defense under CERCLA. *See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,* 217 F. Supp. 2d 1028, 1040–41 (C.D. Cal. 2002).

1
2
3
4
5
6
7

> prevent through imposing the alleged mandatory duty. Our inquiry in this regard goes to the legislative *purpose* of imposing the duty. That the enactment confers some benefit on the class to which plaintiff belongs is not enough; if the benefit is incidental to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6.

8   *Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 499 (2000) (internal quotations and

9   citations omitted); *see Guzman v. Cty. of Monterey*, 46 Cal. 4th 887, 898 (2009).

10
11

> **2.    Defendants' alleged injuries are not the "particular kind of injury" that the HWCL was "designed to protect against."**

12   Defendants' negligence Counterclaims fail to state a claim because the type of

13   injury they allege—potential monetary liability under CERCLA for Defendants'

14   own contributions to the contamination—is not the "particular kind of injury" that

15   the HWCL was "'designed' to protect against." *Haggis*, 22 Cal. 4th at 499.

16   Defendants allege in Counterclaim Four that DTSC owed specific mandatory

17   duties, prescribed by the HWCL, to act on pending hazardous waste facility

18   applications for the Vernon Plant by a date certain, to require corrective action to be

19   performed at and around the Vernon Plant, and to secure financial assurances from

20   the owners and operators of the Plant.[11] ECF No. 50 ¶¶ 20, 50, 54; ECF No. 51 ¶¶

21   19, 50, 54; ECF No. 53 ¶¶ 7, 8; ECF No. 55 ¶¶ 20, 50, 54; ECF No. 58 ¶¶ 20, 50,

22   54; ECF No. 60 ¶¶ 20, 50, 54. Defendants further assert that DTSC failed to

23   undertake these statutory duties and that these breaches caused Defendants to be

24   liable for "unnecessary response costs for investigation, removal, and remedial

25   actions." ECF No. 50 ¶ 73; ECF No. 51 ¶ 73; ECF No. 53 ¶ 33; ECF No. 55 ¶ 73;

26
27
28

---

[11] Plaintiffs dispute that DTSC has such mandatory duties and that DTSC breached such duties.

ECF No. 58 ¶ 80; ECF No. 60 ¶ 82. Specifically, Defendants' alleged injuries are limited to monetary damages:

> To the extent that a judgment is entered under CERCLA, HSAA, or other law subjecting [Defendants] to liability for such unnecessary DTSC response costs and a monetary award for a share of those response costs, such a judgment constitutes monetary damages for [Defendants] caused by DTSC's actions and omissions.

ECF No. 50 ¶¶ 73, 74; ECF No. 51 ¶¶ 73, 74; ECF No. 53 ¶¶ 33, 34; ECF No. 55 ¶¶ 73, 74; ECF No. 58 ¶¶ 80, 81; ECF No. 60 ¶¶ 82, 83.

To satisfy the third element of a section 815.6 claim, "[a] plaintiff must show the injury is one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty.... [and] [t]hat the enactment confers some benefit on the class to which plaintiff belongs is not enough; if the benefit is incidental to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6." *Varlitskiy v. Cty. of Riverside*, No. EDCV192099JGBSPX, 2020 WL 6049935, at *4 (C.D. Cal. Aug. 11, 2020) (internal quotations omitted) (quoting *Haggis*, 22 Cal. 4th at 499).

The explicit purpose of the HWCL is to protect the public health and the environment in California. It is not, as Defendants would have it, to protect polluters from cleanup liability or resulting monetary damages. *See* Cal. Health & Safety Code § 25101 (legislature declaring that the HWCL was necessary "[i]n order to protect the public health and the environment and to conserve natural resources" and that such regulation is "in the best interest of the health and safety of the people of the State of California"); *Dep't of Toxic Substances Control v. Superior Ct.*, 44 Cal. App. 4th 1418, 1424 (1996) ("Our Legislature enacted the HWCL to protect California's citizens and its environment from the unreasonable threat posed by the improper treatment, storage and disposal of hazardous waste.

20

1   (Cal. Health & Safety Code § 25100.) In so doing, our legislators emphasized the

2   long-term threat to public health and to air and water quality posed by mishandled

3   hazardous wastes."); *People v. Martin*, 211 Cal. App. 3d 699, 710 ( Cal. Ct. App.

4   1989) ("Here, the Legislature expressed its intent to protect public health and

5   environmental quality by establishing regulations for the handling, treatment,

6   recycling and disposing of hazardous wastes, and granted to [DTSC] the authority

7   to implement such a program. (§ 25101.)").

8       Put simply, the injury that Defendants allege to have incurred—an increase in

9   potential monetary liability as a responsible party—is not the type of injury the

10  HWCL is designed to protect against. Counterclaim Four must be dismissed.

11  **V.   COUNTERCLAIM FIVE MUST BE DISMISSED BECAUSE THE COURT
       LACKS SUBJECT MATTER JURISDICTION AND BECAUSE DEFENDANTS
12     FAIL STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

13      Counterclaim Five, alleging gross negligent failure to abate hazardous

14  substances, is also not a compulsory counterclaim and, thus, the Court should

15  dismiss it for lack of subject matter jurisdiction. This Counterclaim also fails

16  because Defendants did not allege a statutory basis for relief or cite to a statute that

17  imposes any duty on DTSC. Thus, Defendants have not stated a claim upon which

18  relief may be granted.

19      **A.   The Court Lacks Subject Matter Jurisdiction over
            Counterclaim Five Because Plaintiffs Have Not Waived
20          Sovereign Immunity.**

21      For all the reasons discussed in Section IV.A., supra at 14-18, the Court lacks

22  subject matter jurisdiction over Counterclaim Five because it is not a compulsory

23  counterclaim for which the State waived its immunities. Thus, the Court should

24  dismiss Counterclaim Five.

25      **B.   Defendants Also Fail to State a Claim for Relief.**

26      In Counterclaim Five, Defendants Clarios, Ramcar, Ekco, Kinsbursky, and

27  Gould claim that "DTSC's attempted abatement of the hazardous substances at the

28  'site' of the Vernon Plant . . . were performed in a grossly negligent manner." ECF

No. 50 ¶ 103; ECF No. 51 ¶ 104; ECF No. 55 ¶ 103; ECF No. 58 ¶ 110; ECF No. 60 ¶ 112. Defendants fail to cite any statutory predicate for their right to relief, a lapse which dooms their claim because, in California, public entities are immune from common law tort claims. Cal. Gov. Code § 813, 815(a).

Even if there were some statutory basis for their relief, such as Government Code section 815.6, Counterclaim Five would still fail. Defendants cite to California Health and Safety Code section 25400. That provision, however, does not impose a mandatory duty upon DTSC—rather, it provides statutory immunity. Finally, assuming arguendo that a duty does exist under section 25400, the imposition of liability for hazardous waste contamination and the resulting monetary costs are not the type of injury the duty exists to protect against.

### 1. Defendants failed to allege a statutory basis for relief.

In Counterclaim Five, Defendants allege that DTSC has a duty "to avoid acts or omissions performed in bad faith or in a grossly negligent manner." ECF No. 50 ¶ 102; ECF No. 51 ¶ 103; ECF No. 55 ¶ 102; ECF No. 58 ¶ 109; ECF No. 60 ¶ 111. Defendants, however, fail to cite a statutory provision that provides the legal basis for the relief they seek.

Under California's Government Claims Act, public entities may be liable for damages arising out of torts *only if* there is a specific statutory basis for liability. Cal. Gov. Code § 813 *et seq.* The California Government Claims Act makes clear that "*[e]xcept as otherwise provided by statute,* [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity." Cal. Gov't Code § 815(a) (emphasis added); *Guzman*, 46 Cal. 4th at 897 ("Under the Government Claims Act . . . , there is no common law tort liability for public entities in California; instead, such liability must be based on statute."). "A private cause of action lies against a public entity only if the underlying enactment sets forth the elements of liability set out in section 815.6." *M.B. by and through Bilokonsky v. United States*, No. 19-CV-1054-CAB-AHG, 2019 WL 6329068, at *3

1   (S.D. Cal. Nov. 26, 2019) (citing *Haggis*, 22 Cal.4th at 499–500 ("*It is section*

2   *815.6, not the predicate enactment, that creates the private right of action*.") .

3        Health and Safety Code section 25400, the only provision Defendants cite,

4   does not provide a separate, independent claim for relief against DTSC—it is a

5   statute *limiting* liability for public entities, not *imposing* liability. Thus, Defendants

6   have failed to provide a statutory basis for relief or a basis for DTSC's liability. *See*

7   *Jensen v. United States*, No. 2:12-CV-01418-JAM-EFB, 2012 WL 4755169, at *3

8   (E.D. Cal. Oct. 4, 2012) (granting the defendant's motion to dismiss because the

9   plaintiff failed to plead a statutory basis for liability); *Eastburn v. Reg'l Fire*

10  *Protection Auth.*, 31 Cal. 4th 1175, 1183 (2003) ("[T]ort liability of public entities

11  must be based on a specific statute declaring them to be liable, or at least creating

12  some specific duty of care . . . . Otherwise, the general rule of immunity . . . would

13  be largely eroded by the routine application of general tort principles.").

14          **2.**    **Counterclaim Five also fails because Section 25400 does not**

15                 **establish a mandatory duty and the HWCL was not "designed to protect against" Defendants' injuries.**

16       If the Court determines that Defendants have pled a statutory basis for their

17  relief, despite no allegations in their Counterclaims to that effect, Counterclaim

18  Five still must be dismissed because Defendants have failed to identify or establish

19  "a mandatory duty imposed by enactment," and the injuries alleged are not the

20  particular kind that the HWCL was designed to prevent. Cal. Gov. Code § 815.6.

21       As noted in Section IV.B.1. above, to prevail on a claim of negligent failure to

22  discharge a mandatory duty under Government Code section 815.6, Defendants

23  must show that (1) DTSC failed to perform a mandatory duty prescribed by statute

24  or regulation, (2) DTSC's failure to perform the duty proximately caused an injury

25  to the defendant, and (3) the injury was of the "particular kind of injury" that the

26  enactment was "designed to protect against."

27       Although Defendants cite to California Health and Safety Code section

28  25400(a), this statutory provision does not create a mandatory duty. In fact, the

provision establishes a statutory immunity. Section 25400 "encourage[s]" DTSC to abate hazards and provides that DTSC is immune from liability regarding acts or omissions taken to abate a hazard, unless DTSC acted in bad faith or in a grossly negligent manner. Cal. Health & Safety Code § 25400(a), (b). Defendants have the burden of showing that DTSC acted in bad faith or in a grossly negligent manner, while the statute explicitly presumes that DTSC acted in good faith and without gross negligence. Cal. Health & Safety Code § 25400(c).

Importantly, DTSC's authority under section 25400(a) to abate hazards does not actually impose a duty to do so, and no language in that Section about immunity or exception to immunity creates such duty. Simply because section 25400(a) does not provide immunity for gross negligence does not *impose* any duty on DTSC. General legislative statements encouraging actions to manage hazardous waste do not establish mandatory duties. *See Haggis*, 22 Cal. 4th at 498 ("First and foremost, application of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion.") (internal citations omitted); *Montrose*, 788 F. Supp. at 1495–96 (holding that California Health and Safety Code provisions expressing general legislative findings and public interest did not create mandatory duties).

The few instances of mandatory language in section 25400(b) pertain to the absence of liability ("shall not be liable") and to the presumption that DTSC did not act with gross negligence or in bad faith ("it shall be presumed that the act or omission was performed in good faith and without gross negligence"). Cal. Health & Safety Code § 25400(b).

Defendants' failure to identify a statutory duty for Counterclaim Five relegates the claim to one under common law, from which Plaintiffs are immune.

*See Eastburn*, 31 Cal. 4th at 1183; *City of Los Angeles v. Super. Court of Los Angeles Cty.*, 62 Cal. App. 5th 129, 276 Cal. Rptr. 3d 332, 338 (2021) ("there is no such thing as common law tort liability for public entities").

Moreover, for all the reasons discussed in Section IV.B.2., Defendants' Counterclaim Five also fails. Defendants' alleged injuries are not the particular kind of injury" that the enactment was "designed to protect against." *See Haggis*, 22 Cal. 4th at 499.

## CONCLUSION

For all the reasons stated herein, Plaintiffs respectfully request that the Court issue an order dismissing Defendants' Counterclaims against Plaintiffs.

Dated:  June 14, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
SARAH E. MORRISON
TIMOTHY E. SULLIVAN
Supervising Deputy Attorneys General

_____/s/_ Donald. A. Robinson

DONALD A. ROBINSON
DENNIS A. RAGEN
AARTI S. KEWALRAMANI
DAVID ZAFT
ELIZABETH B. RUMSEY
Deputy Attorneys General
*Attorneys for Plaintiffs*
*California Department of Toxic*
*Substances Control and the Toxic*
*Substances Control Account*

LA2020603986
64291576.docx