UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   ORDER DENYING MOTIONS TO DISMISS [49, 56]

### I. Introduction

Before the Court are motions to dismiss filed by Defendants NL Industries, Inc. and Trojan Battery Co., LLC. For the reasons stated below, the motions are DENIED.

### II. Background

Between 1925 and 2015, a secondary lead smelter operated in the City of Vernon ("the Vernon Plant"). Secondary lead smelting involves extracting lead and other materials from products such as used batteries. That process entails separating acid, plastic, and lead; treating and disposing of the acid; and melting down the lead in large furnaces. The Vernon Plant operated on a large scale, receiving up to 40,000 batteries per day at peak operations. Complaint ("Compl."), Dkt. 1 ¶¶ 41-42, 48.

Plaintiff alleges that the Vernon Plant caused widespread contamination of numerous hazardous substances both within the plant and in the surrounding communities.

During its operation, Plaintiff alleges that "the Vernon Plant released millions of pounds of lead and other Contaminants of Concern into the environment, which contaminated the surrounding properties, including the soil, vegetation, homes, residential yards, and residential home rooftops in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

surrounding neighborhoods." *Id.* ¶ 49. Plaintiff alleges that these industrial activities "resulted in hazardous substance contamination extending at least 1.7 miles from the Vernon Plant, affecting residential, commercial and industrial areas in the surrounding communities of Vernon, Bell, Boyle Heights, Commerce, Maywood, East Los Angeles, and Huntington Park, California." *Id.* Plaintiff alleges that there are more than 10,000 "sensitive land use properties (residences, schools, daycare centers, child care facilities, and parks) and many commercial and industrial properties in close proximity to the Vernon Plant." *Id.* ¶ 41.

Plaintiff alleges that acid, lead, and furnace slag and/or dross were dumped into massive pits at the Vernon Plant. These operations allegedly contaminated soil and groundwater both at and surrounding the Vernon Plant. *Id.* ¶ 50. Plaintiff further alleges spills and/or releases of lead deposits, zinc compounds, TCE (trichloroethylene), and battery acids including sulfuric acid. *Id.* ¶¶ 51-54.

Between 2000 and 2020, the Vernon Plant was owned and operated by Exide Technologies, LLC. The Vernon Plant was subject to significant scrutiny concerning its handling hazardous substances, and Exide ultimately decided to close the Plant. Exide filed for bankruptcy in 2020, and Plaintiff alleges that significant remedial actions remain uncompleted. *Id.* ¶¶ 1, 68-78.[1]

The named Defendants in this case fall into three categories –

- former owners and operators of the Vernon Plant (under § 107(a)(2))
    - NL Industries, Inc.
    - JX Nippon Mining & Metals Corp.
    - Gould Electronics Inc.

- arrangers and/or transporters of hazardous substances (under § 107(a)(3)-(4))
    - Kinsbursky Bros. Supply Inc.
    - Trojan Battery Co., LLC
    - Ramcar Batteries Inc.

---

[1] Exide is not named as a Defendant in this action.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

- o Clarios, LLC
- o Quemetco, Inc.
- o International Metals Ekco Ltd.
- o Blount, Inc.

Plaintiff specifically alleges that some of the waste disposal and release causing the contamination at issue in this case is attributable to activities predating Exide's ownership and operation of the Plant. *Id.* ¶¶ 50-55.

Plaintiff has conducted soil sampling of over 8,500 parcels within the 1.7-mile area surrounding the Vernon Plant. *Id.* ¶ 89. Plaintiff has also cleaned up or overseen the cleanup of lead-contaminated soil at 2,136 properties within that 1.7-mile area. *Id.* ¶ 86. Through June 2020, Plaintiff alleges it has already incurred $136 million in response costs. *Id.* ¶ 93.

In addition to reimbursement, Plaintiff seeks a declaration that Defendants are jointly and severally liable for Plaintiff's response costs. *Id.* ¶ 7. Plaintiff also seeks reimbursement and injunctive relief under the Carpenter-Presley-Tanner Hazardous Substances Account Act ("HSAA") and brings a cause of action against Defendant NL Industries to abate a public nuisance. *Id.* ¶¶ 8-10.

### III. CERCLA In General

"CERCLA sets forth a comprehensive scheme for the cleanup of hazardous waste sites, and imposes liability for cleanup costs on the parties responsible for the release or potential release of hazardous substances into the environment." *Pakootas v. Teck Cominco Metals, Ltd (Pakootas I).*, 452 F.3d 1066, 1072 (9th Cir. 2006) (citations omitted). "CERCLA § 9607 is a strict liability statute," and "[t]he government is not required to show that a specific defendant's waste caused the incurrence of cleanup costs in order for strict liability to attach to that defendant." *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 184 (2d Cir. 2003). "Congress has ... allocated the burden of disproving causation to the defendant who profited from the generation and inexpensive disposal of hazardous waste." *United States v. Monsanto Co.*, 858 F.2d 160, 170 (4th Cir. 1988).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

"CERCLA liability attaches when three conditions are satisfied: (1) the site at which there is an actual or threatened release of hazardous substances is a 'facility' under § 9601(9); (2) a 'release' or 'threatened release' of a hazardous substance from the facility has occurred, § 9607(a)(4); and (3) the party is within one of the four classes of persons subject to liability under § 9607(a)." *Id.* at 1073-74.

A potentially responsible party under § 9607(a) (known in CERCLA parlance as a "PRP") may avoid liability by asserting various defenses – "[m]ost relevant ... are the so-called 'third party' and 'innocent landowner' defenses, by which a PRP may show that the release of hazardous substances was caused solely by 'an act or omission of a third party,' 42 U.S.C. § 9607(b)(3), or that 'the disposal or placement of the hazardous substance' occurred before the PRP acquired the property, 42 U.S.C. § 9601(35)(A)." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001).

"Once liability is established, the defendant may avoid joint and several liability by establishing that it caused only a divisible portion of the harm-for example, it contributed only a specific part of the hazardous substances that spilled." *Id.* In the CERCLA context, "[a]pportionment is proper when 'there is a reasonable basis for determining the contribution of each cause to a single harm.'" *Burlington Northern and Santa Fe. Ry. Co. v. United States*, 556 U.S. 599, 614 (2009) (quoting *Restatement (Second) of Torts* § 433A(1)(b)). CERCLA defendants bear the burden to show (1) that the environmental harm is theoretically capable of apportionment as a matter of law; and (2) that the record "provides a 'reasonable basis' on which to apportion liability, which is purely a question of fact." *Pakootas v. Teck Cominco Metals, Ltd. (Pakootas IV)*, 905 F.3d 565, 588-89 (9th Cir. 2018) (citations omitted); *see also United States v. NCR Corp.*, 688 F.3d 833, 838 (7th Cir. 2012).

A CERCLA defendant may also seek contribution under 42 U.S.C. § 9613(f)(1). "A PRP's contribution liability will correspond to that party's equitable share of the total liability and will not be joint and several." *Carson Harbor Village*, 270 F.3d at 871 (citing *Pinal Creek Grp. v. Newmont Min. Corp.*, 118 F.3d 1298, 1300 (9th Cir. 1997) (citations omitted), *abrogation on other grounds recognized by Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924, 933 (9th Cir. 2018).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

### IV. Trojan Battery – Motion to Dismiss under Rule 12(b)(7)

#### a. Legal Standard

Rule 12(b)(7) permits a defendant to move to dismiss an action for failure to join a necessary party under Rule 19.  Fed. R. Civ. P. 12(b)(7).  Rule 19 requires "three successive inquiries:" (1) whether a nonparty is necessary under Rule 19(a); (2), if so, whether it is feasible to order the absent party joined; and (3) if joinder is not feasible, whether the case can proceed without the party, or whether instead the party is 'indispensable such that the action must be dismissed.'  *See Coach, Inc. v. Celco Customs Servs. Co.*, 2013 WL 12122691, at *11 (C.D. Cal. 2013).

A party is necessary under Rule 19 if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a).

Indispensable parties are "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."  *EEOC v. Peabody W. Coal. Co.*, 400 F.3d 774, 780 (9th Cir. 2005) (citing *Shields v. Barrow*, 58 U.S. 130, 139 (1854)).

"It is well settled that courts may look to extrinsic evidence on motions for failure to join."  *In re Toyota Motor Cop. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1197 (C.D. Cal. 2011).  The defendant bears the burden of producing evidence in support of the motion.  *See Coach*, 2013 WL 12122691, at *12.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

### b. Application

Defendant Trojan Battery argues that owners of industrial and residential properties within the 1.7-mile area designated for cleanup are necessary parties under Rule 19, and that the Court should either compel their joinder or dismiss the case.

Defendant makes two arguments that the absent owners must be joined under Rule 19. For the reasons explained below, both arguments fail.

First, Trojan Battery argues that joinder of the absent owners is necessary for complete relief under Rule 19(a)(1)(A) because their "participation will be required to effectuate injunctive relief to extant parties." Dkt. 56, at 6.

"In conducting the Rule 19(a)(1) analysis, the court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). "This prong concerns complete relief only among *current* parties to the action." *Asarco LLC v. Shore Terminals LLC*, 2011 WL 2669474, at *2 (N.D. Cal. 2011); *see Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (tribe was not required to be joined to suit challenging BIA's upholding tribal disenrollment because complete relief could be provided as between plaintiff and the BIA).

Here, joinder of the absent owners is not required to afford complete relief as between the existing parties on Plaintiffs' request for injunctive relief. Plaintiffs seek injunctive relief under the HSAA, Cal. Health & Safety Code § 25358.3, which would order Defendants to remediate contamination. Plaintiffs do not spell out in detail the scope of the injunction they seek in the complaint, but the Court can afford "meaningful relief" among the existing parties because Defendants can be ordered to remediate at locations where they obtain landowner consent. *See Disabled Rights Action Committee*, 375 F.3d at 879-80 (joinder of facility owner was not required to accord complete relief as between plaintiff and event operator in ADA lawsuit seeking accessible event space because "forms of relief, which are neither hollow nor meaningless, would be available with or without [the owner's] participation"); *Los Angeles Unified Sch. Dist. v. BP Am., Inc.*, 2010 WL 1854070, at *4 (joinder of absent landowners not required in CERCLA case where plaintiff did not seek to require existing

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

defendants to enter land of absent owners). While Trojan argues that the Court can only consider the injunctive relief requested in the complaint and may only consider questions of scope in analyzing whether absent parties are indispensable, the Ninth Circuit has held that it is error for a district court to "fail[] to consider whether remedies not requiring [an absent owner's] cooperation would provide meaningful relief." *Disabled Rights Action Committee*, 375 F.3d at 879.[2]

Moreover, nothing in Trojan's submission suggests that it would be incapable of complying with an injunction requiring Defendants to remediate where property owners do consent. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014) (joinder of absent landowners was not required to enforce restrictive covenant because extant defendant "was fully able to ... comply with injunctions").

Accordingly, Plaintiff's request for injunctive relief does not require joinder of the absent owners.[3]

Second, Trojan argues that the absent owners should be joined under Rule 19(a)(1)(B) because they are PRPs subject to joint and several liability and/or contribution liability, and adjudication in their absence may "as a practical matter impair or impede [the absent owners'] ability to protect [their interest]." Fed. R. Civ. P. 19(a)(1)(B)(i).

Under Rule 19(a)(1)(B), "it is essential that courts identify the specific legally protected interests an absent joint tortfeasor claims, and assess how those interests may be impaired when, as a non-party,

---

[2] Additionally, the Court observes that Plaintiff has already secured access to the Vernon Plant itself for cleanup efforts. *See* Declaration of Peter Ruttan, Dkt. 88-1 ¶ 10. Therefore, there is no doubt that Plaintiff could secure injunctive relief against Defendants to the extent Plaintiff is seeking an injunction ordering Defendants to clean up the Vernon Plant.

[3] Complete relief will in many contexts require joinder of a landowner where a plaintiff's requested injunctive relief would require the landowner to take some action. *See, e.g., Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003); *Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.*, 542 F. Supp. 2d 1054, 1065-68 (N.D. Cal. 2008). That may also be true in some cases seeking injunctive relief to clean up contaminated property where no meaningful relief can be provided without joining a landowner. *See Lykins v. Westinghouse Elec.*, 710 F. Supp. 1122, 1123-24 (E.D. Ky. 1988). However, the Court concludes that under these circumstances meaningful relief can be provided given the number of properties requiring cleanup and the likelihood that many absent landowners would consent to remediation.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

the outcome of the action will not bind the absent party in future proceedings." *Ward v. Apple Inc.*, 791 F.3d 1041, 1050 (9th Cir. 2015). Numerous CERCLA cases hold that a government entity "is under no obligation to sue all potentially responsible parties in a CERCLA Section 107 cost recovery action." *City of Colton v. Am. Promotional Events, Inc.*, 2012 WL 32606, at *6 (C.D. Cal. 2012); *see also Asarco LLC v. Shore Terminals LLC*, 2011 WL 2669474, at *4 (N.D. Cal. 2011); *ASARCO LLC v. Atlantic Richfield Co.*, 2012 WL 5995662, at *4 (D. Mont. 2012) (citation omitted).

While Trojan argues that an apportionment determination should not be made without the participation of the absent owners, no order of this Court in their absence would require absent owners to make any payment for response costs. Assuming apportionment is appropriate in this case, the only issue would be the percentage to be apportioned to the named defendants. Any such determination would not appear to have a preclusive or prejudicial effect on the absent owners in any subsequent litigation. *See Los Angeles Unified Sch. Dist.*, 2010 WL 1854070, at *4.

Moreover, if Defendants seek to establish the liability of the absent owners in this proceeding or another, they may bring a third-party complaint under Rule 14 or a separate contribution action under 42 U.S.C. § 9613(f). *See id.* at *5.

Accordingly, Trojan has failed to establish that the absent owners are necessary parties under Rule 19(a) at this stage, and the Court declines to order their joinder or dismiss the case.

V.   **NL Industries – Motion to Dismiss under Rule 12(b)(6)**

   a.   **Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679

### b. Application

#### i. Plaintiff Adequately Alleges a "Disposal" For Owner/Operator Liability

NL argues that Plaintiff fails to plead an actionable CERCLA claim with respect to the contamination of soils in the areas surrounding the Vernon Plant. Dkt. 49, at 8-13. In particular, NL argues that the Ninth Circuit's decision in *Pakootas v. Teck Cominco Metals, Ltd. (Pakootas III)*, 830 F.3d 975 (9th Cir. 2016), requires dismissal of Plaintiff's CERCLA claim to the extent it relies on "passive transport of air emissions."

However, NL overstates the reach of *Pakootas III*, specifically by conflating the terms "disposal" and "release" as they are used in section 107(a) of CERCLA. A brief discussion of these terms in the CERCLA scheme will help place the holding of *Pakootas III* in its proper context.

A former owner or operator of a facility is a PRP if it "at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). The question of whether a defendant is a PRP is separate from whether liability attaches and to what extent. *See Pakootas I*, 452 F.3d at 1073-74 (listing PRP status and "release or threatened release" as separate elements for CERCLA section 107(a) cause of action). "CERCLA imposes liability for the cleanup of sites where there is a release or threatened release of hazardous substances into the environment." *Id.* at 1073 (citing *Carson Harbor Vill.*, 270 F.3d at 881).

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

The term "release" is broader under CERCLA than the term "disposal." *Carson Harbor Vill.*, 270 F.3d at 878. Release is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)." 42 U.S.C. § 9601(22). Disposal, however, is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3); *see* 42 U.S.C. § 9601(30) ("The term[] 'disposal' ... shall have the meaning provided in section 1004 of the Solid Waste Disposal Act."). Some courts have observed that this distinction makes sense "because 'release' clearly required no affirmative conduct, [meaning] 'disposal' must be limited to affirmative human actions that make possible a 'release.'" *Carson Harbor Vill.*, 270 F.3d at 881 (citing *United States v. 150 Acres of Land*, 204 F.3d 698, 706 (6th Cir. 2000)).

With that context in mind, it becomes quite clear that the holding of *Pakootas III* does not preclude Plaintiff's claims even to the extent they rely on aerial migration of hazardous substances from the Vernon Plant. The defendant in the *Pakootas* cases operated a smelter ten miles north of the U.S.-Canada border. 830 F.3d at 978. Because the defendant was located in Canada, issues of extraterritorial application were in play. *See generally Pakootas I*, 452 F.3d 1066 (9th Cir. 2006). The plaintiff sought to hold the defendant liable as an arranger, which applies to "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3). The question for the Court in *Pakootas III* was, for purposes of arranger status, whether the term "disposal" encompassed the emission of hazardous substances subsequently "deposited ... by the wind" to a river site within the U.S. *Pakootas III*, 830 F.3d at 979, 983; *see also Pakootas I*, 452 F.3d at 1075 (describing alleged release from U.S. river site as being from a facility within the U.S.).

The *Pakootas III* court held the term "disposal" is not so broad. The court relied on prior case law interpreting "deposit" to mean "'putting down' or 'placement' by someone" and concluding that disposal does not include "the gradual spread of contaminants without human intervention." *Pakootas*

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|

| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* |
|---|---|

*III*, 830 F.3d at 983 (citing *Carson Harbor*, 270 F.3d at 879 & n.7). The court did not limit or otherwise interpret CERCLA's definition of "release." It simply held that the plaintiff had not alleged that the defendant disposed of hazardous substances and was therefore not an arranger under 42 U.S.C. § 9607(a)(3). *Id.*

In this case, Plaintiff seeks to hold NL liable as a former owner or operator. The term "disposal" does appear as a requirement for owner/operator liability. Specifically, owner/operator liability extends to "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2).

Unlike *Pakootas III*, Plaintiff's complaint alleges that NL qualifies as a former owner or operator based on alleged "disposal" independent of the passive migration described elsewhere in the complaint. As described above, Plaintiff alleges "dumping" and "spilling" of various hazardous substances into pits at the Vernon Plant during the period in which NL owned and operated the Vernon Plant. Compl. ¶¶ 50-55, 95-97. These allegations are sufficient at the pleading stage for NL to be considered a former owner or operator under 42 U.S.C. § 9607(a)(2).

The complaint also alleges various releases from the Vernon Plant. For example, the complaint alleges that smelting operations at the Vernon Plant resulted in the release of hazardous substances including lead at the Vernon Plant and into the surrounding properties. Compl. ¶¶ 48-55.

As described above, a "release" can be broader than a "disposal." *See Carson Harbor*, 270 F.3d at 878. "[T]he passive migration of hazardous substances into the environment from where hazardous substances have come to be located is a release under CERCLA." *Pakootas I*, 452 F.3d at 1075. That Plaintiff alleges releases which could not count as disposals does not mean that Plaintiff did not elsewhere allege disposals. So long as there is some occurrence constituting a disposal while a defendant owned or operated a facility, the defendant can be liable for subsequent releases as an owner or operator, which may involve a broader range of passive migration than the disposals which make a defendant an owner or operator. *See id.* ("CERCLA liability does not attach unless the 'release' is from a CERCLA facility."); *cf. Carson Harbor*, 270 F.3d at 887 (former owner could not be held liable under CERCLA because passive migration during former owner's ownership was not a "disposal").

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

Accordingly, notwithstanding *Pakootas III*, the Court concludes that Plaintiff has sufficiently alleged a "disposal" during NL's ownership or operation of the Vernon Plant for NL to count as an owner or operator under 42 U.S.C. § 9607(a)(2). *See United States v. Gibson Wine Co.*, 2017 WL 1064658, at *9 n.9 (E.D. Cal. 2017) ("*Pakootas* does not stand for the proposition that CERCLA does not apply to any airborne releases.").

### ii. Plaintiff Adequately Alleges a "Facility"

In its reply brief, NL argues that the 1.7-mile area described as the affected area in the complaint cannot constitute a single facility under CERCLA. That area includes many thousands of properties under separate ownership, some of which were used for industrial purposes and may have independently contributed to contamination within the 1.7-mile area.

While the Court is concerned about how a litigation with such a broad facility can be feasibly and expeditiously managed, at this stage the Court is satisfied that Plaintiff has adequately alleged a single "facility" for purposes of CERCLA.

CERCLA provides an extraordinarily broad definition of "facility." That definition is as follows:

The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or *otherwise come to be located*; but does not include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601(9) (emphasis added).

Consistent with the plain language, "the term 'facility' has been broadly construed by the courts, such that in order to show that an area is a 'facility,' the plaintiff need only show that a hazardous substance under CERCLA is placed there or has otherwise come to be located there." *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F. Supp. 2d 1355, 1360 n.10 (9th Cir. 1990) (citations

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

omitted) (cleaned up); *see, e.g.*, *Pakootas I*, 452 F.3d at 1074 (approving "facility" described as "the extent of contamination in the United States associated with the Upper Columbia River"); *Sierra Club v. Seaboard Farms Inc.*, 387 F.3d 1167, 1169 (10th Cir. 2004) (farm complex as a whole, which included various lagoons, barns, and other distinct areas, constituted a single facility under CERCLA); *United States v. 150 Acres of Land*, 204 F.3d 698, 702 (6th Cir. 2000) (three adjoining parcels constituted a single facility even though only one was found to be contaminated); *United States v. Vertac Chemical Corp.*, 364 F. Supp. 2d 941, 958-960 (E.D. Ark. 2005) (owner could be liable for off-site contamination because "[t]he Plant Site and Off-Site areas are not distinct facilities, but are one facility for purposes of liability under CERCLA"); *see also Cytec Indus. v. B.F. Goodrich Co.*, 232 F. Supp. 2d 821, 836 (S.D. Ohio 2002) ("[U]sually, although perhaps not always, the definition of facility will be the entire site or area, including single or contiguous properties, where hazardous wastes have been deposited as part of the same operation or management.").

"[T]he primary source for determining the number of relevant facilities is the plaintiff's complaint." *Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188, 1202 (E.D. Cal. 2009) (citations omitted). "If anything, courts defer to a plaintiff's definition of the facility because the plaintiff is the master of its claim and should be allowed to allege or conceptualize the facility in any manner to suit liability, as long as the asserted definition falls within the very broad statutory definition." *United States v. Atchison, Topeka & Santa Fe Ry. Co.*, 2003 WL 25518047, at * 47 (E.D. Cal. 2003), *rev'd on other grounds*, 479 F.3d 1113 (9th Cir. 2007), *rev'd, sub nom. Burlington N. and Santa Fe. Ry. Co. v. United States*, 556 U.S. 599 (2009). "Narrowly defining the facility ... is nothing more than an attempt to impose a causation requirement that is inconsistent with the liability provisions of Section 107(a) and the causation based third party defense in Section 107(b)." *Id.* (citations omitted).

Here, the complaint alleges that hazardous substances from the Vernon Plant contaminated an area extending as far as 1.7 miles into the surrounding community. Compl. ¶ 49. Because a facility under CERCLA "includes any site or area where a hazardous substance has ... come to be located," 42 U.S.C. 6901(9), Plaintiff adequately alleges a single facility for CERCLA purposes.[4]

---

[4] Of course, because Plaintiff's allegation of a single facility is based on the presence of hazardous substances in the entire 1.7-mile area, Plaintiff must at a later stage put forth evidence supporting this allegation. *See, e.g.*, *Town of New Windsor v. Tesa Tuck, Inc.*, 935 F. Supp. 305, 309 (S.D.N.Y. 1996). However, at the pleading stage, Plaintiff's allegations suffice.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

    NL cites several cases for the proposition that a court may reduce the scope of the CERCLA facility alleged in the complaint.  These cases generally derive from language originating in a Sixth Circuit case, which has since migrated to the federal courts in New York.  The relevant language is that "an area that cannot be reasonably or naturally divided into multiple parts or functional units should be defined as a single 'facility,' even if it contains parts that are non-contaminated."  *United States v. Twp. of Brighton*, 153 F.3d 307, 313 (6th Cir. 1998).  The case *Brighton* cited for this proposition was *Clear Lake Props. v. Rockwell Int'l Corp.*, which observed that an argument for narrowing a facility would require "abandon[ing] the normal usage of the English language."  959 F. Supp. 763, 767-68 (S.D. Tex. 1997).  *Brighton* itself in fact rejected an argument that a dump site should be narrowed because waste was generally left in a single corner, noting that "the words of the statute suggest that the bounds of a facility should be defined at least in part by the bounds of the contamination."  *Id.* at 313.  The more recent case cited for this proposition, *United States v. 150 Acres of Land*, which follows *Brighton*, also rejected an argument for narrowing a facility definition even though that definition crossed property lines and extended to parcels at which no hazardous substances were found.  204 F.3d at 708-09.  Before examining the cases on which NL relies, the Court observes that they ultimately derive from cases that did not stand for the proposition that a district court should scrutinize a Plaintiff's facility definition beyond its compliance with the statutory definition.

    The district court cases following this line of authority are all distinguishable.  Two of those cases fit the same pattern – a CERCLA contribution claimant seeks to expand a facility definition to achieve a reduction in its own share of liability.  *See Alprof Realty LLC v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 2012 WL 4049800, at *6-*9 (E.D.N.Y. 2012) (noting that the authority cited by counterclaimant "do[es] not stand for the proposition than an unrelated neighboring property onto which contamination spreads becomes part of the CERCLA facility"); *Niagara Mohawk Power Corp. v. Consolidated Rail Corp.*, 291 F. Supp. 2d 105, 125-26 (N.D.N.Y. 2003), *rev'd on other grounds*, 596 F.3d 112 (2d Cir. 2010) ("While NiaMo is correct that causation is irrelevant in this strict liability matter, it would be absurd to permit the party responsible for the release of hazardous substances to search adjacent property, onto which that responsible party's own contaminants have migrated, for some other, any other, trace of hazardous substance in order to hold that adjacent property owner liable as a 'current owner' of a facility upon which hazardous substances are found.").

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

    A third case, primarily relying on the aforementioned cases, dismissed a complaint which alleged as a single facility an area of "contamination by multiple hazardous substances originating from multiple distinct sources." *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 480 F. Supp. 3d 430, 444 (E.D.N.Y. 2020). Even if the court's conclusion was consistent with CERCLA's broad facility definition, it is inapplicable. Plaintiff here pleads widespread contamination, primarily of lead, from a single source, namely the Vernon Plant.[5]

    Notwithstanding the breadth of the statutory definition, the Court recognizes that the above cases and others contain language suggesting that the Court may have discretion to designate separate facilities. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 191 F.3d 409, 419 (4th Cir. 1999) ("This is not to say that every widely contaminated property must be considered a single facility."); *Cytec Indus., Inc.*, 232 F. Supp. 2d at 835 ("This court concludes that, *where appropriate*, the broadest geographical definition of a facility *that is appropriate under the specific facts and circumstances of a given case* would likely best advance CERCLA's ... purposes." (citation omitted and emphasis added)). However, any discretion the Court may possess to divide or limit the facility alleged in the complaint is better reserved for summary judgment with the benefit of a full record. In any event, at this stage, NL's objections to the facility's scope appear more properly construed as arguments that the contamination is divisible and that NL therefore cannot be jointly and severally liable. *See Brighton*, 153 F.3d at 313 ("If [the defendant] was only connected to the southwest corner [of the alleged facility], the appropriate place to draw that distinction is in the divisibility analysis, not in the bounding of the facility.").

---

[5] NL's other citations fare no better. In *New York v. Gen. Elec. Co.*, also relied on by NL, the court confusingly held on summary judgment that "although [the two properties] meet the statutory definition of 'facility,' they cannot together be considered one 'facility' for purposes of this CERCLA action." 2017 WL 1239638, at *21 (N.D.N.Y. 2017). The court concluded that a common facility was inappropriate because "the common source [of contamination] is neither (1) due to the direct actions of the defendant, or (2) due to natural spreading of the contamination." *Id.* The complaint here, however, alleges both. *Id.* In *Union Carbide Corp. v. Thiokol Corp.*, in the course of analyzing a statute of limitations issue on summary judgment, the court separated a site's landfill from its solid waste management units into different facilities based on the distinct removal and remedial actions they would require. 890 F. Supp. 1035, 1043 (S.D. Ga. 1994). The court did not analyze how separating out distinct facilities was consistent with the language of the statute.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

### iii. CERCLA Can Apply Retroactively

NL argues that, because it sold the property before CERCLA became effective, CERCLA cannot retroactively apply to its conduct. Dkt. 49, at 13-17.

Numerous courts of appeals have concluded that CERCLA does apply retroactively. *See United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 188-90 (2d Cir. 2003); *United States v. Olin Corp.*, 107 F.3d 1506, 1511-1515 (11th Cir. 1997); *United States v. Northeastern Pharm. & Chem. Co. ("NEPACCO")*, 810 F.2d 726, 732-34 (8th Cir. 1986). Numerous district courts in this circuit have agreed. *See Geogia-Pacific v. Officemax Inc.*, 2013 WL 5273007, at *5 n.3 (N.D. Cal. 2013) (collecting cases).

The Court finds these unanimous cases persuasive. Without engaging in a detailed analysis, the following points support the conclusion that CERCLA does apply retroactively.

First, the language referring to PRPs uses the past tense. *See Olin*, 107 F.3d at 1513; *NEPACCO*, 810 F.3d at 732-33. As discussed above, CERCLA applies to "any person who at the time of disposal of any hazardous substance *owned or operated* any facility at which such hazardous substances were disposed of" as well as "any person who... *arranged* for transport" and "any person who ... *accepted* any hazardous substances." 42 U.S.C. § 9607(a) (emphasis added).

Second, some provisions of CERCLA do expressly limit retroactivity, which suggests that recovery for response costs – for which no retroactivity provision exists – was intended to apply to preenactment conduct. *See* 42 U.S.C. § 9607(f)(1) ("There shall be no recovery under the authority of subparagraph (C) of subsection (a) [for damages to natural resources] where such damages and the release of a hazardous substance from which such damages resulted have occurred wholly before December 11, 1980."); 42 U.S.C. § 9611(d) ("No money in the Fund [i.e., Superfund] may be used ... where the injury, destruction, or loss of natural resources and the release of hazardous substances from which such damages resulted have occurred wholly before December 11, 1980). Congress would not have needed to specifically limit recovery for certain preenactment conduct if it did not intend such recovery for response costs under 42 U.S.C. § 9607(a)(4)(A)-(B). *See AlliedSignal, Inc. v. Amcast, Int'l Corp.*, 177 F. Supp. 2d 713, 726 (S.D. Ohio 2001) (noting that several courts had relied on this negative

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

implication in upholding CERCLA's retroactivity); *see also State of Nev. ex rel. Dep't of Transp. v. United States*, 925 F. Supp. 691, 704 (D. Nev. 1996); *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1075-76 (D. Colo. 1985).[6]

Third, part of CERCLA's purpose was to provide cost-sharing to facilitate the cleanup of *existing* sites of contamination. *See AlliedSignal, Inc. v. Amcast, Int'l Corp.*, 177 F. Supp. 2d 713, 726 (S.D. Ohio 2001) (noting that the "the preamble to the statute ... provides that [CERCLA] is an act "[t]o provide for liability, compensation, cleanup and emergency responses for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites.'" (citing 94 Stat. 2767)). Moreover, CERCLA was "enacted to fill a gap left by the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq., a statute, the purpose of which is to prevent future harm, rather than to remediate that which has occurred in the past." *Id.* at 730. Further, CERCLA's entire scheme – its inclusion of former owners and operators as well as the third-party and innocent landowner affirmative defenses – advance a purpose to "hold parties responsible for the damage they cause." *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1073 (D. Colo. 1985). To the extent existing contamination results from pre-enactment conduct, that purpose would be ill-served by a scheme that only allowed recovery for response costs against those who contributed to contamination after CERCLA's enactment.

Fourth, the legislative history, as documented by other courts, makes clear that Congress understood that it was imposing retroactive liability to provide for the cleanup of inactive and abandoned sites. *See Nevada*, 925 F. Supp. at 704 ("[S]ociety should not bear the costs of protecting the public from hazards *produced in the past* by a generator, transporter, consumer, or dumpsite owner or operator who has profited or otherwise benefited from commerce involving those substances and now wishes to be insulated from any continuing responsibilities for the present hazards to society that have been created." (Senate Report)); *NEPACCO*, 810 F.2d at 733 ("Congress intended CERCLA 'to initiate and establish a comprehensive responsive and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites.'" (quoting House

---

[6] All of the response costs alleged in this case were incurred after CERCLA's enactment, and the Court therefore need not consider the separate question whether CERCLA imposes liability for response costs that were themselves incurred before enactment.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

Report)); *see also Olin*, 107 F.3d at 1513-14; *Continental Title Co. v. Peoples Gas Light and Coke Co.*, 959 F. Supp. 893, 896-901 (N.D. Ill. 1997).[7]

The parties agree that neither the Supreme Court nor the Ninth Circuit have reached this issue. However, the Court finds it notable that both the Supreme Court and Ninth Circuit have in dicta referred to CERCLA liability as retroactive. *See Atlantic Richfield Co. v. Christian*, 140 S. Ct. 1335, 1347 ("After Congress passed [CERCLA] in 1980, Atlantic Richfield faced strict and *retroactive* liability for the many tons of arsenic and lead that Anaconda had spewed across the area over the previous century." (emphasis added)); *Anderson Bros., Inc. v. St. Paul Fire and Marine Ins. Co.*, 729 F.3d 923, 926 (9th Cir. 2013) (CERCLA "establishes a *retroactive* strict liability regime.... (emphasis added)).

NL relies heavily on CERCLA's enactment provision, which states that "[u]nless otherwise provided, all provisions of this chapter shall be effective on December 11, 1980." 42 U.S.C. § 9652(a). However, as other courts have noted, that effective date only indicates the date on which suit can be brought, but does not indicate that, for example, suit cannot be brought as of the effective date against former owners or operators of existing sites of contamination. *See Nevada*, 925 F. Supp. at 699 ("CERCLA's effective date clause is not relevant for retroactivity purposes."); *Shell Oil Co.*, 605 F. Supp. at 1075 (agreeing with argument that "this is merely a standard 'effective date' provision that indicates the date when an action can first be brought and when the time begins to run for issuing regulation and doing other future acts mandated by the statute").

Accordingly, given the arguments presented to this Court, the Court denies the motion to dismiss on this ground.[8]

---

[7] The Court notes that the above-cited decisions (with the exception of *NEPACCO* and *Shell Oil*) postdate the Supreme Court's decision in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).

[8] NL also asserts that retroactive application "would result in an unlawful taking and due process violation under the Constitution" and cites *Eastern Enters. v. Apfel*, 524 U.S. 498 (1998). In *Easter Enters.*, no majority of the Supreme Court could agree on a constitutional rationale for invalidating retroactive legislation. Dkt. 49, at 14; *see Alcan*, 315 F.3d at 188 ("Although a majority in *Eastern Enterprises* was willing to declare the retroactive liability scheme of the Coal Act unconstitutional, no single rationale commanded a majority.").

NL's briefing lacks any specific argument grounded in due process or takings jurisprudence. The Court cannot be

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

### iv. Plaintiff's HSAA § 25366(a) Defense is Premature

Under Cal. Health & Safety Code § 25366(a), the HSAA "shall not be construed as imposing any new liability associated with acts that occurred on or before January 1, 1982, if the acts were not in violation of existing state or federal laws at the time they occurred." One California case treated this provision as an affirmative defense, but only because "the parties agree[d]" that it "establishes an affirmative defense to liability under the HSAA." *Orange Cnty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 388-89 (2017).

To the extent *Sabic* holds that section 25366(a) is an affirmative defense, dismissal is inappropriate. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."). To the extent *Sabic* does not stand for that proposition, dismissal would still be inappropriate because this inquiry calls for the kind of fact-specific analysis that can only be addressed at summary judgment.

Accordingly, without reaching whether section 25366(a) is an affirmative defense, the motion is denied on this ground.

### v. Plaintiff's Claims Are Not Barred by a Lead Paint Settlement

Finally, NL argues that Plaintiff's public nuisance claims are barred by a 2019 settlement agreement. Even if Plaintiff, a state agency, was bound by a settlement reached by local prosecutors, it is clear that the settlement related to a different set of claims, and does not bar this litigation. The settlement released NL "from all Claims and defenses *related to Lead Paint* in the Prosecuting

---

conscripted by passing references to the Constitution into making NL's argument for its counsel. The Court therefore expresses no opinion in this order on whether retroactive application of CERCLA under these circumstances violates the Takings Clause or the Due Process Clause. However, such an argument must contend with the substantial weight of authority concluding that CERCLA's retroactive liability is constitutional. *See id.* at 189-90; *Franklin Cnty. Convention Facilities Auth.*, 240 F.3d at 550-53; *United States v. Dico, Inc.*, 266 F.3d 864, 880 (8th Cir. 2001).

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11293-SVW-AGR | Date | 7/19/2021 |
|---|---|---|---|
| Title | *California Department of Toxic Substances Control et al. v. NL Industries, Inc. et al.* | | |

Jurisdictions...." Declaration of John Powers, Dkt. 49-2, Ex. M, at 28. That does not encompass Plaintiff's claims here. Accordingly, the motion to dismiss is denied on this ground.

### VI. Conclusion

For the reasons explained above, the motions to dismiss are DENIED. Defendants NL and Trojan are ordered to file answers within 14 days of this order.

IT IS SO ORDERED.

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |