Rob Bonta
Attorney General of California
Sarah E. Morrison, SBN 143459
Supervising Deputy Attorney General
David Zaft, SBN 237365
Deputy Attorney General
300 South Spring Street Suite 1702
Los Angeles, CA 90013
Phone: (213) 269-6372
Fax: (213) 897-2802
David.Zaft@doj.ca.gov

*Attorneys for Plaintiffs*
*Cal. Dept. of Toxic Substances Control*
*and the Toxic Substances Control Account*

Gary J. Smith
Bina R. Reddy (*pro hac vice*)
Eric L. Klein (*pro hac vice*)
BEVERIDGE & DIAMOND, P.C.
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone:  (415) 262-4000
Facsimile:   (415) 262-4040
gsmith@bdlaw.com

*Attorneys for Defendant Clarios, LLC*

*Additional counsel listed on signature page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL *et al.*,<br><br>Plaintiffs and Counterdefendants,<br><br>vs.<br><br>NL INDUSTRIES, INC., *et al.*<br><br>Defendants and Counterclaimants.<br><br>AND RELATED THIRD-PARTY CLAIMS | Case No. 2:20-cv-11293-SVW-JPR<br><br>**JOINT REPORT ON CASE MANAGEMENT PROPOSALS**<br><br>Courtroom:   10A<br>Judge:          Hon. Stephen V. Wilson<br>Trial Date:   TBD<br>Action Filed: December 14, 2020 |

**INTRODUCTION**

On September 24, 2021, the Court ordered certain parties to submit within thirty (30) days a case management plan that effectively and efficiently manages this case. ECF Nos. 139, 175.[1]  Upon representation of these parties that their negotiations were proceeding productively, on October 26, 2021, the Court extended the deadline for submission to November 8, 2021.  ECF No. 216.  Plaintiffs State of California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC" or "Plaintiffs"), and Defendants Clarios, LLC, Quemetco, Inc., International Metals Ekco, Ltd., Gould Electronics Inc., Kinsbursky Bros. Supply, Inc., Trojan Battery Company, LLC, Ramcar Batteries Inc., Oregon Tool, Inc., and NL Industries, Inc. (collectively, "Defendants") (together with Plaintiffs, "Reporting Parties") now respectfully submit this Joint Report on Case Management Proposals.

The Reporting Parties, through their counsel of record, engaged in extensive negotiations to attempt to narrow their differences regarding case management.  They exchanged written proposals for phasing the case, and met and conferred repeatedly by telephone and email. Plaintiffs circulated a detailed phasing proposal by letter to defense counsel on September 24, and Defendants subsequently provided their proposal to Plaintiffs by letter on October 19.  All counsel conferred by telephone on October 22 and 29, and conversations between Plaintiffs' counsel and individual defense counsel took place on October 5 and November 3 and 5.  Additionally, all joint defense counsel conferred with each other by telephone on September 29 and October 8, 18, and 27, and individual defense counsel conferred repeatedly one-on-one by phone.  Numerous emails

---

[1]	The Reporting Parties submitting this Proposed Case Management Plan interpret "the parties" as used in the Court's Order on the Joint Motion to Stay Third-Party Deadlines [ECF No. 175] to refer to Plaintiffs and the defendants named in the Plaintiffs' Complaint [ECF No. 1], but not the third-party defendants named in the Third Party Complaint filed by NL Industries, Inc. ("NL").  NL respectfully submits that any party named by NL that wishes to participate in the case management process should be allowed to do so, and should not be excluded.

were exchanged between counsel throughout the period.  Through these efforts, the Reporting Parties were able to narrow some of the issues, but they were not ultimately able to agree on a complete joint proposal for the Court, and accordingly submit separate proposals below.  The Reporting Parties request that the Court schedule a hearing to assist in its consideration of these proposals.

## JOINT STATEMENT OF THE CASE

Plaintiffs have brought claims pursuant to Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") §§107 and 113(g)(2), 42 U.S.C. §§ 9607 and 9613(g)(2), and California's Hazardous Substances Account Act ("HSAA"), California Health and Safety Code §§25360–61, alleging that Defendants are jointly and severally liable for past and future response costs Plaintiffs allegedly incurred and will incur in connection with alleged releases of hazardous substances from a secondary lead smelter located in Vernon, California (the "Vernon Plant"). Plaintiffs also request injunctive relief pursuant to the HSAA, California Health and Safety Code §25358.3, against Defendants and bring a claim for public nuisance against Defendant NL.

Defendants deny liability for Plaintiffs' claims. Defendants have also asserted counterclaims against Plaintiffs seeking contribution under CERCLA §113(f), 42 U.S.C. §9613(f), a declaratory judgment under CERCLA §113(g), 42 U.S.C. §9613(g), and contribution/indemnity under the HSAA, California Health and Safety Code §25300. In addition, NL asserts counterclaims for equitable indemnity and negligence *per se* against Plaintiffs.  Plaintiffs have moved to dismiss these counterclaims, *see* ECF No. 211, and deny liability for all counterclaims asserted against them.

NL has brought a Third-Party Complaint for claims pursuant to CERCLA §§113(f) and 113(g)(2), 42 U.S.C. §§9613 (f) and 9613(g)(2), California Health and Safety Code §25300, and equitable indemnity, alleging that approximately sixty-four (64) third parties ("Third-Party Defendants") caused or contributed to the contamination at the properties surrounding the Vernon Plant. ECF No. 122.  Many of these third parties have responded

to NL's Third-Party Complaint, but not all.  The Court stayed all third-party deadlines on September 24, 2021.  *See* ECF No. 175.

**CASE MANAGEMENT PROPOSALS**

## I.    PLAINTIFFS' CASE MANAGEMENT PROPOSAL

### A.    Introduction

Contrary to Defendants' position, complex CERCLA cost recovery cases often involve significant offsite contamination covering a large geographic area that has not been fully delineated at the time the action is filed. This is how CERCLA was intended to operate: It allows the government to file a cost recovery case and seek a determination regarding liability before its investigation and cleanup are complete. Although the scope of Plaintiffs' response actions relating to the Vernon Plant have been substantial, as are the response costs Plaintiffs seek here, this simply reflects the massive contamination that still remains in place in the nearby communities, the toxic legacy of ninety years of the Vernon Plant's lead smelting operations.

Plaintiffs' case management proposal effectively and realistically addresses the complexity of this case by separating it into three distinct phases: (1) liability on Plaintiffs' cost recovery and declaratory relief claims under CERCLA and HSAA; (2) Plaintiffs' total recoverable costs; and (3) the allocation of liability among the Defendants, any third-party defendants, and Plaintiffs. As explained below, Plaintiffs' phasing proposal follows the approach suggested in the Federal Judicial Center's Manual for Complex Litigation (4th ed. 2004) ("Manual") and routinely utilized by numerous courts in managing complex CERCLA cost recovery cases. It also reflects CERCLA's structure and logic by allowing the government to pursue its cost recovery claims, and Defendants to mount their defenses to liability, before turning to more complex questions of allocation of liability among responsible parties (including any third parties).

Defendants propose three deviations from this well-accepted structure. First, they propose front-loading a stand-alone proceeding to determine the scope and extent of the

Vernon Plant's releases. Defendants posit that such a determination, by itself, would facilitate settlement discussions that could lead to an early resolution of the case. But this is not the case. Although such a determination certainly would have a substantial impact on scope of the case, without a determination of the other critical Phase 1 issues—including Defendants' liability on Plaintiffs' CERCLA and HSAA claims, and resolution of any complete defenses to liability such as the recycling exemption under the 1999 Superfund Recycling Equity Act)—the parties will not actually be in a solid position to discuss settlement. Accordingly, Plaintiffs are willing to include such a determination as part of Phase 1, but believe that this issue must be concurrently litigated with the other Phase 1 issues. Plaintiffs submit that the Court's determination of all of these issues together on the 22-month timeline proposed by Plaintiffs would go a long way toward posturing this case for settlement.

In direct tension with Defendants' apparent goal of facilitating settlement discussions, Defendants then propose that Phase 1 also include a four-month period for impleading third party defendants, and that all of the parties' liability be fully litigated in Phase 1. The addition of dozens—or hundreds or even thousands—of third-party defendants likely would make productive settlement discussions less, not more, likely. Realistically, it also would substantially lengthen the timeframe for Phase 1 from the 22 months proposed by Plaintiffs to three or more years, given the additional discovery, depositions, and pre-trial work that would be required by the addition of so many parties. Defendants' proposal also flouts CERCLA's objectives, which was designed to allow the government to quickly seek liability determinations against defendants, and then allow those defendants that are found liable to seek contribution from each other and third parties. The Court should reject this proposal.

Finally, Defendants propose that divisibility should be resolved in Phase 1. But the result of such a determination goes to the share of response costs for which a party is liable, and that determination fits more squarely into Phase 3, where other types of allocation and apportionment will be addressed.  However, Plaintiffs are willing to

consider proposals or ideas from Defendants that lay out the specific argument and factual grounds for any divisibility defense, and address the timing of this defense with the Court in further briefing and/or at a hearing.

### B.    Plaintiffs' proposed case management plan applies a widely-used approach that would promote efficiency and judicial economy

Rule 42(b) of the Federal Rules of Civil Procedure ("Rule 42(b)") authorizes the Court to separate trial based on separate issues, claims, cross claims, counterclaims, or third-party claims. Rule 42(b) vests the Court with broad discretion to take such action for convenience, to avoid prejudice, to expedite the resolution of a case, or promote judicial economy. Courts routinely utilize this authority to separate CERCLA cost recovery cases into distinct phases, with each phase addressing a different set of claims or issues. *See* Manual § 34.12  ("Generally, CERCLA litigation will comprise three interrelated phases, each of which have case-management implications: (1) liability; (2) determination of remedy and recoverable costs, including challenges to response actions for which costs were incurred; and (3) equitable allocation of response costs among defendants."), § 34.21 ("consider whether the case should be bifurcated or trifurcated into two or more phases, such as liability, amount, and recoverability of response costs and allocation"). Such phasing provides an "efficient approach[] to these cases by narrowing the issues at each phase, by avoiding remedial questions if no liability attaches, and by potentially hastening . . . settlement discussions once liability is determined." *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 667–68 (5th Cir. 1989); *accord United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 720 (2d Cir. 1993) (bifurcation is a "powerful legal tool[], which, by effectively isolating the issues to be resolved, avoid[s] lengthy and perhaps needless litigation"); *Textron Inc. v. Barber-Colman Co.,* 903 F. Supp. 1570, 1582 (W.D.N.C. 1995) ("CERCLA actions . . . are typically bifurcated by reason of their complexity.").

A phased approach here would allow this case to proceed in an orderly, streamlined manner that would allow the parties to focus on distinct issues in each phase. Courts routinely prioritize the determination of defendants' liability on the plaintiff's CERCLA § 107 cost recovery claims in the first phase, and defer the determination of the total amount of recoverable costs, allocation, and contribution to one or more later phases. *See Alcan Aluminum*, 990 F.2d at 720 (noting, in complex CERCLA cases that "[l]iability may be decided first before the more complicated questions implicated in clean-up measures, which includes fixing the proportionate fault of liable parties.").[2]

Plaintiffs propose that the Court adopt this approach here and resolve Defendants' liability first before it decides potentially complicated issues involving the liability of third-party defendants for contribution to Defendants under CERCLA § 113, 42 U.S.C. § 9613, and the proportionate fault of the liable parties. Determining which Defendants are liable before adjudicating DTSC's response costs and the highly complex issues involved in resolving contribution and third-party claims will serve several purposes.

First, consistent with CERCLA's structure, this approach will allow Plaintiffs' cost recovery claims to be tried first such that a finding of no liability in the first phase would result in fewer parties in the second phase. *Amoco Oil,* 889 F.2d at 667–68.

Second, it will reduce the burden on the Court's time whereby resolution of liability may obviate or limit protracted third-party litigation in the final phase.

---

[2] *See, e.g.*, *State ex rel. Howes v. W.R. Peele, Sr. Trust*, 876 F. Supp. 733, 737-38 (E.D.N.C. 1995) (bifurcating determination of liability from damages); *State of N.Y. v. N. Storonske Cooperage Co., Inc.*, 174 B.R. 366, 370, n. 4 (N.D.N.Y. 1994) (bifurcating liability from damages, resolution of cleanup measures, and allocation); *United States v. Western Processing Co., Inc.*, 734 F. Supp. 930, 931 (W.D. Wash. 1990) (bifurcating liability from the amount of recoverable damages); *Pinal Creek Group,* 218 F.R.D. 656-58 (dividing discovery and motion practice into separate phases for liability and damages/allocation); *United States v. Wade*, 653 F. Supp. 11, 14-15 (E.D. Pa. 1994) (same); *Tex Tin Settling Defendants Steering Comm. v. Great Lakes Carbon Corp.*, No. 96-0247, 2008 WL 4376363, at *12 (S.D. Tex. Sept. 22, 2008) (bifurcating liability from damages and equitable allocation); *see also United States v. Davis*, 882 F. Supp. 1217, 1219 (D.R.I. 1995) (trifurcating liability, costs, and contribution).

Third, it will streamline discovery, motion work, and other Phase 1 activity by limiting the initial set of issues to be litigated and deferring the appearance of several dozen, hundreds, or potentially thousands of third-party defendants to Phase 3. There is no basis for adding those parties early in the case, as Defendants propose. Litigating the relative liability of potentially thousands of parties and property owners all at once, as Defendants propose, is utterly unworkable on its face and would make this case more of a morass, not less. Further, such an approach is not necessary to facilitate settlement. It would actually hinder if not preclude settlement, because the determination of any Defendant's liability would be delayed for years. Defendants' position that the liability of potentially thousands of PRPs could be prepared for trial and tried in as little as 10 months, following a three-to-four month interpleader period, is implausible. Based on the 11 months it has taken for the present set of 11 parties to get through most of—but not even all of—the Rule 12(b)(6) stage, it is impossible that the liability of dozens-to-thousands of additional parties could be determined within the unrealistic timeframe proposed by Defendants. The Court should reject this proposal—inevitably Defendants' unrealistic bid would require an expanded timeframe down the road as third parties who are not present today request additional time to prepare for trial.

In contrast to Defendants' proposal, Plaintiffs' approach actually would promote opportunities for settlement by resolving certain, critical issues early in the litigation that will help Plaintiffs and Defendants better assess the strengths and weaknesses of their claims and defenses to liability under CERCLA and HSAA. For this reason, Plaintiffs also propose including the determination of *Plaintiffs'* liability on Defendants' CERCLA and HSAA counterclaims in Phase 1. Also to promote settlement, Plaintiffs are willing to accelerate into Phase 1 (but not at the beginning of Phase 1, as Defendants propose) the issue of the relationship between the Vernon Plant's releases and Plaintiffs response costs—i.e., what Defendants are calling the geographic scope of the site. In short, once the liability of the present parties and the scope of that liability is known, settlement discussions (at least to some degree) would be ripe. Because CERCLA allows subsequent

contribution actions, the precise liability of each of potentially thousands of parties does not need to be known (contrary to Defendants' position) for settlement at some level to occur.

## C.     Plaintiffs' proposed case management plan

As explained above, given the scope and complexity of issues in the case and in the interest of efficiency and economy, Plaintiffs propose that discovery, motion practice, and trial should be phased. Given the nature of this case, the Manual (§§ 34.12, 34.21, 34.34) suggests separating complex CERCLA cases into the following phases: (1) liability, (2) damages (i.e., the amount of recoverable response costs), and (3) allocation. This approach is consistent with CERCLA's overall structure and allows for the logical sequencing of issues.

Under Plaintiffs' proposed case phasing, Phase 1 would be focused on determining who among the original parties are liable for Plaintiffs' response costs and/or are subject to an order for abatement under the HSAA. Accordingly, Defendants' liability under CERCLA § 107 and the HSAA (California Health & Safety Code §§ 25358.3, 25360) would be determined in Phase 1. Accordingly, any defense that completely[3] absolves a party of liability (such as, for example, a statute of limitations defense or the application of the recycling exemption established by the 1999 Superfund Recycling Equity Act (42 U.S.C. § 9627)) would be resolved in Phase 1. Defendants' counterclaims against Plaintiffs under CERCLA § 113 and Health & Safety Code § 25360 would also be determined in Phase 1. However, all claims involving third parties would remain stayed and deferred to Phase 3, which is when third-party defendants named in NL's third-party complaint who have not yet done so would be required to file responsive pleadings, and any new third-party complaints would be filed.

---

[3] To the extent a defense is a partial defense, it is a defense to the allocation of damages and would be resolved in Phase 3. Inconsistency with the National Contingency Plan would be resolved in Phase 2.

After considering Defendants' proposal, Plaintiffs also will accept (under the schedule in Section 1.c below), but neither prefer nor propose, that Phase 1 include a determination of the scope and extent of the releases from the Vernon Plant, which would address Defendants' concern that this determination precede third-party litigation. This determination would be litigated concurrently with the other issues to be resolved in Phase 1.

Phase 2 would be focused on determining Plaintiffs' total recoverable response costs (and Defendants' affirmative defenses thereto, including their defenses alleging inconsistency with the National Contingency Plan).

Phase 3 would be focused on dividing up liability for the response costs, and would include any remaining claims and issues. Thus, during Phase 3, Defendants that are found liable in Phase 1 would have the opportunity to bring contribution claims against each other and against third-party defendants (as NL has already done). Phase 3 would address Defendants' divisibility defenses and the equitable allocation of the recoverable response costs among the liable parties, including third-party defendants. Further, NL's public nuisance liability would be adjudicated in Phase 3, because the adjudication of CERCLA and HSAA liability in the prior phases may make it unnecessary to adjudicate this claim.

Discovery in each phase would be limited to the subjects of litigation for that phase.

On any deadline to which Plaintiffs' case management plan is silent, the Federal Rules of Civil Procedure and the Local Rules for the Central District of California would control.

### Phase 1: CERCLA and HSAA Liability

**Claims to be litigated**

Plaintiffs propose resolving Defendants' CERCLA and HSAA liability in the first phase, as well as Plaintiffs' liability for Defendants' CERCLA and HSAA counterclaims. This phase would include resolving any complete defenses to liability. Plaintiffs do not

propose separate sub-phases for findings on these claims. Instead, Plaintiffs propose that the following issues to be concurrently determined in Phase 1:

(i)     Plaintiffs' claims against Defendants for recovery of response costs pursuant to CERCLA and HSAA, including whether: the site is a "facility", a "release" or "threatened release" of a hazardous substance has occurred, which requires the expenditure of response costs, and the defendant is a "covered person" subject to liability;

(ii)    Plaintiffs' claim against Defendants for declaratory relief under CERCLA;

(iii)   Plaintiffs' claim against Defendants for abatement of a release or threatened release pursuant to HSAA, which includes determining the existence of an imminent or substantial endangerment to the public health or welfare or to the environment caused by a release or threatened release pursuant to HSAA;

(iv)    Defendants' counterclaims against DTSC for contribution and declaratory judgment under CERCLA and the HSAA, including whether DTSC is a "covered person" subject to liability; and

(v)     The forgoing list necessarily includes Plaintiffs' and Defendants' defenses to CERCLA and HSAA liability that represent complete defenses to liability.[4]

As noted above, Plaintiffs are willing to accelerate into Phase 1 (but not at the beginning of Phase 1, as Defendants propose) the issue of the relationship between the Vernon Plant's releases and Plaintiffs' response costs—i.e., what Defendants are calling the geographic scope of the site. Plaintiffs acknowledge resolution of this issue is important to facilitate settlement. However, resolution of this issue as the first item in the case is unnecessary and inefficient. It would require two trials instead of one, and does

---

[4] During this meet and confer process, Defendants never explained the grounds for any divisibility defense they may present. Given this lack of transparency, Plaintiffs believe it is appropriate to place divisibility in Phase 3. However, they are willing to meet and confer and reconsider this if Defendants will provide a specific factual basis for this defense. Plaintiffs are also willing to submit additional briefing on this issue and/or address it at a hearing.

nothing to facilitate settlement because the issue of *who is actually liable* will not have been resolved yet.

**Discovery**

Discovery for Phase 1 would be limited to the above-listed Phase 1 issues. Plaintiffs propose that, after the Court issues an order regarding the phasing of this case, it schedule an Initial Scheduling Conference for sixty (60) days thereafter. Pursuant to Fed. R. Civ. P. 26, the parties will confer and develop a discovery plan at least twenty-one (21) days before the Initial Scheduling Conference and submit the written discovery plan to the Court within fourteen (14) days after the parties' conference. The parties' discovery plan will state the parties' views and proposals on the topics enumerated in Fed. R. Civ. P. 26(f)(3), including but not limited to the specific Phase 1 subjects on which discovery may be needed, the schedule and completion timing for any such discovery (within the time limits in Section 1.c. below), the production of electronically stored information, and the procedure for asserting claims of privilege.

**Summary of general deadlines**

As set forth below, Plaintiffs propose scheduling the trial for Phase 1 twenty-two months after the Initial Scheduling Conference. Plaintiffs' proposed schedule is both realistic and one that will ensure the parties are actively and diligently litigating the Phase 1 issues. The proposed schedule takes into account massive scope and complexity of this case, including the number of parties; the size of the Administrative Record; the nearly 100-year history of the Vernon Plant; the voluminous number of potentially relevant emails; the dozens of depositions that will be needed; and complex, highly technical expert issues.

1.     Initial Disclosures: In accordance with Fed. R. Civ. P. 26, the Parties shall make initial disclosures at or within fourteen (14) days after the conference of the parties, which is required to take place at least twenty-one (21) days before the Initial Scheduling Conference.

2.      Non-Expert Discovery Cut-Off and Scope: All non-expert discovery shall be completed within twelve (12) months after the Initial Scheduling Conference. All discovery not specifically related to the subjects to be litigated in Phase 1, as outlined above, shall be stayed until the later phases.

3.      Expert Discovery Cut-Off: All expert discovery shall be completed by a date that is fifteen (15) months after the Initial Scheduling Conference.

4.      Motions: All motions, other than discovery motions, shall be filed no later than ninety (90) days before the date trial commences. All motions must be noticed and in compliance with Federal Rules of Civil Procedure and the Local Rules. Plaintiffs believe that many Phase 1 issues may be resolvable through motions for summary judgment.

5.      Final Pre-trial Conference: Pursuant to Fed. R. Civ. P. 16, the final pre-trial conference shall be held approximately one (1) week prior to commencing trial in Phase 1. Pursuant to Local Rule L.R. 16-2, the parties shall meet and confer at least forty (40) days in advance of the final pre-trial conference on the topics outlined in L.R. 16-2.1 through L.R. 16-2.9, and meet and confer on the preparation of trial documents. No later than twenty-one (21) days prior to the final pre-trial conference, the parties shall file and serve the memorandum of contentions of fact and law, witness list, and joint exhibit list. Pursuant to L.R. 16-10, at least seven (7) days before trial is scheduled to commence, the parties must file and serve separate trial briefs.

6.      Motions in Limine: All motions in limine shall be filed and served fourteen (14) days before the date the trial commences, unless this Court orders otherwise. Oppositions to the motions in limine shall be filed and served nine (9) days before the date the trial commences, unless this Court orders otherwise. The motions in limine shall be heard at the final pre-trial conference, or no later than five (5) days before the date trial commences.

7.      Trial Date: Trial shall commence approximately twenty-two (22) months after the Initial Scheduling Conference.

**Phase 2: Recoverable Costs**

**Claims to be litigated**

Plaintiffs propose that Phase 2 focus on the recoverable amount of Plaintiffs' costs, and Defendants' affirmative defenses relating to the recoverable amount of Plaintiff's response costs against Defendants under CERCLA and the HSAA. Specifically, Phase 2 will involve resolution of the following issues:

(i)     Plaintiffs' recoverable response costs relating to Plaintiffs' claims against Defendants under CERCLA and HSAA; and

(ii)     Defendants' affirmative defenses to Plaintiffs' recoverable costs relating to Plaintiffs' claims against Defendants under CERCLA and HSAA, including those related to inconsistency with the National Contingency Plan.

**Summary of general deadlines**

Upon resolution of the issues in Phase 1, whether at trial, through summary judgment, or settlement, the parties will present the Court with a proposed schedule for discovery, motion practice, and trial for Phase 2.

**Phase 3: Divisibility, Contribution, Third-Party Defendant liability, and Common Law Claims**

**Claims to be litigated**

Plaintiffs propose that Phase 3 address the following issues:

(i)     Divisibility of the harm relating to Plaintiffs' claims against Defendants under CERCLA;

(ii)     Liability of Defendants and third-party defendants for contribution under CERCLA and HSAA. All third-party claims and third-party litigation would be stayed until Phase 3, including the filing of any new third-party complaints and the requirement that defendants named in NL's third-party complaint file responsive pleadings;

(iii)     Allocation and equitable apportionment of Plaintiffs' response costs recoverable under CERCLA and the HSAA, as determined in Phase 2,

among the parties determined to be liable in Phase 1 and Phase 3, as well as any other allocation determinations relating to Plaintiffs' other claims;

    (iv)   Plaintiffs' public nuisance claim against NL Industries (which is a jury claim); and

    (v)   NL's equitable indemnity and negligence per se counterclaims against Plaintiffs, if those counterclaims survive Plaintiffs' motion to dismiss.

### Summary of general deadlines

Upon resolution of the issues in Phase 2, whether at trial, through summary judgment, or settlement, the Parties will present to the Court a proposed schedule for third-party litigation, discovery, motion practice, and trial for Phase 3.

## II.     DEFENDANTS' CASE MANAGEMENT PROPOSAL

### A. Introduction

This case is like most CERCLA cases with one significant difference: In addition to seeking money to clean up an abandoned industrial site, the plaintiffs here also seek hundreds of millions of dollars for the cleanup of thousands of distant properties, all located more than a mile from the industrial site in question.[5]  That single element transforms this case from an expensive, but otherwise typical, environmental cleanup case to a potentially billion-dollar "battle of the experts" regarding the origins of lead found across nine square miles of greater Los Angeles, within which there are dozens of potentially related lead emitters, not to mention the confounding contributions of lead paint residues and leaded gasoline emissions.[6]

---

[5]     *See* Complaint ¶¶ 49 (seeking to recover for "contamination extending at least 1.7 miles from the Vernon Plant:); *see also id.* ¶¶ 1, 2, 4 (alleging emissions impacted thousands of nearby residents and properties) and ¶¶ 6, 132 (DTSC's defined "Site" includes the Vernon Plant and areas where hazardous substances from the Vernon Plant have come to be located).

[6]     Plaintiffs argue that "CERCLA cost recovery cases often involve significant offsite contamination covering a large geographic area that has not been fully delineated at the

The huge economic consequences of this dispute over the extent of Vernon Plant contamination mean that, so long as this issue remains disputed, Plaintiffs and Defendants will not find common ground for settlement discussions, and that the scope of this litigation – the number of parties and the breadth of relevant discovery – will consume immensely greater resources of both the parties and the Court than in the typical CERCLA case.  Conversely, the Court's early resolution of this key threshold issue under its Rule 42(b) authority could drastically simplify the remainder of the case and would significantly improve the near-term prospects for a settlement.

Accordingly, as set forth in more detail below, the distinguishing feature of Defendants' case management proposal is a Rule 42(b) "mini-trial" in the first year of the schedule – ideally around eight months – that would resolve this central uncertainty in this case and put the case on track for efficient resolution and potential settlement. Specifically, the Court should open this case by determining the geographic scope of the site at issue: Is it a circle with a 1.7-mile radius, as Plaintiffs contend, or was the Vernon Plant's environmental impact in a much smaller area, as at least one prior study has suggested?  The answer to this question, *regardless of how the Court rules*, will put this case on the same footing as most other CERCLA cases, in which the general scope of the site and the associated potential liability are commonly understood by all sides, and litigation can efficiently focus on the basic CERCLA questions of which parties must pay and how much.

---

time the action is filed." *See supra*.  But there are few, if any, examples of a case like this one, where the basic dispute over the definition of the site encompasses thousands of urban properties over many square miles in the heart of a major city, amounting to hundreds of millions of dollars in alleged response costs.  Defendants are aware of no other such site.  This unique dispute is why an early site definition makes sense in this case.  Moreover, Plaintiffs have been investigating this site for years, and first alleged their 1.7-mile site definition more than five years ago, so there is no cause for delay in the fact that Plaintiffs claim the site is not yet "fully delineated."

Under Plaintiffs' proposal, however, this threshold determination would not be made until well into 2023 at the earliest, and in the meantime, many unnecessary third-party defendants may be impleaded and settlement discussions cannot even begin.  There is no reason for site definition to wait that long.  The Court should define the site first.

### B.    Structure

The primary element of Defendants' proposed case management structure is the Rule 42(b) "mini-trial" on the geographic scope of the site discussed above.  Defendants contend that the definition of the site is so central to this case, and has so much potential to alter the scope of the litigation, that the Court should start now by setting an eight-month schedule to adjudicate the scope of the site, and should defer setting a broader case schedule until after that adjudication is complete and the scope of Plaintiffs' claim has been defined.  For instance, trifurcation of the case, as Plaintiffs seek, may be appropriate at that time, or it may not, depending on the definition of the site.

If, however, the Court wishes to establish a broader case schedule now, Defendants would also propose one or both of the following additional elements.  First, following that "mini-trial" at approximately eight months into the schedule, the Court should establish a brief period, not to exceed four months, for impleading all third parties, so that all necessary parties are gathered in orderly fashion, and the remainder of the case occurs once, not twice (*i.e.*, first with original defendants, later with late-added third-party defendants).  Second, if the Court concludes at this time that some form of bifurcation or trifurcation is appropriate, the initial "liability phase," (analogous to Plaintiffs' "Phase 1") should establish the liability of all parties, including third parties and DTSC itself, as well as CERCLA defenses to joint and several liability (including divisibility of harm, "federally permitted release," and the CERCLA exemption for battery recycling).

Defendants believe all three of these elements – site definition, third-party impleader, and a "liability phase" – can be accomplished in two years, *i.e.*, much faster than Plaintiffs suggest.

**(1)** <u>**Primary proposal**</u>**: The Court should conduct an initial, focused, standalone trial under Rule 42(b) approximately eight months after the entry of a case management order.**  The question for resolution by the Court in this initial trial would be the geographic definition of the compensable cleanup area in the case – the area within which Plaintiffs are entitled under CERCLA and HSAA to seek recovery of their response costs.  As a practical matter, this means the Court will determine the extent to which Plaintiffs may legally seek response costs for properties other than the Vernon Plant.  Because this question will require complex and contested expert testimony, eight months are necessary for the parties to conduct the required expert discovery and prepare for the initial standalone trial.  The overall case schedule, including general discovery involving DTSC and Defendants, will not be limited during this period, and the case will otherwise proceed normally.  *See, e.g.*, Manual for Complex Litigation, § 11.632.[7]  *See also id.*, § 34.26 ("Narrowing the Issues" in CERCLA litigation).

If the Court sets a Rule 42(b) trial approximately eight months after the entry of a case management order, Defendants propose that the Court enter an associated fact discovery cutoff date at approximately three months after the entry of such order, phased expert disclosures over the following three months,, and dates for a pretrial conference and associated motions *in limine* at an appropriate pretrial interval.

Defendants believe it is premature for the Court to decide whether Plaintiffs' proposed multi-step "trifurcation" will make sense for the remainder of the case until the Court has determined the scope of the compensable cleanup area.  That determination could dramatically narrow the issues and thus have a significant impact on the scope and trajectory of the remainder of the case.  Following this critical threshold determination,

---

[7]      "Whether the litigation involves a single case or many cases, severance of certain issues for separate trial under Federal Rule of Civil Procedure 42(b) can reduce the length of trial, particularly if the severed issue is dispositive of the case, and can also improve comprehension of the issues and evidence. Severance may permit trial of an issue early in the litigation, which can affect settlement negotiations as well as the scope of discovery."

the Court will then have a basis to determine whether to resolve the claims by and against all parties in a single proceeding or series of proceedings.  However, to the extent the Court elects to reach this question at this time, Defendants make the following proposals with respect to such subsequent proceedings.

**(2)  <u>Additional potential proposal</u>: Brief third-party impleader period.**  If reasonable in light of the outcome of the Court's determination of the compensable cleanup area, the Court should then consider lifting the current stay on third-party deadlines and setting a deadline of 3-4 months for the identification and impleader of all potentially responsible parties ("PRPs") with potential liability within the compensable cleanup area as defined by the Court.  *See, e.g.* Manual for Complex Litigation, § 34.27.[8] In particular, the determination of the compensable cleanup area may so substantially reduce the number of owner/operator third-party defendants that adding them to the case in advance of any liability determinations may be far more manageable for the Court than delaying third-party practice until a later date, at which point a duplicative liability phase for third-party defendants would be necessary.  In that circumstance, it is likely that most third-party defendants would be other recycler customers of the Vernon Plant that are similarly situated to the seven existing recycler defendants.

**(3)  <u>Additional potential proposal</u>: Liability phase including all parties and all liability defenses.**

If the Court elects to consider trifurcation at this time, Defendants believe that Plaintiffs' proposal has several serious flaws, including (1) its failure to resolve the liability of all parties in a single proceeding, (2) its failure to account for divisibility issues in the "liability" phase of the case, (3) its failure to provide a fair and efficient

---

[8]     "A reasonable but firm deadline, which might be as long as a year, is advisable for adding parties or cross-claims, absent special issues in individual instances. Once the deadline for joinder is reached, the parties and the court will have an overview of the size and scope of the litigation. At that point, pretrial, settlement, and trial plans can proceed, addressing issues relating to all the parties, while consideration of late presented claims is deferred."

process for impleading additional parties; and (4) its excessive length.  At most, the Court should follow the "mini-trial" and impleader period described above with a modified, more efficient version of Plaintiffs' proposed "Phase 1": a "liability" phase consisting of a 10-12 month proceeding to determine the liability of all PRPs, including the determination of all defenses to joint and several liability, including the battery recycling exemption under the Superfund Recycling Equity Act, divisibility of harm,[9] the "federally permitted release" defense under 42 U.S.C. § 9607(f), and potentially other threshold defenses.  Such period should include reasonable interim deadlines for fact and expert discovery, as well as dispositive motions and pretrial motion practice.

If the Court adopts all three of the elements Defendants propose above, the result would be to use the same amount of time Plaintiffs are proposing for their "Phase 1" – approximately 22-24 months – to accomplish much more than Plaintiffs propose, including the determination of the site at issue, the identification of third-party PRPs, and a liability determination for *all* parties, not just a subset.  Unlike the schedule Plaintiffs are proposing, under Defendants' three proposed elements, this case would be positioned at the two-year mark for a relatively fast and efficient determination of remaining issues among all parties (recoverable cleanup costs and equitable allocation), and the case

---

[9]    In negotiations, Plaintiffs expressly refused to include the "divisibility of harm" defense in their proposed "Phase 1," in which Plaintiffs propose to establish Defendants' joint and several liability, insisting that such defenses could only be raised during "Phase 3," which addresses the legally distinct realm of equitable allocation.  Plaintiffs' proposed exclusion of divisibility issues from the liability phase is legally unsupportable, because CERCLA and HSAA defendants are not subject to joint and several liability for demonstrably divisible impacts for which the resulting harm may be reasonably apportioned.  *Burlington Northern and Santa Fe Ry Co. v. United States*, 556 U.S. 599, 616 n.9 (2009); *see also, e.g., State of Arizona v. City of Tucson*, 761 F.3d 1005, 1011 (9th Cir. 2014).  In contrast, the contribution claims to be litigated in "Phase 3" allocate joint and several liability among liable parties according to equitable considerations.  Accordingly, under any phased approach, issues of divisibility are properly included as an inherent element of the threshold determination of whether a defendant is liable to Plaintiffs.

posture would allow potentially productive discussions among the parties regarding a resolution of the case.

### C.  Points and authorities in support of a threshold "mini-trial"

Defendants' case management proposal is much more efficient than Plaintiffs' proposal, and much more conducive to narrowing the scope of the dispute and promoting earlier settlement opportunities.

### 1.  An early site determination encourages settlement efforts.

The primary impediment to settlement discussions in this case is that the parties have sharply divergent views regarding the extent of the compensable cleanup area. Defendants contend that Plaintiffs are seeking to recover environmental response costs at tens of thousands of properties that the Vernon Plant did not actually contaminate. Plaintiffs' proposed "site" (*i.e.*, "facility" in CERCLA parlance) in this case encompasses many thousands of residential properties that DTSC is planning to remediate, and these properties are the overwhelming driver of the alleged environmental response costs, which have already exceeded $100 million even at an early stage.  But the Vernon Plant is surrounded by a significant zone of industrial and commercial property, not residential properties, such that if the compensable cleanup area is significantly smaller – because the environmental impact of the Vernon Plant was more limited – many, and possibly most, of the properties driving Plaintiffs' alleged costs will be outside that area.



The image to the right, from DTSC's online cleanup tracker, tells the story. The Vernon Plant is at the center, surrounded by a nonresidential zone, with residential areas (filled in where already subject to DTSC outreach) farther away toward the periphery. The site boundary as DTSC draws it – the green circumference – represents CERCLA liability of many hundreds of millions of dollars, but Defendants will prove that the compensable cleanup area is far smaller, and thus that Plaintiffs' recoverable cleanup costs are dramatically lower.

This wide gap in the parties' expectations for the outcome of the case is a formidable obstacle to settlement discussions. Plaintiffs are proposing to start the case by pushing just nine defendants to share potentially many hundreds of millions of dollars of liability among them, a burden Defendants cannot reasonably accept and lock in by settlement without first trying their own strongly-held theory of the proper compensable cleanup area. But if the Court starts the case by determining the compensable cleanup area – in the initial standalone trial that Defendants propose above – the Court (no matter how it ruled) would eliminate that expectations gap at the outset and set the stage for potentially productive settlement discussions. The parties would gain a shared understanding of the legal scope of the actual site to be remediated, and expectations for the outcome of the case would then stand a much better chance of coming into alignment.

## 2.   An early site determination makes the case more efficient.

First, Defendants envision a shorter litigation than do Plaintiffs.  Plaintiffs are asking for the first of three phases of the case to last nearly two years, suggesting that the entire case may last five years or more.  The case should not take that long.

Second, it makes little sense to adjudicate the liability of parties while the nature of that liability is still sharply contested between Plaintiffs and Defendants.  As set forth above, the proper first step is for the Court to determine the geographic nature of the site; then the parties can litigate which of them is liable for contaminating it.

Third, an early determination of the scope of the compensable cleanup area will be valuable to DTSC itself in allocating resources for cleanup, allowing public money to be spent most efficiently.

Fourth, defining the site will determine which third-party property owners and operators need to be impleaded before every owner/operator in a 1.7-mile radius is reflexively impleaded, potentially saving tremendous time and resources for the Court and the third parties themselves.  Specifically, the smaller the compensable cleanup area, the fewer third-party property owners or operators are geographically located within it, and the fewer of those owner/operators will need to be impleaded.  If Plaintiffs' view of site boundaries is correct, there will be a large number of owner/operator third parties whose unique contributions to site contamination will need to be adjudicated as part of this case.  By contrast, if Defendants' view of the site boundaries is correct, relatively few owner/operator third-party defendants may be implicated in this case at all; most third-party defendants will be Vernon Plant customers that will not add to the complexity of the case because their defenses will be mostly identical to those of existing arranger/transporter defendants.  The definition of the site will therefore have a significant impact on the complexity of this litigation, and so should occur first.

Moreover, a site determination in this case could be accomplished in eight months. While Defendants have not yet had an opportunity to test and litigate Plaintiffs' allegation that the site has a 1.7-mile radius, DTSC's existing administrative record

reveals that the extent of environmental impacts from the Vernon Plant was a hotly disputed issue over the course of many years of regulatory interaction between DTSC and Exide.  In the course of defining the scope of Exide's regulatory obligations, both parties necessarily devoted extensive resources to developing their positions on the question of how far, and to what extent, lead and other substances emitted by the Vernon Plant impacted properties outside the facility.  It should therefore require relatively little additional time or effort for DTSC to explain and defend in this litigation the basis for its factual allegation that such substances require cleanup at locations 1.7 miles away from the Vernon Plant.

In sum, the Court can and should define the overall scope of the issues to be litigated in this case via a focused initial trial under Rule 42(b), the outcome of which would determine the extent of the area for which Plaintiffs may recover response costs under CERCLA and HSAA.  If it then makes sense after the Court has decided this key threshold issue, the necessary parties should be impleaded in an orderly fashion, and discovery, motions, and trials proceed (either in an integrated or trifurcated structure) on a level playing field with clear deadlines applicable equally to all.  Such a case management order would shorten the case, regularize it, and give the parties their best and earliest chance to find a negotiated resolution – the most efficient possible outcome of the case by far.

## CONCLUSION

While the Reporting Parties did not reach agreement on a particular case management structure after extensive discussions, the Reporting Parties agree that the Court should use its authority under Rule 42(b) to organize the case in the most efficient and logical manner, and respectfully submit the preceding alternative proposals for the Court's consideration.

Dated:    November 8, 2021

Respectfully submitted:

Rob Bonta                                                    BEVERIDGE & DIAMOND, P.C.
Attorney General of California
Sarah E. Morrison, SBN 143459                                By:   /s/ Gary J. Smith
Supervising Deputy Attorney General                          Gary J. Smith
                                                             Bina R. Reddy (*pro hac vice*)
By:   /s/ David Zaft                                         Eric L. Klein (*pro hac vice*)
David Zaft
Deputy Attorney General                                      *Counsel for Defendant Clarios, LLC*

*Attorneys for Plaintiffs*
*Cal. Dept. of Toxic Substances Control*
*and the Toxic Substances Control Account*


BARNES AND THORNBURG LLP                                     RAF LAW GROUP

By:   /s/ David C. Allen                                     By:   /s/ Ruben A. Castellon
David C. Allen                                               Ruben A. Castellon
                                                             Anna L. Le May
*Counsel for Gould Electronics, Inc.*
                                                             *Counsel for International Metals Ekco,*
                                                             *Ltd.*

LAW OFFICES
OF JAMES C. MACDONALD

By: _/s/ James C. Macdonald_
James C. Macdonald

*Attorneys for Ramcar Batteries, Inc.*

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Alexander P. Swanson_
Patrick W. Dennis
Alexander P. Swanson
Thomas F. Cochrane

*Attorneys for Quemetco, Inc.*

FARELLA BRAUN + MARTEL LLP

By: _/s/ Donald Sobelman_
Donald Sobelman
Linda Sobczynski
John Ugai

*Attorneys for Oregon Tool, Inc.,
formerly known as Blount, Inc.*

MURCHISON & CUMMING, LLP

By: _/s/ Richard A. Dongell_
Richard A. Dongell
Eric P. Weiss

*Attorneys for Kinsbursky
Bros. Supply, Inc. dba KBI*

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

By: _/s/ Stephen J. O'Neil_
Stephen J. O'Neil
Jeffrey J. Parker

*Attorneys for Trojan
Battery Company, LLC*

LAW OFFICES OF JOEL L. HERZ

By: _/s/ Joel L. Herz_
Joel L. Herz

*Attorney for NL Industries, Inc.*

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, David Zaft, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 8, 2021          _/s/ David Zaft_
                                  David Zaft