Joel L. Herz (Admitted Pro Hac Vice)
joel@joelherz.com
LAW OFFICES OF JOEL L. HERZ
3573 East Sunrise Drive, Suite 215
Tucson, AZ 85718
(520) 529-8080 (telephone)
(520) 529-8077 (facsimile)

Kenneth A. Ehrlich (Bar #150570)
kehrlich@elkinskalt.com
ELKINS KALT WEINTRAUB REUBEN
GARTSIDE LLP
10345 W. Olympic Blvd
Los Angeles, CA  90064
(310) 746-4412 (telephone)
(310) 746-4499 (facsimile)

Attorneys for Defendant/Counterclaimant/
Third-Party Plaintiff NL Industries, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, *et al.*,<br><br>          Plaintiffs and Counterdefendants,<br><br>v.<br><br>NL INDUSTRIES, INC., *et al.*,<br><br>          Defendants and Counterclaimant,<br>_____<br>NL INDUSTRIES, INC.,<br><br>          Third-Party Plaintiff,<br><br>v. | Case No.<br><br>2:20−cv−11293−SVW−JPR<br><br>**OPPOSITION OF NL INDUSTRIES, INC. TO PLAINTIFFS' MOTION TO STRIKE CERTAIN OF DEFENDANT NL INDUSTRIES, INC.'S AFFIRMATIVE DEFENSES**<br><br>Date: December 20, 2021<br>Time: 1:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Stephen V. Wilson<br>Trial Date: TBD<br>Action Filed:  December 14, 2020 |

1   EXXON MOBIL CORP., *et al.,*        )

2                                          )

               Third-Party Defendants.     )

3 _____ )

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................... v

I.   LEGAL STANDARD ........................................................................... 1

II.   ARGUMENT ........................................................................... 3

      NL's Defense Number 14 Should Not Be Stricken (DTSC #3) ................. 3

      NL's Defense Number 16 Should Not Be Stricken (DTSC #8) ................. 4

      NL's Defense Number 17 Should Not Be Stricken (DTSC #1) ................. 4

      NL's Defense Number 18 Should Not Be Stricken (DTSC #1) ................. 6

      NL's Defense Number 20 Should Not Be Stricken (DTSC #6) ................. 7

      NL's Defense Number 21 Should Not Be Stricken (DTSC #6) ................. 8

      NL's Defense Number 22 Should Not Be Stricken (DTSC #6) ................. 8

      NL's Defense Number 23 Should Not Be Stricken (DTSC #1) ................. 9

      NL's Defense Number 24 Should Not Be Stricken (DTSC #1) ............... 10

      NL's Defense Number 28 Should Not Be Stricken (DTSC #6) ............... 10

      NL's Defense Number 29 Should Not Be Stricken (DTSC #4) ............... 10

      NL's Defense Number 30 Should Not Be Stricken (DTSC #4) ............... 11

      NL's Defense Number 32 Should Not Be Stricken (DTSC #6) ............... 11

      NL's Defense Number 33 Should Not Be Stricken (DTSC #1) ............... 12

      NL's Defense Number 34 Should Not Be Stricken (DTSC #5) ............... 12

      NL's Defense Number 35 Should Not Be Stricken (DTSC #5) ............... 15

      NL's Defense Number 38 Should Not Be Stricken (DTSC #6) ............... 15

NL's Defense Number 39 Should Not Be Stricken (DTSC #8) ................ 16

NL's Defense Number 40 Should Not Be Stricken (DTSC #9) ................ 16

NL's Defense Number 44 Should Not Be Stricken (DTSC #6) ................ 17

NL's Defense Number 48 Should Not Be Stricken (DTSC #7) ................ 17

NL's Defense Number 49 Should Not Be Stricken (DTSC #10) .............. 18

VI.    CONCLUSION............................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Andrus v. Allard*, 444 U.S. 51 (1979) ............................................................... 13

*Barnes v. AT & T Pension Ben. Plan–Nonbargained Program*, 718 F.Supp.2d 1167
    (N.D. Cal. 2010) ............................................................................................... 3

*Cal. Dep't of Toxic Substances Control v. Exide Holdings (In re Exide Holdings)*,
    No. 20-11157-CSS (D. Del. July 26, 2021) ..................................................... 5

*Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053
    (C.D. Cal. 2003) ............................................................................................... 7

*City of Long Beach v. Mansell*, 476 P.2d 423 (Cal. 1970) ................................... 5

*Clinton v. Acequia, Inc*., 94 F.3d 568 (9th Cir. 1996) .......................................... 3

*Connolly v. Pension Benefit Guaranty Corporation,* 475 U.S. 211 (1986) ...................... 13

*County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4th 292
    (Cal. Ct. App. 2006).......................................................................................... 11

*D'Egidio v. City of Santa Clarita*, 4 Cal.App.5th 515 (Cal. Ct. App. 2016)........................ 5

*E & J Gallo Winery v. Grenade Beverage LLC*, No. 1:13-CV-00770-AWI, 2014 WL
    641901 (E.D. Cal. Feb. 18, 2014) ..................................................................... 2

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998). ............................... 13, 14, 15

*Eurow & O'Reilly Corp. v. Superior Mfg. Grp., Inc.,* No. CV 14-6595-RSWL,
    2015 WL 1020116 (C.D. Cal. Mar. 6, 2015)..................................................... 1

*Feduniak v. California Coastal Com.*, 56 Cal. Rptr. 3d 591(Ct. App. 2007)...................... 5

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................... 2

*In re Firearm Cases,* 126 Cal.App.4th 959 (2005) ............................................... 17

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979) ............................................ 13

*Landgraf v. USI Film Products et al.,* 511 U.S. 244 (1994)................................... 14

*Louisville Joint Stock Land Bank* v. *Radford*, 295 U.S. 555 (1935) .................................. 14

*Martinez v. Pacific Bell*, 225 Cal.App.3d 1557 (1990) ....................................................... 17

*Nichols v. Coolidge*, 274 U.S. 531 (1927) ........................................................................ 15

*Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565 (9th Cir. 2018) .............................. 8

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717 (1984).................... 12, 13

*People ex Rel. Gallo v. Acuna*, 14 Cal.4th 1090 (Cal. 1997) ............................................ 11

*People v. Conagra Grocery Prods. Co.*, 17 Cal.App.5th 51
    (Cal. Ct. App. 2017)....................................................................................................... 16

*Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583 (2008) ........................................ 10

*Resolution Trust Corp. v. Rossmoor Corp.*, 34 Cal.App.4th 93
    (Cal. Ct. App. 1995)......................................................................................................... 6

*San Diego Unified Port Dist., Corp. v. Monsanto Co.*, Case No.: 15 v578-WQH-AGS
    (S.D. Cal. Sep. 5, 2018) ................................................................................................ 16

*Sawyer v. County of Sonoma*, 719 F.2d 1001 (9th Cir. 1983) ............................................ 5

*U.S v. Mottolo*, 695 F. Supp. 615 (D.N.H. 1988) ............................................................... 4

*United States v. Carlton*, 512 U.S. 26 (1994) .................................................................. 15

*United States v. Hardage,* 116 F.R.D. 460 (W.D.Okla. 1987) ............................................ 9

*United States v. Security Industrial Bank*, 459 U.S. 70 (1982) ....................................... 14

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) ............................................ 12, 13

*Vogel v. Linden Optometry APC*, No. CV 13-00295 GAF SHX,
    2013 WL 1831686 (C.D. Cal. Apr. 30, 2013) ................................................................. 2

*Walnut Creek Manor, LLC v. Mayhew Center, LLC*, 622 F. Supp. 2d 918
    (N.D. Cal. 2009) .............................................................................................................. 8

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)................................. 2

*Wyshak v. City Nat. Bank*, 607 F.2d 824 (9th Cir. 1979) ................................................... 2

**Statutes**

California Hazardous Substances Account Act ....................................................... 1, 4, 6, 15

Comprehensive Environmental Response, Compensation, and Liability ................ *passim*
    Act

Comprehensive Environmental Response, Compensation, and Liability
    Act
    § 107(a)(4) ............................................................................................................7
    § 107(b)(3) .........................................................................................................7, 8

**Rules**

Fed. R. Civ. P. 8(b)(1)(A) ................................................................................................ 3

Fed. R. Civ. P. 12(f) .............................................................................................. 1, 2, 3

Fed. R. Civ. P. 15(a)(2) ................................................................................................... 2

**Other Authorities**

5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure:*
    *Civil* § 1274 (3d ed. 2013) ............................................................................... 3

Charles Alan Wright & Arthur Miller, 5C Fed. Prac. & Proc. Civ. § 1381
(3d ed.) .......................................................................................................................... 2

NL Industries, Inc. ("NL") opposes the California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control Account (collectively "Plaintiffs") Motion to Strike Certain of Defendant NL Industries, Inc.'s Affirmative Defenses [ECF No. 212].

Contrary to DTSC's assertions in its motion and as set forth below, except as noted below, NL's affirmative defenses that DTSC proposes to strike are judicially recognized, are not redundant, and will not prejudice DTSC if they remain at issue. Indeed, NL's defenses perform their proper function: to give fair notice of the defenses that may be raised in this case prior to discovery.  NL recognizes that this Court has addressed the issue of certain co-defendants' affirmative defenses under CERCLA and the HSAA in its Order dated September 24, 2021 [ECF No. 176] but NL's situation is different on numerous fronts.

First, NL has raised some different defenses.

Second, unlike the other co-defendants, DTSC has sued NL under California nuisance law, which does not contain any of the limitations on affirmative defenses that might apply in CERCLA or the HSAA.

For the reasons set forth below, DTSC's motion should be denied.

## I.  LEGAL STANDARD

When a party moves to strike another's defenses under Federal Rule of Civil Procedure 12(f), the court must view the defenses under attack in the light most favorable to the non-moving party.  Fed. R. Civ. P. 12(f); *Eurow & O'Reilly Corp. v. Superior Mfg. Grp., Inc.*, No. CV 14-6595-RSWL, 2015 WL 1020116, at *2 (C.D. Cal. Mar. 6, 2015).

A defense is insufficient as a matter of law "only if it clearly lacks merit 'under any set of facts the defendant might allege.'" *Eurow*, 2015 WL 1020116, at *2 (quoting *Emp. Painters' Tr.*, 2013 WL 1774628, at *4). Courts are "very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions

quite properly are viewed as best determined only after further development by way of discovery and a hearing on the merits." Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1381 (3d ed.). Finally, "even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party." *Id.*

However, even if the motion is granted, leave to amend should be given, so that any deficiency in the pleading can be addressed. *Id.*; *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

Motions to strike a defense as insufficient are often disfavored by federal courts "because of their somewhat dilatory and often harassing character." *E & J Gallo Winery v. Grenade Beverage LLC*, No. 1:13-CV-00770-AWI, 2014 WL 641901, at *1 (E.D. Cal. Feb. 18, 2014) (citing *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005)). They are generally rejected "because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Vogel v. Linden Optometry APC*, No. CV 13-00295 GAF SHX, 2013 WL 1831686, at *1-4 (C.D. Cal. Apr. 30, 2013) (quoting *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1152 (C.D. Cal. 2003)). When granted, "[i]n the absence of prejudice to the opposing party, leave to amend should be freely given." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826- 827 (9th Cir. 1979) (citing *Foman v. Davis*, 371 U.S. 178 (1962)). "Where a Rule 12(f) motion is really an attempt to dismiss certain claims, the Ninth Circuit has held that a Rule 12(b)(6) motion or a Rule 56 motion is the more proper vehicle." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

Like other provisions of Rule 12, Rule 12(f) must be read in conjunction with Federal Rule of Civil Procedure 8 ("Rule 8"), which provides general pleading standards. *See* 5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure: Civil* § 1274 (3d ed. 2013); *cf. Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003) ("Rule 12(b)(6), which tests the legal sufficiency of the claims asserted in the complaint, must be read in conjunction with Rule 8."). Rule 8(b) provides that "[i]n responding to a pleading, a party must ... state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). In turn, Rule 8(c) provides that "a party must affirmatively state any avoidance or affirmative defense ...." Fed. R. Civ. P. 8(c). Moreover, in order to ensure the opposing party is given "fair notice of the defense and the grounds upon which it rests," affirmative defenses must also comply with Rule 8's "short and plain statement" requirement. *Barnes v. AT & T Pension Ben. Plan–Nonbargained Program*, 718 F.Supp.2d 1167, 1170 (N.D. Cal. 2010) (citing *Wyshak*, 607 F.2d at 827).

## II.  ARGUMENT

For the reasons set forth below, none of the affirmative defenses that DTSC requests be stricken, should be struck. To avoid duplication of arguments already made, NL adopts and incorporates all objections to the dismissal of affirmative defenses made by its co-defendants in ECF Nos. 97, 98, 99 and 100.

### NL's Defense Number 14 Should Not Be Stricken (DTSC #3)

NL's Fourteenth Affirmative Defense states: "DTSC's claims are barred by the doctrine of ripeness."  Under the ripeness doctrine, "a federal court normally ought not resolve issues involving contingent future events that may not occur as anticipated, or indeed may not occur at all." *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572-73 (9th Cir. 1996) (internal quotation marks omitted).)  Here, whether DTSC will actually cleanup all of the residential properties that it is stating it *might* cleanup,

is a contingent future event that might or might not happen.  This Court should not delve into those issues until such happens.  More so, whether the cost of cleanup of the actual Exide plant will exceed the more than $29 million that Exide has already put into a Trust to remediate the plant, is a future contingent event that might or might not happen.  The Court should not wade into that area until it is ripe.  Lastly, whether DTSC actually conducts any offsite groundwater cleanup, is also a future contingent event that may or may not happen.  Yet again, it is not ripe.  For this reason, the Court should abstain from those issues.

### NL's Defense Number 16 Should Not Be Stricken (DTSC #8)

NL's Sixteenth Affirmative Defense states: "DTSC is not entitled to recover costs, or any other expenses, and NL is not jointly and severally liable for costs, or any other expenses arising from contamination that is divisible from contamination attributable to NL, if any."  This Court has already found that divisibility is a valid defense.

### NL's Defense Number 17 Should Not Be Stricken (DTSC #1)

NL's Seventeenth Affirmative Defense states: "DTSC's claims are barred by the doctrines of unclean hands, *in pari delicto*, estoppel, collateral estoppel, accord and satisfaction, waiver, release, res judicata, claim preclusion, issue preclusion, laches, recoupment, setoff and/or concealment." NL recognizes that the Court has already ruled that certain of these defenses do not apply to CERCLA and HSAA claims. NL respectively submits that this issue has not been decided by the United States Supreme Court and adopts the arguments made by co-defendants to preserve the appellate issue should the Supreme Court decide that the defenses may be used, or if the Ninth Circuit comes to the same conclusion as has been found by other courts. *See e.g. U.S v. Mottolo*, 695 F. Supp. 615, 627 (D.N.H. 1988) ("CERCLA § 107 neither explicitly restricts, nor even refers to, equity jurisdiction. The Court therefore finds and rules that defendants may assert equitable defenses.")

Regardless, there is no basis to strike these affirmative defenses from NL's answer since DTSC has chosen to pursue a nuisance claim against NL. The Ninth Circuit and California State Courts have made clear that under appropriate circumstances, equitable defenses can be applied to a nuisance claim. *See e.g. Sawyer v. County of Sonoma*, 719 F.2d 1001, 1006 (9th Cir. 1983) ("Earlier cases frequently declared that estoppel against the government is rare and should be invoked only in extraordinary circumstances. *See, e.g., San Diego v. California Water and Telephone Co.,* 30 Cal.2d 817, 825, 186 P.2d 124, 130 (1947). The modern rule is more flexible, and generally permits the application of estoppel against the government when the traditional elements of estoppel are present."); *City of Long Beach v. Mansell*, 476 P.2d 423, 448 (Cal. 1970) ("The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel."); *Feduniak v. California Coastal Com*., 56 Cal. Rptr. 3d 591, 600 (Ct. App. 2007) ("The government is not immune from the doctrine [of equitable estoppel], and it may be applied 'where justice and right require it.'"). Indeed, equitable defenses have been left to the trier of fact in public nuisance claims. *See e.g. D'Egidio v. City of Santa Clarita*, 4 Cal.App.5th 515, 532 (Cal. Ct. App. 2016) (considering but not applying the affirmative defenses of estoppel and laches to a public nuisance claim).

More so, DTSC had been in litigation with Exide for 20 years. In prior litigation between Exide and DTSC, the court found that the Vernon site did not pose any imminent threat to the public. *See Cal. Dep't of Toxic Substances Control v. Exide Holdings (In re Exide Holdings)*, No. 20-11157-CSS, at *6 (D. Del. July 26, 2021) ("First, the Bankruptcy Court approved abandonment of the Vernon site as an

alternative and found that abandonment posed "no identifiable imminent threat to the public's safety or to health or humans' general safety." (*Id*. at 179:18-23).").

DTSC will no doubt attempt to re-litigate that finding against it for a second time before this Court. There is no reason why the doctrines of res judicata, claim preclusion, and issue preclusion could not be applied against DTSC with regard to prior findings against DTSC which is often applied in the context of CERCLA. This defense should not be stricken.

## **NL's Defense Number 18 Should Not Be Stricken (DTSC #1)**

NL's Eighteenth Affirmative Defense states: "The damages alleged were caused by DTSC's own disposal of hazardous substances, carelessness and/or negligence."  To the extent that this Court has already ruled on this defense as to CERCLA and the HSAA, NL respectively submits that this issue has not been decided by the United States Supreme Court and adopts the arguments made by co-defendants to preserve the appellate issue should the Supreme Court decide differently. Moreover, this defense is authorized by Section 107(b)(3) of CERCLA.

Regardless, there is no basis to strike these affirmative defenses with regard to the nuisance claim brought by DTSC against NL.  NL submits that the evidence will ultimately show that if there is any nuisance (NL submits that there is not one), such nuisance will be the result of the activities of others. California case law indicates that liability for a nuisance caused by others may be established by showing negligence. *See Resolution Trust Corp. v. Rossmoor Corp.*, 34 Cal.App.4th 93, 100 (Cal. Ct. App. 1995).

Indeed, California law has long recognized the concept of *comparative negligence* – a legal concept which reduces the defendant's liability (in part, or sometimes altogether) when the plaintiff was also negligent and the plaintiff's own negligence contributed to the injury he or she suffered.  If a plaintiff claims damages based on a type of nuisance which was created through the negligent act or omission

of the defendant, the issue of comparative negligence may arise. Thus, if the nuisance was caused by DTSC, this is an affirmative defense allowed under California case law.

### **NL's Defense Number 20 Should Not Be Stricken (DTSC #6)**

NL's Twentieth Affirmative Defense states: "DTSC's claims are barred, in whole or in part, to the extent that the substances, if any, handled by NL did not cause or contribute to the release or the incurrence of specific response costs or damages incurred by DTSC, if any."  NL recognizes that the Court has already considered CERCLA causation issues, but NL, while adopting the arguments made by other co-defendants for purposes of appeal, suggests that this Court reconsider the issue.  This defense is authorized by Section 107(b)(3) of CERCLA.

In addition, in Section 107(a)(4), CERCLA has a causation requirement.  *See* CERCLA Section 107(a)(4) stating: "which ***causes*** the incurrence of response costs, of a hazardous substance".  NL respectfully submits that this case involves at least two sites. One being the Vernon Plant; the other being the offsite residential properties that DTSC is proposing to cleanup. They are not connected.  Numerous courts have found that in two site cases, there must be causation.  In *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, 1066 (C.D. Cal. 2003), the court stated that:

> in a two-site CERCLA case, the plaintiff meets its burden on summary judgment if it (a) identifies contaminant at its site, (b) identifies the same (or perhaps a chemically similar) contaminant at the defendant's site, and (c) provides evidence of a plausible migration pathway by which the contaminant could have traveled from the defendant's facility to the plaintiff's site. **If the plaintiff meets this burden, the defendant must proffer evidence sufficient to create a genuine issue of fact as to its ability to** <u>**disprove causation**</u>.

(emphasis added); *see also Walnut Creek Manor, LLC v. Mayhew Center, LLC*, 622 F. Supp. 2d 918, 927 (N.D. Cal. 2009).

Indeed, more recently, the Ninth Circuit in *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 592 (9th Cir. 2018) cited, as follows:

> *Burlington Northern I*, 520 F.3d at 939 (holding that each share of liability for the harm is "the contamination **traceable to each defendant**"), *rev'd on other grounds*, 556 U.S. 599, 129 S.Ct. 1870, 173 L.Ed.2d 812 (2009);")

(emphasis added).

NL respectfully submits that the causation requirement is not one that should be decided in a complicated case on a Rule 12(f) Motion. The facts should be developed first, and the issue should be decided later.

### NL's Defense Number 21 Should Not Be Stricken (DTSC #6)

NL's Twenty-First Affirmative Defense states: "NL alleges that the acts or omissions of entities or persons other than it are, or were, the intervening or superseding causes of any alleged costs or other damages incurred, or to be incurred, by DTSC." NL respectfully submits that this defense should not be stricken for the same reasons as set forth above with regard to Affirmative Defense No. 20. Moreover, this defense is authorized by Section 107(b)(3) of CERCLA.

### NL's Defense Number 22 Should Not Be Stricken (DTSC #6)

NL's Twenty-Second Affirmative Defense states: "DTSC is barred from recovering as to NL by DTSC's failure to mitigate, minimize or avoid any of the alleged damages referred to in the Complaint. If DTSC is entitled to recover any damages, which NL denies, such recovery must be reduced by the amount attributable to the failure of DTSC to take action to mitigate damages." NL respectfully submits that when there has been misfeasance by the government, the defense should not be stricken. *See e.g. United States v. Hardage,* 116 F.R.D. 460,

466 (W.D.Okla. 1987), which refused to strike the failure-to-mitigate defense in light of potential delay and misfeasance by the government.  The *Hardage* Court added:

> Government delays over the last six years may have caused estimated costs of cleanup at the Hardage Criner site to increase appreciably. This Court believes numerous affirmative defenses, which the Government seeks to strike, must be considered in mitigation of any damages incurred by Defendants due to the Government delays. Such defenses include increased costs due to the Government's failure to take appropriate response measures at the site; failure to provide proper notice before undertaking the response; acts or omissions of the Government which resulted in exacerbation of any release at the site; Plaintiff's undue delay in taking action at the site. Further, as Defendant J.O.C. Oil Company states in its brief, p. 7, § 104(c) of CERCLA contains requirements for reasonable notice to defendants. Under § 107 actions, it is possible that a six year period between the Government's first awareness of the Hardage site and its noticing of J.O.C. and other defendants herein, is per se unreasonable. Similarly, affirmative defenses regarding Defendants' due care, and actions in compliance with applicable law, may be relevant in the apportionment of damages, and in development of other remedies sought by the Government.

*Id.*  The conduct by DTSC is even more egregious here.  For the same reasons that the defenses were not struck in *Hardage*, they should not be stricken here.

### NL's Defense Number 23 Should Not Be Stricken (DTSC #1)

NL's Twenty-Third Affirmative Defense states: "NL alleges that DTSC's claims for relief are barred by the doctrines of ratification and acquiescence."  Here, there is no dispute that the property, when owned by NL, was in the City of Vernon, which was zoned exclusively for "industry" and NL was in full compliance with all

zoning obligations.  After NL sold the property in 1979, State of California regulators allowed the NL buildings to be knocked down and a new larger plant built, that ran for over 15 years.  DTSC, or those acting through California, ratified and acquiesced to any conduct by NL.  For the same reasons that NL's other equitable style defenses should be allowed, so should this defense.

### NL's Defense Number 24 Should Not Be Stricken (DTSC #1)

NL's Twenty-Fourth Affirmative Defense states: "NL alleges that DTSC's causes of actions are barred, in whole or in part, because DTSC would be unjustly enriched if it were to prevail on any of the causes of action."  At the end of the day, NL submits that when all of the facts are discovered, a significant number of the residential properties that are being cleaned or are being proposed to be cleaned up will have been impacted by improperly maintained lead paint.  NL has already paid for that cleanup.  The State of California, through DTSC, is looking to be paid a second time.  The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1593 (2008) (fn. omitted.) For the same reasons that NL's other equitable style defenses should be allowed, so should this defense.

### NL's Defense Number 28 Should Not Be Stricken (DTSC #6)

NL's Twenty-Eighth Affirmative Defense states: "DTSC's claims are barred, in whole or in part, because DTSC cannot prove that NL was the cause-in-fact and/or proximate cause of the alleged releases alleged in the Complaint." NL respectfully submits that this defense should not be stricken for the same reasons as set forth above with regard to Affirmative Defense No. 20.

### NL's Defense Number 29 Should Not Be Stricken (DTSC #4)

NL's Twenty-Ninth Affirmative Defense states: "DTSC's attorneys' fees are not recoverable under CERCLA." NL submits that DTSC will not have a valid CERCLA claim against NL and thus, it should be able to recover attorneys' fees.

Moreover, attorneys' fees are not allowed in a California public nuisance case. NL adopts the arguments made by its co-defendants on this issue including that all attorneys' fees must be reasonable.

## NL's Defense Number 30 Should Not Be Stricken (DTSC #4)

NL's Thirtieth Affirmative Defense states: "DTSC is not entitled to recovery from NL of prejudgment or post-judgment interest." NL submits that DTSC will not have a valid CERCLA claim against NL. Thus, it should be able to recover interest. Moreover, one court has held nuisance does not allow any monetary damages, only abatement, thus monetary damages are not allowed. *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 310-11 (Cal. Ct. App. 2006) ("The plaintiffs in a representative public nuisance action may not avoid this rule by seeking damages in the form of the "costs of abatement."). Thus, there cannot be any interest on any nuisance claim.

## NL's Defense Number 32 Should Not Be Stricken (DTSC #6)

NL's Thirty-Second Affirmative Defense states: "All acts and conduct of NL, as alleged in the Complaint, conformed to and were pursuant to industry standards, based upon the state of knowledge existing at all material times alleged in the Complaint." NL respectfully submits that this defense should not be stricken for the same reasons as set forth above with regard to Affirmative Defense No. 20. Moreover, with regard to nuisance, "not every interference with collective social interests constitutes a public nuisance. To qualify, and thus be enjoinable, the interference must be both *substantial* and *unreasonable*." *People ex Rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1105 (Cal. 1997) (emphasis original). NL's conformance of its conduct to industry standards will be evidence that its conduct was not unreasonable. This defense should not be stricken.

### NL's Defense Number 33 Should Not Be Stricken (DTSC #1)

NL's Thirty-Third Affirmative Defense states: "NL is not liable because of the gross negligence or reckless, willful, or wanton misconduct or intentional misconduct by the State of California or by local government in the State of California." NL respectfully submits that this defense should not be stricken for the same reasons as set forth above with regard to Affirmative Defense No. 20.

### NL's Defense Number 34 Should Not Be Stricken (DTSC #5)

NL's Thirty-Fourth Affirmative Defense states: "DTSC's claims are barred because CERCLA is not retroactive or cannot be applied retroactively against NL under these circumstances without violating NL's United States and California constitutional rights including but not limited to due process and taking rights.  The Fifth Amendment's Due Process Clause prohibits the government from depriving any person of "life, liberty, or property, without due process of law."  The DTSC is seeking more than $100 million from NL in this lawsuit on a joint and several basis. The money that is being sought would be property of NL.  The money is being sought solely for past conduct that occurred up to almost 100 years and all more than 40 years ago. The laws that were passed after NL's conduct impermissibly create unforeseen liability for past actions.

Due process review of retroactive laws employs a version of the deferential rational basis test that normally applies to most legislation: the law needs to be "supported by a legitimate legislative purpose furthered by rational means." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). Nonetheless, courts consider the retroactive application of a statute separately from any prospective application, subjecting retroactive laws to somewhat more exacting scrutiny than prospective laws. In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976), the Supreme Court rejected the notion that "what Congress can legislate

prospectively it can legislate retrospectively," explaining that justifications for prospective legislation may be insufficient to support retroactive effect.

Retroactive civil legislation violates due process if it is "particularly harsh and oppressive" or "arbitrary and irrational." *R.A. Gray & Co.*, 467 U.S. at 733 (internal quotes omitted). The process for evaluating a regulation's constitutionality involves an examination of the "justice and fairness" of the governmental action. *See Andrus v. Allard*, 444 U.S. 51, 65 (1979). That inquiry, by its nature, does not lend itself to any set formula, *see ibid.*, and the determination whether "`justice and fairness' require that economic injuries caused by public action [must] be compensated by the government, rather than remain disproportionately concentrated on a few persons," is essentially ad hoc and fact intensive, *Kaiser Aetna* v. *United States*, 444 U.S. 164, 175 (1979) (internal quotation marks omitted). Several factors have particular significance: "[T]he economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action." *Ibid.; see also Connolly* v. *Pension Benefit Guaranty Corporation,* 475 U.S. 211, 224-225 (1986).

Here, requiring NL to pay more than $100 million for conduct that was fully legal when conducted, and which was actually beneficial to society in that NL's activities involved recycling of metals to help the environment, is "particularly harsh and oppressive" and barred by *Usery* and the Fifth Amendments Due Process Clause.

The Fifth Amendment's Takings Clause prohibits the taking of private property for public use without just compensation. A retroactive law that deprives a person of a vested property right may constitute a taking. In *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), a plurality of the Supreme Court noted that the Takings Clause offers a safeguard against retrospective laws affecting property rights that are similar to the protection the Ex Post Facto Clause provides in the realm of criminal law. A violation of the Takings Clause may invalidate the government action at issue

or entitle the property owner to compensation.  Analysis of a retroactive civil law under the Due Process Clause and the Takings Clause may overlap.

For example, the plurality opinion in *Eastern Enterprises* concluded that a 1992 law requiring a company that had ceased coal mining operations in 1965 to pay millions of dollars into a miners' pension fund violated the Takings Clause because the statute "improperly places a severe, disproportionate, and extremely retroactive burden on Eastern."  Justice Kennedy, concurring in the judgment and dissenting in part, would instead have held that the statute violated the Due Process Clause because it had "a retroactive effect of unprecedented scope" and no rational relation to a legitimate government interest.

In *United States v. Security Industrial Bank*, 459 U.S. 70, 78-79 (1982), the Supreme Court considered a Takings Clause challenge to a Bankruptcy Code provision permitting debtors to avoid certain liens, possibly including those predating the statute's enactment and expressed "substantial doubt whether the retroactive destruction of the appellees' liens . . . comport[ed] with the *Fifth Amendment*," and therefore construed the statute as applying only to lien interests vesting after the legislation took effect.  Similar concerns led the Supreme Court to strike down a bankruptcy provision as an unconstitutional taking where it affected substantive rights acquired before the provision was adopted.  *Louisville Joint Stock Land Bank* v. *Radford*, 295 U.S. 555, 601, 602 (1935); *see also Landgraf v. USI Film Products et al.,* 511 U.S. 244, 265 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct, accordingly settled expectations should not be lightly disrupted").

Like those provisions, applying CERCLA retroactively to NL here, divesting NL of property (money) long after the NL sold the plant, is not permissible.  Here, as was the case in *Eastern Enterprises,* requiring NL to pay millions of dollars for

activities that were fully legal when done "improperly places a severe, disproportionate, and extremely retroactive burden on" NL.

Regardless of the specific legal basis for a claim challenging retroactive legislation, either under the Due Process Clause or the Takings Clause, the Constitution limits how far back a retroactive law may reach and requires that the lookback period be "only a modest period of retroactivity . . . confined to short and limited periods required by the practicalities of producing national legislation." *United States v. Carlton*, 512 U.S. 26 (1994). Both the plurality and Justice Kennedy's opinion in *Eastern Enterprises* deemed excessive a 35-year period of retroactivity. And, in *Nichols v. Coolidge*, 274 U.S. 531 (1927), the Supreme Court struck down a tax that applied to a transaction that occurred 12 years before the statute was enacted, observing that Congress may legislate "to prevent evasion and give practical effect to the exercise of admitted power, but the right is limited by the necessity." Either under the Due Process Clause or the Takings Clause, applying CERCLA retroactively against NL here is impermissible. This affirmative defense should not be stricken.

### NL's Defense Number 35 Should Not Be Stricken (DTSC #5)

NL's Thirty-Fifth Affirmative Defense states: "DTSC's claims are barred because HSAA is not retroactive or cannot be applied retroactively against NL under these circumstances without violating NL's United States and California constitutional rights including but not limited to due process and taking rights." NL respectfully submits that this defense should not be stricken for the same reasons as set forth above with regard to Affirmative Defense No. 34.

### NL's Defense Number 38 Should Not Be Stricken (DTSC #6)

NL's Thirty-Eighth Affirmative Defense states: "DTSC is a potentially responsible party and therefore NL cannot be jointly and severally responsible." NL

respectfully submits that this defense should not be stricken for the same reasons as set forth above with regard to Affirmative Defense No. 16.

### NL's Defense Number 39 Should Not Be Stricken (DTSC #8)

NL's Thirty-Ninth Affirmative Defense states: "NL denies liability for any and all damages alleged in the Complaint. To the extent that NL is found liable for any of the damages alleged in the Complaint, NL alleges that it is entitled to an appropriate proration of damages because of the negligence and fault of other parties named and/or not named in this action." NL submits that with regard to CERCLA, this is within the divisibility issue already addressed by this Court.

With regard to the HSAA, liability is not joint and several. With regard to nuisance, liability is not joint and several unless there is a single harm. *People v. Conagra Grocery Prods. Co.*, 17 Cal.App.5th 51, 108 (Cal. Ct. App. 2017) ("When the apportionment is made, each person contributing to the nuisance is subject to liability only for his own contribution."); *see also San Diego Unified Port Dist., Corp. v. Monsanto Co.*, Case No.: 15cv578-WQH-AGS, at *12 (S.D. Cal. Sep. 5, 2018) ("The Port District has not demonstrated that these "apportionment defenses" fail as a matter of law at this early stage of proceedings."). For these reasons, this defense should not be stricken.

### NL's Defense Number 40 Should Not Be Stricken (DTSC #9)

NL's Fortieth Affirmative Defense states: "NL alleges that DTSC has failed to join as parties in the action those (i) that are subject to service of process, (ii) the joinder of which will not deprive the court of jurisdiction over the subject matter of the action, and (iii) because of which absence complete relief cannot be accorded among those that are already parties and/or who claim an interest relating to the subject of the action, and are so situated that the disposition of the action in the party's absence may as a practical matter impair or impede the party's ability to protect that interest or leave NL subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations by reason of the party's claimed interest."  NL understands that this Court has already considered this issue with regard to other Defendants.  NL adopts the arguments made by other Defendants for purposes of appeal.

### NL's Defense Number 44 Should Not Be Stricken (DTSC #6)

NL's Forty-Fourth Affirmative Defense states: "DTSC has not alleged and cannot prove any facts showing that the conduct of NL caused injury to DTSC." NL respectfully submits that this defense should not be stricken for the same reasons as set forth above with regard to Affirmative Defense No. 20.  Moreover, with regard to nuisance, DTSC must show causation.  Causation is an element of nuisance. When "liability is based upon nuisance . . . [, i]t extends to damage which is proximately or legally caused by the defendant's conduct, not to damage suffered as a proximate result of the independent intervening acts of others." *Martinez v. Pacific Bell*, 225 Cal.App.3d 1557, 1565 (1990); *see also In re Firearm Cases,* 126 Cal.App.4th 959, 988 (2005) ("Merely engaging in what plaintiffs deem to be a risky practice, **without a connecting causative link** to a threatened harm, is not a public nuisance.") (emphasis added).  This defense should not be stricken.

### NL's Defense Number 48 Should Not Be Stricken (DTSC #7)

NL's Forty-Eighth Affirmative Defense states: "NL denies liability for any and all damages alleged in the Complaint. To the extent that NL is found liable for any of the damages alleged in the Complaint, NL alleges that it is entitled to an appropriate proration of damages because of the negligence and other fault of the parties to this action. Proration and offsets include, but are not limited to: (1) tax funds paid pursuant to the Lead-Acid Battery Recycling Act of 2016 (Act) which established the Lead-Acid Battery Cleanup Fund to finance the investigation and cleanup of the Site; and, (2) all funds provided to DTSC pursuant to legislation passed by the State of California, for investigation and/or remediation of this Site."  DTSC

moves to strike the part of Affirmative Defense No. 48 that refers to "(2) all funds provided to DTSC pursuant to legislation passed by the State of California, for investigation and/or remediation of this Site." NL recognizes that the Court has already ruled on this issue. NL adopts the arguments made by co-defendants for purposes of appeal only.

### NL's Defense Number 49 Should Not Be Stricken (DTSC #10)

NL's Forty-Ninth Affirmative Defense states: "DTSC's claims are barred, in whole or part, by the judicially approved settlement between NL and the People of the State of California, and court order which resolved all claims involving soil lead contamination with any relationship to lead paint, and the residential cleanup areas at issue containing lead paint." NL recognizes that this Court has stated that DTSC is not making claims related to lead paint and denied NL's Motion to Dismiss for that reason. *See* ECF No. 103 at page 20.

Nevertheless, NL submits that the evidence in this case will ultimately show that improperly maintained lead paint is a source, if not a major source, of lead in soil at the off-site non-residential properties that DTSC is stating it has and will remediate. If the off-site residential properties are ultimately found to be included within the "Site" as determined by this Court, NL should not have to pay twice for the settlement of lead paint that it has already funded. For this reason, the defense should not be stricken.

## VI.   CONCLUSION

A decision on the merits of NL's defenses is for another day. Should the Court find any defenses insufficient, in whole or in part, as a result of pleading, NL respectfully requests leave to amend, so that NL is afforded an opportunity to test its defenses on the merits. Wherefore, NL's Affirmative Defenses, which DTSC has sought dismissal, should not be stricken, except for Nos. 12, 36, 37, 41, 42, 43, 45,

46 and 47, which NL agrees may be dismissed but for which NL adopts the arguments made by other Defendants for purposes of appeal only.

DATED this 16th day of November, 2021.

/s/ Joel L. Herz
Joel L. Herz
LAW OFFICES OF JOEL L. HERZ
3573 East Sunrise Drive, Suite 215
Tucson, AZ  85718
(520) 529-8080
(520) 529-8077 (facsimile)
Email:  joel@joelherz.com
Admitted Pro Hac Vice

Kenneth A. Ehrlich (Bar #150570)
ELKINS KALT WEINTRAUB REUBEN
GARTSIDE LLP
10345 W. Olympic Blvd
Los Angeles, CA  90064
(310) 746-4412
(310) 746-4499 (facsimile)
KEhrlich@elkinskalt.com

Counsel for NL Industries, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 16, 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system, which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

By: */s/ Joel L. Herz*_____