ROB BONTA
Attorney General of California
SARAH E. MORRISON
TIMOTHY E. SULLIVAN
Supervising Deputy Attorneys General
DONALD A. ROBINSON, SBN 72402
AARTI S. KEWALRAMANI, SBN 247068
JON S. TANGONAN, SBN 216705
ELIZABETH B. RUMSEY, SBN 257908
KATE M. HAMMOND, SBN 293433
ADRIANNA LOBATO, SBN 332026
Deputy Attorneys General
600 W. Broadway, Ste. 1800
San Diego, CA 92101
Phone: (619) 738-9152
Fax: (916) 731-2128
Email: Aarti.Kewalramani@doj.ca.gov

Matthew K. Edling, SBN 250940
matt@sheredling.com
Timothy R. Sloane, SBN 292864
tim@sheredling.com
Yumehiko Hoshijima, SBN 331376
yumehiko@sheredling.com
SHER EDLING LLP
100 Montgomery St., Ste. 1410
San Francisco, CA 94104

*Attorneys for Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,

Plaintiffs,

v.

NL INDUSTRIES, INC., et al.,

Defendants.

No. 2:20-cv-11293-SVW-JPRx

**PLAINTIFFS' OPPOSITION TO DEFENDANT NL INDUSTRIES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Judge: Stephen V. Wilson
Action Filed: December 14, 2020
Hearing Date: July 11, 2022, 9:30 am

# TABLE OF CONTENTS

**I. INTRODUCTION .......... 1**

**II. THIS COURT'S ORDER DENYING NL'S MOTION TO DISMISS .......... 2**

**III. SUMMARY JUDGMENT STANDARD .......... 2**

**IV. ARGUMENT .......... 3**

**A. CERCLA Allows Plaintiffs to Recover Response Costs Incurred Because of Airborne Emissions from the Vernon Plant. .......... 3**

1. Background on CERCLA .......... 3
2. "Disposal" versus "release" .......... 4
3. NL misreads *Pakootas III*. .......... 5
4. NL fails to meet its summary judgment burden. .......... 9
5. The other Defendants also fail to meet their summary judgment burden. .......... 10

**B. NL's Arguments About CERCLA "Facilities" Do Not Warrant Summary Judgment. .......... 11**

1. NL's arguments about splitting the PIA into two "facilities" do not justify partial summary judgment. .......... 11
2. It is immaterial that NL did not own the entire PIA. .......... 13

**V. CONCLUSION .......... 15**

# TABLE OF AUTHORITIES

**Cases**

*3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355 (9th Cir. 1990) .......... 8, 12, 14

*A & W Smelter & Refiners, Inc. v. Clinton*, 146 F.3d 1107 (9th Cir. 1998) .......... 8

*Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664 (5th Cir. 1989) .......... 8

*Bock v. Washington*, No. 21-35182, --- F.4th ----, 2022 WL 1447017 (9th Cir. May 9, 2022) .......... 13

*Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009) .......... 13, 14

*Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) .......... 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 2, 9, 10

*Chevron Mining Inc. v. United States*, 863 F.3d 1261 (10th Cir. 2017) .......... 14

*City of Wichita v. Aero Holdings, Inc.*, No. 98-1360-MLB, 2000 WL 1480490 (D. Kan. Apr. 7, 2000) .......... 13

*Ctr. for Cmty. Action & Envtl. Justice v. BNSF Ry. Co.*, 764 F.3d 1019 (9th Cir. 2014) .......... 6, 7

*Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, Inc.*, No. 11-CV-0252-CVE-PJC, 2017 WL 2662195 (N.D. Okla. June 20, 2017) .......... 8

*Horphag Res. Ltd. v Garcia*, 475 F.3d 1029 (9th Cir. 2007) .......... 3

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) .......... 2, 9

*Miller-Wohl Co. v. Comm'r of Labor & Indus.*, 694 F.2d 203 (9th Cir. 1982) .......... 13

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......... 13

*Pakootas v. Teck Cominco Metals, LTD., (Pakootas I)*, 452 F.3d 1066 (9th Cir. 2006) .......... 4, 7

*Pakootas v. Teck Cominco Metals, LTD., (Pakootas III),*
830 F.3d 975 (9th Cir. 2016) .......... passim

*Pakootas v. Teck Cominco Metals, Ltd., (Pakootas IV),*
905 F.3d 565 (9th Cir. 2018) .......... 6, 7

*Sanai v. McDonnell,*
No. 2:18-cv-05663-SVW-AGRx, 2018 WL 8731933 (C.D. Cal. July 11, 2018). 10

*United States v. E.I. Dupont De Nemours & Co., Inc.,*
432 F.3d 161 (3d Cir. 2005) .......... 14

*United States v. Gibson Wine Co.,*
No. 1:15-cv-1900-AWI, 2017 WL 1064658 n.9 (E.D. Cal. Mar. 20, 2017).......... 8

*United States v. LKAV,*
712 F.3d 436 (9th Cir. 2013) .......... 14

*United States v. Metate Asbestos Corp.,*
584 F. Supp. 1143 (D. Ariz. 1984) .......... 8

*United States v. Rohm & Haas Co.,*
2 F.3d 1265 (3d Cir. 1993) .......... 14

*United States v. Sterling Centrecorp Inc.,*
977 F.3d 750 (9th Cir. 2020) .......... 3, 4

**Statutes**

42 U.S.C. § 6903(3) .......... 5

42 U.S.C. § 9201(9) .......... 12

42 U.S.C. § 9601 .......... 5, 6, 10, 12

42 U.S.C. § 9607 .......... passim

42 U.S.C. § 9608(b)(4) .......... 14

**Rules**

Federal Rule of Civil Procedure 56(a) .......... 2

## I.     Introduction

NL Industries, Inc.'s ("NL") partial summary judgment motion ("Motion") misinterprets the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") case law and ignores the sound reasoning in this Court's order denying NL's motion to dismiss. ECF No. 103.

NL argues that *Pakootas v. Teck Cominco Metals, LTD.* (*Pakootas III*), 830 F.3d 975 (9th Cir. 2016), precludes Plaintiffs from recovering response costs incurred because of airborne emissions from the Vernon Plant. ECF No. 369 (Mot.) at 3–7. NL also insists the CERCLA "facility," the approximately 1.7-mile-radius area around the Vernon Plant referred to as the Preliminary Investigation Area ("PIA"), should be split into two. *Id.* at 7–17. Alternatively, NL appears to argue that if the PIA remains a single facility, NL cannot be held liable as a former owner or operator because it did not own or operate the residential properties in the PIA. *Id.* at 7–8.

These arguments lack merit. NL misreads *Pakootas III* by "conflating" two distinct statutory terms: "disposal" and "release." ECF No. 103 at 9. And NL fails to meet its summary judgment burden because NL does not show an absence of evidence that lead and other hazardous substances were disposed at the Vernon Plant while NL and its predecessor owned and operated it. Because NL submits no evidence undermining the Court's prior analysis of *Pakootas III*, this Motion amounts to a disfavored reconsideration motion.

Similarly, NL's arguments about splitting the PIA into two "facilities" do not warrant partial summary judgment. However this Court defines the PIA, Plaintiffs' full CERCLA cost recovery claim survives against NL. NL's attempt to evade liability also fails because neither CERCLA nor the case law requires a defendant to have owned or operated an entire facility for liability to attach.

This Court should deny partial summary judgment to NL and the other Defendants that have joined this Motion. *See* ECF No. 425 (notice of joinder).[1]

**II. This Court's Order Denying NL's Motion to Dismiss**

Plaintiffs brought a CERCLA cost recovery claim and other claims against Defendants including NL. ECF No. 1. NL moved to dismiss, raising the same two arguments it re-raises in the Motion. ECF No. 49. First, "NL argue[d] that the Ninth Circuit's decision in [*Pakootas III*] require[d] dismissal of [its] CERCLA claim to the extent it relies on 'passive transport of air emissions.'" ECF No. 103 at 9. This Court rebuffed that argument because "it [is] quite clear that the holding of *Pakootas III* does not preclude Plaintiff's claims even to the extent they rely on aerial migration of hazardous substances from the Vernon Plant." *Id.* at 10.

Second, NL insisted it was improper for Plaintiffs to treat the PIA as "a single facility under CERCLA." *Id.* at 12. The Court stressed that "CERCLA provides an extraordinarily broad definition of 'facility,'" *id.*, and then deferred to Plaintiffs' definition of the "facility" as including the entire PIA, *id.* at 13.

**III. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

First, the moving party must "'show[]'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Next, if the moving party makes their initial showing, "the non-moving party [must] designate specific facts demonstrating the existence of genuine issues for trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). A court must "view the evidence in the

[1] The Defendants that join the Motion do not advance additional arguments. *See* ECF No. 425. Therefore, they also are not entitled to summary judgment.

light most favorable to the nonmoving party, drawing all reasonable inferences in his favor." *Horphag Research Ltd. v Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).

Here, the Motion is based mostly on incorrect legal arguments, and NL does not argue that Plaintiffs' CERCLA claim fails because of an absence of evidence. *See generally* ECF No. 369.

## IV. Argument

The Motion raises two main arguments, both unmeritorious. First, NL argues *Pakootas III* precludes imposing CERCLA liability on NL for DTSC's response costs incurred in connection with airborne emissions from the Vernon Plant. *See* ECF No. 369 at 2–7. Second, NL insists the PIA should be split into two facilities: the Vernon Plant and the residential areas in the PIA where DTSC took some response actions. *Id.* at 7–17. NL argues that if the residential areas are a separate facility, NL is not liable for DTSC's response actions in the residential areas because NL did not own or operate residential properties. Alternatively, if the PIA is one facility, NL suggests it is not liable for DTSC's response costs because NL never owned or operated the entire PIA. *See id.* at 8. None of these arguments justifies partial summary judgment.

### A. CERCLA Allows Plaintiffs to Recover Response Costs Incurred Because of Airborne Emissions from the Vernon Plant.

Nothing in *Pakootas III* bars Plaintiffs from recovering response costs incurred because of airborne emissions from the Vernon Plant. In arguing otherwise, NL reprises theories this Court rejected when denying NL's motion to dismiss and continues to "conflat[e] the terms 'disposal' and 'release' as they are used in section 107(a) of CERCLA." ECF No. 103 at 9.

#### 1. Background on CERCLA

A CERCLA claim has four elements. First, the plaintiff must show that "the site in question is a facility." *United States v. Sterling Centrecorp Inc.*, 977 F.3d 750, 756 (9th Cir. 2020) (quotations omitted). Second, the plaintiff must show that "a

*release* or *threatened release* of a hazardous substance has occurred." *Id.* (quotations omitted) (emphasis added). Third, the plaintiff must show that "such *release* or *threatened release* will require the expenditure of response costs." *See id.* (quotations omitted) (emphasis added). Fourth, the plaintiff must show that the defendant is a "covered person[]" subject to CERCLA liability. *Id.* "In this case, Plaintiff seeks to hold NL liable as a former owner or operator." ECF No. 103 at 11. "A former owner or operator of a facility is a [covered person] if it 'at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of.'" *Id.* at 9 (quoting 42 U.S.C. § 9607(a)(2)).

**2. "Disposal" versus "release"**

The terms "disposal" and "release" address "separate elements" of a CERCLA claim. *See* ECF No. 103 at 9.

"Disposal" is used to determine whether a defendant is a covered person who may be held liable (element one). *See Sterling Centrecorp Inc.*, 977 F.3d at 756. By contrast, "release" is used to determine the scope of liability (elements two and three). *Id.* "The question of whether a defendant is a [covered person] is separate from whether liability attaches and to what extent." ECF No. 103 at 9 (citing *Pakootas v. Teck Cominco Metals, LTD.* (*Pakootas I*), 452 F.3d 1066, 1073–74 (9th Cir. 2006)). "So long as there is some occurrence constituting a disposal while a defendant owned or operated a facility, the defendant can be liable for subsequent releases as an owner or operator, which may involve a broader range of passive migration than the disposals which make a defendant an owner or operator." *Id.* at 11 (citing *Pakootas I*, 452 F.3d at 1075).

The distinction between "disposal" and "release" is important because "'release' is broader . . . than the term 'disposal.'" *Id.* at 10.

> The term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing . . . .

42 U.S.C. § 9601(22). Importantly, "release" includes "any . . . *emitting*." *Id.* (emphasis added). By contrast:

> The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3); *see id.* § 9601(30) ("The term[] 'disposal' . . . shall have the meaning provided in [42 U.S.C. § 6903(3)].").

In short, under CERCLA's plain text, NL is a covered person subject to CERCLA liability if hazardous substances were *disposed* while NL owned and operated the Vernon Plant. If NL is a covered person, NL is liable for response costs incurred in connection with *releases* including airborne emissions.

**3. NL misreads *Pakootas III*.**

NL misreads *Pakootas III* as holding that Plaintiffs may not recover for response costs incurred because of airborne emissions from the Vernon Plant.

*Pakootas III* held only that the term "disposal" does not include "aerial depositions" where an airborne pollutant deposits onto the ground. *See* 830 F.3d at 985. Consequently, the defendant there was not an "arranger," a type of covered person, subject to CERCLA liability. *Id.* "The question for the Court in *Pakootas III* was, for purposes of arranger status, whether the term 'disposal' encompassed the emission of hazardous substances subsequently 'deposited . . . by the wind' . . . ." ECF No. 103 at 10 (quoting *Pakootas III*, 830 F.3d at 983). The Ninth Circuit "answer[ed] no" because "disposal" does "not includ[e] the gradual spread of contaminants without human intervention." *Pakootas III*, 830 F.3d at 978. "The

court did not limit or otherwise interpret CERCLA's definition of 'release.'" ECF No. 103 at 11.[2]

The other cases NL cites also do not support its flawed interpretation of *Pakootas III*. ECF No. 369 at 6–7 (citing *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) (en banc); *Ctr. for Cmty. Action & Envtl. Justice v. BNSF Ry. Co.*, 764 F.3d 1019 (9th Cir. 2014); *Pakootas v. Teck Cominco Metals, Ltd.* (*Pakootas IV*), 905 F.3d 565 (9th Cir. 2018)).

*Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 879, 881 (9th Cir. 2001) (en banc), stands for the limited propositions that "the gradual passive migration of contamination through the soil" does not constitute a "disposal," and that "other passive migration" of a hazardous substance might sometimes constitute a "disposal." *Carson Harbor Village* did not hold that "release" excludes airborne emissions and therefore provides no support for NL here. *Id.* at 881–82. In fact, the Ninth Circuit stressed the need to follow "the plain meaning of the statute's text," *id.* at 884, which defines "release" to include "emitting," 42 U.S.C. § 9601(22).

---

[2] To justify its misreading of *Pakootas III*, NL misquotes the opinion by omitting key language. Specifically, NL omits the italicized language in the following quote:

> When a smelter emits lead, arsenic, cadmium, and mercury compounds through a smokestack and those compounds contaminate land or water downwind, can the owner-operator of the smelter be held liable for cleanup costs and natural resource damages under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")? *All parties agree the answer turns on whether the smelter owner-operator can be said to have arranged for the "disposal" of those hazardous substances within the meaning of CERCLA. Bound by a previous en banc case's interpretation of "deposit"—the only theory of "disposal" urged by Plaintiffs in this interlocutory appeal—as not including the gradual spread of contaminants without human intervention*, we must answer no.

*Pakootas III*, 830 F.3d at 978; *see* ECF No. 369 at 1 (misquotation).

Likewise, *Center for Community Action and Environmental Justice v. BNSF Railway Co.*, 764 F.3d 1019 (9th Cir. 2014), does not help NL. The court there "held that emitting diesel particulate matter into the air and allowing it to be 'transported by wind and air currents onto the land and water' did not constitute 'disposal' of waste within the meaning of the Resource Conservation and Recovery Act," which uses the same definition of "disposal" as CERCLA. *See Pakootas III*, 830 F.3d at 980 (quoting *Ctr. for Cmty. Action & Envtl. Justice*, 764 F.3d at 1023–24).

Finally, NL's reliance on *Pakootas v. Teck Cominco Metals, LTD.* (*Pakootas IV*), 905 F.3d 565 (9th Cir. 2018), also is misplaced. NL suggests that *Pakootas IV* reconsidered whether the defendant could be held liable for airborne emissions. *See* ECF No. 369 at 13. This is incorrect. *Pakootas IV* evaluated appellate and personal jurisdiction, 905 F.3d at 574–78, whether certain categories of costs were recoverable, *id.* at 578–82, the availability of a fee award, *id.* at 582–86, and divisibility, *id.* at 586–96. *Pakootas IV* is irrelevant to the statutory interpretation questions at issue here.[3]

The absence of authority supporting NL's argument is striking. In fact, the only other court that has closely examined *Pakootas III* held:

> Gibson seems to suggest that CERCLA is inapplicable [to] "airborne releases." Gibson is simply wrong. Gibson's misunderstanding appears to be premised on its misreading of *Pakootas v. Teck Cominco Metals Ltd.*, 830 F.3d 975, 979 (9th Cir. 2016).

---

[3] Elsewhere, NL refers to the extraterritoriality issues the Ninth Circuit addressed in an earlier decision, *Pakootas I*, 452 F.3d 1066. ECF No. 369 at 7. But any extraterritoriality issues did not affect the Ninth Circuit's interpretation of "release" and "disposal" in *Pakootas III*. *See* 830 F.3d at 983–84. NL also refers to a different claim addressed at a different phase of the long-running litigation that addressed dumping industrial waste into a river, not emitting hazardous substances to the air. *See* ECF No. 369 at 6. The river dumping claim also did not affect the Ninth Circuit's analysis in *Pakootas III*. *See* 830 F.3d at 983–84.

> In *Pakootas*, the Ninth Circuit addressed the definition of "disposal" of hazardous substances within the meaning of 42 U.S.C. § 9607(a)(3). . . . The *Pakootas* court explained that "disposal"—as opposed to release—of hazardous substances does not include an "aerial deposition" or "emission." *Pakootas*, 830 F.3d at 983–984. *Pakootas* does not stand for the proposition that CERCLA does not apply to any airborne releases.

*United States v. Gibson Wine Co.*, No. 1:15-cv-1900-AWI, 2017 WL 1064658, at *9 n.9 (E.D. Cal. Mar. 20, 2017) (citation omitted).

The lack of support reflects NL's vast departure from CERCLA's plain text and broad remedial purpose. NL contends CERCLA imposes a general prohibition on recovering response costs incurred because of airborne emissions. Nothing in CERCLA's text suggests such a limitation, and courts have routinely adjudicated claims for the recovery of such response costs.[4] Also, courts interpret CERCLA with an understanding of the law's broad remedial purpose. *See 3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1363 (9th Cir. 1990) ("We agree that the Act is to be given a broad interpretation to accomplish its remedial goals."). That purpose would be undermined if parties like NL could evade liability for response costs necessitated by airborne emissions.

---

[4] *E.g.*, *A & W Smelter & Refiners, Inc. v. Clinton*, 146 F.3d 1107, 1111 (9th Cir. 1998) (windblown particle emissions were "unquestionably a release"); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 669 (5th Cir. 1989) ("gas emanating from [certain] radionuclides constitutes a release" because "'release' should be construed broadly"); *United States v. Metate Asbestos Corp.*, 584 F. Supp. 1143, 1148–49 (D. Ariz. 1984) (finding a threatened release where asbestos fibers were disposed in such a way that they "could be released in a light wind"); *Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, Inc.*, No. 11-CV-0252-CVE-PJC, 2017 WL 2662195, at *9 (N.D. Okla. June 20, 2017) ("release" includes "direct air emissions from [a] smelting process").

**4.     NL fails to meet its summary judgment burden.**

Turning to NL's evidentiary burden on summary judgment, it is evident that NL falls far short. NL does not "show[]," *see Celotex Corp.*, 477 U.S. at 325, that no disposals occurred at the Vernon Plant while NL owned and operated it, *see generally* ECF No. 369 (Mot.); ECF No. 369-1 (NL's statement of uncontroverted facts). Therefore, Plaintiffs need not "designate specific facts demonstrating" a genuine issue of material fact that NL is a covered person under CERCLA. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

In any event, Plaintiffs have identified ample evidence that lead and other hazardous substances were dumped, spilled, and/or otherwise disposed to the ground, groundwater, and surface water at the Vernon Plant while NL and NL's predecessor, Morris P. Kirk & Son., Inc. ("Kirk"), owned and operated it. Plaintiffs' Additional Facts ¶¶ 1–3 (NL succeeded to Kirk's liabilities; while Kirk and/or NL owned the Vernon Plant, chemical spills were common, lead spilled onto the ground during smelting and refining, wastes including slag were dumped in pits, and there were numerous areas of the Vernon Plant that could likely released lead to soil, groundwater, and surface water). NL is therefore a covered person subject to CERCLA liability.

NL fails to demonstrate any significant difference between this Motion and its motion to dismiss. To argue that things have changed since its last motion, NL identifies a few lines of testimony by Peter V. Ruttan, DTSC's Rule 30(b)(6) witness. *See* ECF No. 369 at 2. Mr. Ruttan said that all the Vernon Plant lead that contaminated the residential areas where DTSC took some of its response actions came from airborne emissions. *See id.* at 2, 8. Mr. Ruttan's testimony does not help NL. NL is liable as a former owner or operator because hazardous wastes were disposed to the soil, groundwater, and surface water while NL owned and operated the Vernon Plant. Plaintiffs may therefore recover response costs incurred in connection with airborne emissions from the Vernon Plant. And the law is settled

that air emissions are CERCLA "releases." *Pakootas III*, 830 F.3d at 934; 42 U.S.C. § 9601(22).

This Motion therefore distills to a "disfavored" motion to reconsider the Court's order denying NL's motion to dismiss. *See Sanai v. McDonnell*, No. 2:18-cv-05663-SVW-AGRx, 2018 WL 8731933, at *1 (C.D. Cal. July 11, 2018). This Court should reject NL's *Pakootas III* argument.

**5. The other Defendants also fail to meet their summary judgment burden.**

The eight other Defendants that join NL's Motion do not offer any additional evidence or argument. Like NL, these eight Defendants fail to "show[]," *see Celotex Corp.*, 477 U.S. at 325, that they were uninvolved in disposals at the Vernon Plant, *see* ECF No. 425 (notice of joinder). Therefore, Plaintiffs need not identify any evidence to defeat the Motion as to these eight Defendants.

What's more, seven of the joining Defendants[5] face an additional barrier to partial summary judgment. These seven Defendants are not former owners or operators like NL, but rather arrangers or transporters. *See* ECF No. 1 (Compl.) ¶¶ 21–40. In pertinent part, a person can be held liable as an arranger or transporter to the extent they were involved in the "disposal *or* treatment" of hazardous substances. *See* 42 U.S.C. § 9607(a)(3) (arranger); *id.* § 9607(a)(4) (transporter). The seven Defendants have failed to show that they were uninvolved in "treatment" at

---

[5] The seven are Clarios, LLC, International Metals Ekco, Ltd., Kinsbursky Brothers Supply, Inc., Quemetco, Inc., Ramcar Batteries, Inc., Trojan Battery Company, LLC, and Oregon Tool, Inc. The eighth defendant, Gould Electronics, Inc. ("Gould"), is—like NL—a former owner and operator of the Vernon Plant. Gould fails to meet its partial summary judgment burden for the same reasons NL fails to meet its burden. And Plaintiffs have identified ample evidence that lead and other hazardous substances were dumped, spilled, and/or otherwise disposed to the ground, groundwater, and surface water at the Vernon Plant while Gould owned and operated it. Plaintiffs' Additional Fact ¶ 4.

the Vernon Plant. This is a sufficient and independent reason to deny partial summary judgment.

### B. NL's Arguments About CERCLA "Facilities" Do Not Warrant Summary Judgment.

NL believes it is entitled to summary judgment because the PIA should not be considered a single CERCLA "facility." NL insists the Vernon Plant should be treated as one facility, and the residential properties in the PIA where DTSC took some response actions should be treated as another. *See* ECF No. 369 at 13–14. NL's argument that it never owned or operated in the residential areas of the PIA does not justify partial summary judgment. Even if the Court defines the residential areas as a separate facility, Plaintiffs' CERCLA cost recovery claim for response costs in the residential areas would survive.

Alternatively, NL argues that even if the entire PIA is considered as a single facility, NL cannot be held liable because it never owned or operated the entire PIA. NL's argument is squarely foreclosed by precedent recognizing that CERCLA liability attaches to those who owned or operated only part of a facility.

#### 1. NL's arguments about splitting the PIA into two "facilities" do not justify partial summary judgment.

Even if this Court splits the PIA into two facilities, NL would not be entitled to partial summary judgment. Plaintiffs' CERCLA cost recovery claim for response costs in the residential areas would survive against NL and the other Defendants.

NL does not dispute that—at minimum—the Vernon Plant is a facility.[6] Under CERCLA's plain terms, any costs Plaintiffs incurred in response to releases or

[6] Nor can NL. Among other things, "'facility' means . . . any building, structure, installation, equipment, pipe or pipeline . . . , well, pit pond, lagoon," or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed,

threatened releases from the Vernon Plant are recoverable, regardless of whether the areas near the Vernon Plant are considered part of the facility. CERCLA states that a former owner or operator of a facility "from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for [] all costs of removal and remedial action incurred by . . . a State." *See* 42 U.S.C. § 9607(a).[7] NL objects that it did not own the PIA's residential areas. *See* Mot. at 7–8. But CERCLA's plain text provides for the recovery of "*all* costs," 42 U.S.C. § 9607(a), not just those incurred at locations owned by a covered party.

Therefore, NL's arguments about splitting the PIA are pointless. Splitting the PIA would change nothing.[8]

---

or otherwise come to be located." 42 U.S.C. § 9201(9). The Vernon Plant certainly falls within this expansive definition.

[7] Plaintiffs note that defining the "facility" to encompass the entire PIA, including the Vernon Plant, is not inconsistent with CERCLA's broad definition of "facility," *see* 42 U.S.C. § 9601(9), and Ninth Circuit case law, *see 3550 Stevens Creek Assocs.*, 915 F.2d at 1360 n.10 ("[T]he term 'facility' has been broadly construed by the courts."). NL's suggestion that the scope of a "facility" should be determined by where DTSC has incurred its greatest response costs is misplaced, *e.g.*, ECF No. 369 at 8 (urging the Court to focus on DTSC's "cleanup plan[s]"), because CERCLA does not define "facility" by reference to where response costs were incurred, 42 U.S.C. § 9601(9).

[8] Plaintiffs briefly address three other baseless arguments NL raises in support of splitting the PIA.
  First, NL stokes fear that thousands of residential property owners will end up in this litigation, making it unmanageable. ECF No. 369 at 11. But Plaintiffs do not anticipate naming residential property owners as defendants. The few dozen third-party defendants NL has already named in this action may have defenses to liability, and the claims against them will likely be adjudicated at a later phase. If Defendants bring third-party contribution claims against numerous residential property owners, this Court could require Defendants to litigate those derivative claims later and/or in

**2. It is immaterial that NL did not own the entire PIA.**

Alternatively, NL appears to argue that if the PIA is one "facility," NL cannot be a held liable as a former owner or operator because it never owned or operated the residential properties in the PIA. *See* ECF No. 369 at 8 ("NL must be the owner of the facility 'at which' the hazardous substances were disposed to incur liability . . . .").

If NL makes this argument, precedent forecloses it. In *Burlington Northern and Santa Fe Railway Co. v. United States*, 556 U.S. 599, 602–03 (2009), the Supreme Court considered the Arvin facility, which was located on two contiguous parcels: one owned by a chemical distributor, the other jointly owned by two railroads. Spills occurred on both parcels. *Id.* at 606 n.4 (majority of spills occurred on the chemical distributor's parcel); *id.* at 617–18 (spills on the railroads' parcel were smaller). The Court accepted that both railroads were owners, even though each railroad was only a partial owner of one of the two parcels that together

---

a separate action. *See City of Wichita v. Aero Holdings, Inc.*, No. 98-1360-MLB, 2000 WL 1480490, at *3 (D. Kan. Apr. 7, 2000); 42 U.S.C. § 9607(f)(1)–(2), (g)(2).

Second, NL's proposal to split the PIA into two facilities—the Vernon Plant and the residential properties—implies that the industrial properties between the Vernon Plant and the residential properties are irrelevant to DTSC's CERCLA claim. *See, e.g.*, ECF No. 369 at 2–3. NL is wrong. This Court received evidence and testimony during the May trial showing that airborne lead emissions from the Vernon Plant contaminated the entire PIA, including the industrial areas. Plaintiffs' Additional Fact ¶ 5. And DTSC has taken response actions in the industrial areas: the agency has overseen sampling and cleanup efforts there. *See id.* ¶ 6.

Third, NL contends Plaintiffs are judicially estopped by an argument DTSC made in an amicus brief it filed about seven years ago in *Pakootas III*. NL is wrong. Among other reasons, judicial estoppel applies only to parties. *See Bock v. Washington*, No. 21-35182, --- F.4th ----, 2022 WL 1447017, at *5 (9th Cir. May 9, 2022). DTSC, as an amici, was not a party. *See Miller-Wohl Co. v. Comm'r of Labor & Indus.* 694 F.2d 203, 204 (9th Cir. 1982) ("An amicus curiae is not a party to litigation."). Also, DTSC has not taken any positions "clearly inconsistent" with its amicus brief. *See Bock*, 2022 WL 1447017, at *5 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

comprised the facility. *Id.* at 613–15. Courts of appeal have reached similar conclusions. *E.g.*, *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1270 (10th Cir. 2017) ("a person is liable if that person meets CERCLA's definition of a PRP with respect to even a 'portion of the total facility'" (quoting *Burlington N. & Santa Fe Ry. Co.*, 556 U.S. at 618)).[9]

Statutory interpretation confirms that NL's partial-owner-and-operator argument is incorrect. CERCLA provides that former owners and operators include "*any* person who at the time of disposal of any hazardous substance owned or operated" a facility. *See* 42 U.S.C. § 9607(a)(2) (emphasis added). Congress's use of the word "any" underscores that it intended former owners and operators to be defined broadly. *See 3550 Stevens Creek Assocs.*, 915 F.2d at 1363 (CERCLA "is to be given a broad interpretation . . . ."). Moreover, interpreting CERCLA to impose liability on partial owners and operators would cohere with the statute's financial responsibility provisions, which expressly contemplate that "a facility [may be] owned or operated by more than one person." 42 U.S.C. § 9608(b)(4); *see United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) ("We also look to similar provisions within the statute as a whole . . . to aid in interpretation."). If adopted, NL's partial-owner-and-operator theory would risk an absurd result: a polluter could evade CERCLA liability by splitting the ownership and operation of a facility among distinct corporate shells. *See LKAV*, 712 F.3d at 440 ("[S]tatutory

---

9 *Accord United States v. Rohm & Haas Co.*, 2 F.3d 1265, 1279–80 (3d Cir. 1993) ("A current owner of a facility may be liable under § 107 without regard to whether it is the sole owner or one of several owners. . . . [W]e do recognize that holding the owner of a small portion of the site jointly and severally liable for response costs for the whole site may involve some unfairness. However, the solution to this potential unfairness is apportionment and contribution in appropriate circumstances."), *overruled on other grounds*, *United States v. E.I. Dupont De Nemours & Co., Inc.*, 432 F.3d 161 (3d Cir. 2005).

interpretations which would produce absurd results are to be avoided." (quotations omitted)). Surely, Congress did not intend that outcome.

In sum, it is immaterial that NL did not own the residential properties in the PIA. CERCLA does not require a former owner or operator to have owned the entirety of a facility.

**V. Conclusion**

NL is wrong that *Pakootas III* bars Plaintiffs from recovering response costs incurred because of air emissions from the Vernon Plant. NL's *Pakootas III* arguments effectively seek reconsideration of this Court's order denying NL's motion to dismiss. *See* ECF No. 103. NL's arguments about splitting the PIA into two facilities do not justify partial summary judgment because NL can be held liable for response costs incurred in the residential areas even if the PIA is split. Similarly, NL can be held liable even if the PIA is one facility, notwithstanding that NL never owned or operated the entire PIA. This Court should deny partial summary judgment to NL and the other Defendants that have joined this Motion.

DATED: May 16, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
SARAH E. MORRISON
TIMOTHY E. SULLIVAN
Supervising Deputy Attorneys General

DONALD A. ROBINSON
AARTI S. KEWALRAMANI
JON TANGONAN
ELIZABETH B. RUMSEY
KATE M. HAMMOND
ADRIANNA LOBATO
Deputy Attorneys General

*/s/ Matthew K. Edling*
Matthew K. Edling
Yumehiko Hoshijima
SHER EDLING LLP

*Attorneys for Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account*